**LEWIS BRISBOIS BISGAARD & SMITH LLP**
CHERYL WILKE (SBN# 216109)
110 S.E. 6th Street, Suite 2600,
Fort Lauderdale, FL 33301
Telephone: 954.495.2220
Cheryl.Wilke@lewisbrisbois.com

Attorney for Defendant
GEO GROUP, INC.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA AHN, as daughter and on behalf of the Estate of Choung Woong Ahn,<br><br>      Plaintiff,<br><br>   v.<br><br>GEO GROUP, INC.; UNITED STATES IMMIGRATION & CUSTOMS ENFORCEMENT<br>      Defendants. | Case No. 1:22-cv-00586-JLT-BAK<br><br>**DEFENDANT GEO GROUP, INC'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT GEO GROUP, INC'S AMENDED MOTION TO DISMISS COUNT SEVEN AND EIGHT OF PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |

### DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT GEO GROUP, INC'S AMENDED MOTION TO DISMISS[1]

Defendant GEO GROUP, INC. ("Defendant") by and through their undersigned counsel, hereby files the following Reply to Plaintiff's Memorandum in Opposition to Defendant GEO GROUP, INC's Amended Motion to Dismiss [ECF No. 23] ("Plaintiff's Opposition") pursuant to Fed. R. Civ. P. 8(a), 10(b), and 12(b)(6) and in support thereof states as follows:

### I. INTRODUCTION

On May 17, 2022, Plaintiff SYLVIA AHN, ("Plaintiff") as the daughter and on behalf of the Estate of Choung Woong Ahn ("Detainee") filed her Complaint alleging eight claims of actions against Defendants. [ECF No. 1]. On June 23, 2022, Plaintiff filed her First Amended Complaint. [ECF No. 18]. On July 12, 2022, Defendant GEO GROUP, INC., filed an Amended Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) [ECF No. 21] to dismiss Count Seven and Eight of Plaintiff's Amended Complaint ("Amended Motion to Dismiss"). On July 26, 2022, Plaintiff filed her Opposition. [ECF No. 23]. Defendant's position remains that Plaintiff has failed to allege that Defendant violated Cal. Civil Code § 43, Cal. Civil Code § 51 ("Unruh Civil Rights Act") and Cal. Civil Code § 52.1 ("California Bane Act").

### II. LEGAL STANDARD

Controlling authority has much in common with persuasive authority. *Hart v. Massanari*, 266 F.3d 1155, 1169-1170, 1172 (9th Cir. 2001). "Federal courts today do follow some common law traditions." *Id.* "When ruling on a novel issue of law, [federal courts] will generally consider how other courts have ruled on the same issue." *Id.* at 1169. While District court opinions do not

---

[1] This Motion adopts and incorporates by reference Defendant's Amended Motion to Dismiss Count Seven and Eight of Plaintiff's Amended Complaint, memorandum of Points and Authorities. [ECF No. 21]

bind other district courts within the same district, district court opinions **are relevant for their persuasive authority**. *Id.*

In addition, the Eastern District of California has specifically rejected the notion and argument that "unpublished decisions cited must be wholly disregarded because they are not binding authority." *Pineda v. Sun Valley Packing, L.P.*, 120CV00169DADEPG, 2022 WL 1308141, at *4 (E.D. Cal. May 2, 2022). The fact that a district court order does not appear in an official reporter is **irrelevant** to its consideration by this court as persuasive authority. *Id.*; *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1123, 1138 (E.D. Cal. 2009) ("Ninth Circuit Rule 36-3 does not prohibit citation to or reliance on unpublished District Court decisions, **which are, like published** District Court opinions, only persuasive authority."); *see San Luis & Delta-Mendota Water Auth. v. Salazar*, 1:09-CV-00407OWWDLB, 2009 WL 1575169 *18 (E.D. Cal. May 29, 2009) (citing *Carmichael Lodge No. 2103, Benevolent and Protective Order of Elks of the United States of Am. v. Leonard*, 2009 WL 1118896 *4 (E.D.Cal., Apr.23, 2009)) (noting that "there is no prohibition in citing 'unpublished' district court opinions unless a local rule so provides. They are either persuasive to the case at bar, or they are not. District court opinions, published or not, do not set binding precedent for other cases....")(court noted the irony of citing unpublished district court opinion as authority for citing unpublished district court opinion noted).

### III.   ARGUMENT

**A.   Plaintiff Has Not Properly Pled A Violation of Cal. Civ. Code § 51 ("Unruh Act")**

California Civil Code § 51, known as the "Unruh Civil Rights Act," provides that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their…disability…are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). To prevail on an Unruh Act claim, a plaintiff must establish the following:

"(1) [he] was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) [his] disability was a motivating factor for this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damages, loss or harm."
*Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 1048 (N.D. Cal. 2012).

### 1. **Defendant does not qualify as a business establishment under Cal. Civ. Code § 51.**

The Unruh Act is only applicable to "business establishments." *See* Cal. Civ. Code § 51(b). State prisons and jails are not "businesses" within the meaning of the Unruh Act because inmates and pretrial detainees are not "engaged in a calling, occupation or trade for purposes of making a livelihood or gain." *Taormina v. Cal. Dep't of Corr.*, 946 F. Supp. 829, 833-34 (S.D. Cal. 1996) (("According to [the *O'Connor* test], a prison does not qualify as a 'business' because prisoners are not engaged in a calling, occupation or trade for purposes of making a livelihood or gain. Rather, they are incarcerated by the state because of crimes which they have committed); *see also Huffman v. Parmo*, No. 11CV2829-LABDHB, 2013 WL 3795618, at *11 (S.D. Cal. July 19, 2013) (dismissing Unruh Act claim because a prison does not qualify as a "business establishment."); *Wilkins Jones*, 859 F. Supp. 2d at 1049 ("[T]he Unruh Act does not apply to correctional facilities per se.").

Moreover, binding Ninth Circuit precedent suggests that, in determining whether an organization qualifies as a "business establishment" under the Unruh Act, the focus of the inquiry must be the **relationship between plaintiff and defendant**, not the relationship between the defendant and other non-parties. *Delta Sav. Bank v. U.S.*, 265 F.3d 1017, 1025 (9th Cir. 2001)(quoting *Strother v. Southern Cal. Permanente Med. Group*, 79 F.3d 859, 873–74 (9th Cir.1996)) ("The Unruh Act ... has **been limited** to cases where the plaintiff was in a relationship with the offending organization similar to that of the **customer in the customer-proprietor relationship**.")

Plaintiff's argument that a for-profit corporation is a "business establishment," because the word "business embraces everything about which one can be employed, and it is often synonymous with calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain" is misplaced. *Burks v. Poppy Construction Co.*, 57 Cal. 2d 463, 468 (Cal. 1962); [ECF No. 23] at 6. It is undisputed that Defendant is not a prison, but for the same reasons a prison does not qualify as a "business establishment" the same applies to Defendant operating a detention center. *See generally Est. of Mejia v. Archambeault*, 20-CV-2454-MMA (KSC), 2021 WL 4428990 at *8 (S.D. Cal. Sept. 27, 2021) (in dismissing plaintiff's Unruh claim and argument that the detention center was a "business establishment" the court noted "although the Court recognizes that [Detention Center] is not a state jail or prison, the Court notes that other courts have consistently held that state jails and prisons are not "business establishments" under the Unruh Act. . . This further undercuts Plaintiffs' argument).

Immigration detainees are not "engaged in calling occupation or trade for purposes of making a livelihood or gain." *Taormina,* 946 F. Supp. at 833-34. Just as prisons don't qualify as a "business" because prisoners are not engaged in a calling, occupation, or trade for purposes of making a livelihood or gain the same applies to detainees held in detention centers. While prisoners are incarcerated by the state because of crimes they have committed, detainees are detained because

> Some of these persons were apprehended attempting to enter the United States without authorization. 8 U.S.C. § 1225(b)(1)(A)(i), (B)(iii)(IV). Others are in detention proceedings in which the government seeks to remove them from the United States, id. § 1226(a), or following orders of removal, id. § 1231(a)(1)–(2). Still others are held are under mandatory detention because they committed crimes in the United States, or on terrorism-related grounds. *Id.* § 1226(c).

*Fraihat v. U.S. Immig. and Cust. Enf't*, 16 F.4th 613, 619-620 (9th Cir. 2021)("ICE, an agency of the Department of Homeland Security (DHS), is tasked with detaining certain non-citizens."). Plaintiff has said herself that immigration detention centers "civilly detain people." [ECF No. 23] at 6. In sum, because the focus of the inquiry must remain between the plaintiff and the

defendant, Defendant is not a business establishment. *Delta Sav. Bank*, 265 F.3d at 1025 (emphasis added).

Furthermore, the Unruh Act "firmly established the right of all persons to non-discriminatory treatment by establishments that engage in business transactions **with the public**." *Anderson v. County of Siskiyou*, No. C 10-01428 SBA, 2010 WL 3619821, at *5,*6 2010 U.S. Dist. LEXIS 99927, at *16 (N.D. Cal. Sept. 13, 2010) (quoting *Warfield v. Peninsula Golf & Country Club*, 896 P.2d 776, 790 (Cal. 1995)). The Court in *Anderson*, specifically stated that "[t]o conclude that a jail is governed by the Unruh Act, notwithstanding the fact that it **lacks the attributes of a business**, would amount to an **impermissible expansion** of the statute." *Id.* at *6. In other words, Defendant is not "classically public in its operation" for the Unruh Act to be applicable. *Whooley v. Tamalpais Union High Sch. Dist.*, 399 F. Supp. 3d 986 (N.D. Cal. 2019). ("The Act applies to an organization that is classically public in its operation, namely one that **opens its doors to the entire youthful population** of a city, or a **broad segment of the population**…")(internal quotations omitted). The Eastern District has consistently held that the Unruh Act applies to an organization that is "classically 'public' in its operation," namely one that "opens its ... doors to the entire youthful population" of a city, or a "broad segment of the population," with "no attempt to select or restrict membership or access[.]; *McGee v. Poverello H*., 118CV00768LJOSAB, 2019 WL 5596875 *5 (E.D. Cal. Oct. 30, 2019); *see also Strother*, 79 F.3d 859, 873 (9th Cir. 1996)("California courts have recognized that the Act and its predecessors have generally **been designed to prevent proprietors of businesses from excluding anyone from frequenting their business** because of race, national origin, sex, etc.). In short, Plaintiff was not frequenting any business from Defendant nor was Defendant engaged with business transactions with the public.

Plaintiff further requests the Court to adopt the Northern District's settled reasoning of the *Wilkie-Jones* court and to reject Defendant's "non-binding, unpublished case" from the Southern

District. [ECF No. 23] at 5; *see generally Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 1050 (N.D. Cal. 2012). To reiterate, the Eastern District has specifically rejected the notion and argument that "unpublished decisions cited must be wholly disregarded because they are not binding authority." *Pineda*, 2022 WL 1308141, at *4. The fact that a district court order does not appear in an official reporter is **irrelevant** to its consideration by this court as persuasive authority. *Id.*

In allowing the Unruh Act claim to proceed, the *Wilkins-Jones* court emphasized that the private medical contractor at bar was "qualitatively different from a correctional facility itself." *Wilkins-Jones*, 859 F. Supp. at 1049; *see also Estate of Mejia*, 2021 WL 4428990, at *8. Similar to *Mejia*, here Defendant is not merely a private contractor running a discrete medical subunit within the facility, Defendant is operating the entire facility. At the time of Plaintiff's death, Defendant was statutorily prohibited from operating a medical facility in its capacity as a real estate investment trust ("REIT"). *See* 26 U.S. Code § 856 (B). Regardless of which district's holding, *Wilkins-Jones* is distinguishable from the more recent decision in *Mejia* and the fact of this case. *Id.*

Lastly, in *Mejia*, the Southern District specifically rejected plaintiff's argument that permitting an Unruh Act claim to proceed against a private corporation that contracted with the county to "provide assessments of incoming prisoners and medical care to inmates" **was not equivalent** to a private operator of a federal detention center. *Estate of Mejia*, 2021 WL 4428990, at *8. Similar to *Mejia*, Plaintiff's argument that Defendant is a private operator of federal detention centers and thus qualifies as a business establishment under the Unruh Act is unpersuasive. *Id.*

In conclusion "[a]bsent legislation or clear interpretation from the Ninth Circuit, the court cannot embrace Plaintiff's novel interpretation of the Unruh Act." *Id.* Defendant respectfully requests the Court to grant Defendant's Amended Motion to Dismiss Count Seven of Plaintiff's Amended Complaint.

### 2. **Plaintiff fails to adequately plead intentional discrimination or a cause of action upon which relief may be granted under the Americans with Disability Act of 1990 ("ADA")**

Plaintiff next argues, "Defendant violated the Unruh Act simply by failing to provide a reasonable accommodation under the ADA[.]" [ECF No. 23] at 7. Assuming *arguendo* that the Court finds Defendant is a business establishment, Plaintiff has not pleaded any intentional discrimination in public accommodations in violation of the terms of the act. *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 846-47 (9th Cir. 2004). In 1991, the California Supreme Court declared in *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1175, 278 Cal.Rptr. 614, 805 P.2d 873 (1991), that "a plaintiff seeking to establish a case under the Unruh Act must **plead and prove intentional discrimination** in public accommodations in violation of the terms of the Act. *Id.* In 1992, the Unruh Act was amended to provide that "[a] violation of the right of any individual under the Americans with Disabilities Act of 1990 ... shall also constitute a violation of this section." Cal. Civ.Code § 51(f); *Presta v. Peninsula Corridor Joint Powers Bd.*, 16 F.Supp.2d 1134, 1135 (N.D.Cal.1998); *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004). The Northern District has specifically commented on the California Legislatures' intention in enacting § 51(f) when dealing with a jail.

> [In enacting § 51(f), the California Legislature did not purport incorporate the ADA in its entirety to the Unruh Act. *See Bass v. County of Butte*, 458 F.3d 978, 981 (9th Cir.2006). Rather, the legislature only intended to incorporate those provisions of the ADA germane to the original scope of the Unruh Act. *Id.* The provision of the Unruh Act at issue here applies specifically to "business establishments." Cal. Civ.Code § 51(b). To conclude that a jail is governed by the Unruh Act, notwithstanding the fact that it lacks the attributes of a business, would amount to an impermissible expansion of the statute.
>
> *Anderson*, 2010 WL 1308141, at *6 (Court "concluded that Plaintiff has failed to state a claim under the Unruh Act. Because, no amendment can cure this deficiency, Plaintiff's fourth claim, insofar as it is based on the Unruh Act, is dismissed without leave to amend.")

Furthermore, Plaintiff has neither pleaded intentional discrimination **nor** a cause of action upon relief may be granted under the ADA. No showing of intentional discrimination is required **only when Plaintiff** has adequately pleaded a violation of the ADA, which Plaintiff has not done. *Lentini*, 370 F.3d at 846-47; *see also R.N. by and through Neff v. Travis Unified Sch. Dist.*, 220CV00562KJMJDP, 2020 WL 7227561 *7,*11 (E.D. Cal. Dec. 8, 2020)(Court granted defendant's motion to dismiss plaintiff's Unruh Act claims "[b]ecause the Unruh Act claims derive from plaintiffs' ADA disability discrimination claims, for the same reasons explained above in analyzing plaintiffs' ADA claim, plaintiffs have not adequately pled District defendants exhibited deliberate indifference to intentional disability discrimination against [Defendant]. The court GRANTS District defendants' motion to dismiss plaintiffs' Unruh Act claim.")

In other words, Plaintiff has failed to state a claim under the ADA or the Unruh Act. First, Plaintiff's argument that detention centers are places of public accommodation is misplaced. Title III prohibits discrimination by public accommodations and in relevant part, a plaintiff must show that the defendant is a private entity that owns, leases, or operates a place of **public accommodation** and that the plaintiff was denied public accommodations by the defendant **because of his disability.** *Arizona ex rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 669-70 (9th Cir. 2010) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007)). *York v. Beard*, No. 1:14-cv-01234-LJO-SKO (PC), 2015 U.S. Dist. LEXIS 71259 (E.D. Cal. June 2, 2015)(holding Plaintiff's Title III claim against Defendant fails as a matter of law because prisons are not places of public accommodation); *cf.*; *Id.* ("The State of California and its agencies are public entities rather than private entities, and state prisons are not places of public accommodation. 42 U.S.C. §§ 12131(1), 12181(6), (7); *Castle v. Eurofresh, Inc.*, 734 F.Supp.2d 938, 945 (D.Ariz. 2010); *Kral v. King Cnty.*, No. C10-1360-MAT, 2012 U.S. Dist. LEXIS 29883, 2012 WL 726901, at *8-9 (W.D.Wash. Mar.

6, 2012); *Johnson v. Fed. Bureau of Prisons*, No. 08-6017-HA, 2011 U.S. Dist. LEXIS 4539, 2011 WL 198184, at *3 (D.Or. Jan. 18, 2011).

Irrespective of separate titles under the ADA, the ADA has utilized definitional standards that uniformly apply to Title II and III. *See* 81 FR 5320 (August 11, 2016)("The meaning and interpretation of the definitions of "disability" in the title II and title III regulations are identical"). In support, other federal districts have consistently held that under the ADA a detention center is not a "public accommodation." *Maringo v. Warden, CCA*, No. H-07-602, 2007 U.S. Dist. LEXIS 77973 (S.D. Tex. July 25, 2007)(**detention facility is not a public accommodation under this provision of the ADA**. *See* 42 U.S.C.A. § 12181(7) ("public accommodations …. [are private] entities [which] affect commerce -- [including] an inn, … a restaurant, a motion picture house, …. an auditorium, … or other place of public gathering;"); *Collazo v. Corr. Corp. of Am.*, No. 4:11CV1424, 2011 U.S. Dist. LEXIS 137666, 2011 WL 6012425, at *4 (N.D. Ohio Nov. 30, 2011) ("A jail or prison facility does not constitute a place of 'public accommodation' as defined in the applicable statutory provisions.").

In addition, in defining "public accommodations" the U.S. Equal Employment Opportunity Commission ("EEOC") has specifically stated

> A public accommodation is a private entity that owns, operates, leases, or leases to, a place of **public accommodation**. Places of public accommodation include a wide range of entities, such as restaurants, hotels, theaters, doctors' offices, pharmacies, retail stores, museums, libraries, parks, private schools, and day care centers. Private clubs and religious organizations are exempt from the ADA's title III requirements for public accommodations.

*The ADA: Questions and Answers*, U.S. Employment Opportunity Commission (Jan. 15, 1997. In sum, Plaintiff has failed to establish a plausible relief under Unruh or ADA., Plaintiff has only presented formulaic recitation of the elements of an ADA claim to stack causes of actions. Plaintiff has failed to provide more than a mere conclusion that the Detainee was denied public accommodation **because of his disability**. *Twombly*, 550 U.S. 555.

Instead, Plaintiff has cited multiple alleged instances complaining about Defendant's actions and COVID-19 Protocols through all Eight counts plead in the Amended Complaint. [ECF No. 18] ("Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paraphs") ("Mr. Ahn was an individual with a disability. He had diabetes and heart disease, serious illnesses that put patients at a high risk of serious injury or death from COVID-19. He also had depression and a history of suicide attempts.); *Id.* ¶ 91 ("exposed Mr. Ahn to a heightened risk of contracting COVID-19"); *Id.* ¶ 99(a) "[Failed] to provide Mr. Ahn adequate protection from COVID-19"; *Id.* ¶ 99(b); ("GEO Group's COVID and isolation policies and practices manifest **deliberate intentional discrimination** and/or **deliberate indifference** to the likelihood that detainees with serious mental health conditions would suffer illegal discrimination at Mesa Verde.") *Id.* ¶ 99(h).

The Ninth Circuit has recently discussed

"[p]articularly in the face of scientific uncertainty about COVID-19—and with due consideration for the Executive Branch's preeminent role in managing immigration detention facilities and its greater institutional competence in this area, see *Bell v. Wolfish*, 441 U.S. 520, 548, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Roman*, 977 F.3d at 947 (Miller, J., concurring in part and concurring in the judgment)—we cannot conclude that [Defendant's] directives are the stuff of deliberate indifference. Updated over time to account for improved understandings of an unprecedented global pandemic, [Defendant's] documents reflect a mobilized effort to address what [Defendant] acknowledged was the "seriousness and pervasiveness of COVID-19." As a result, whether one would characterize [Defendant's] policy response to COVID-19 as strong, fair, needing improvement, or something else, it simply cannot be described in the way that matters here: as a reckless disregard of the very health risks it forthrightly identified and directly sought to mitigate.

*Fraihat v. U.S. Immig. and Cust. Enf't*, 16 F.4th 613, 638 (9th Cir. 2021). Similar to *Fraihat*, Defendant developed its policies based on its knowledge of how immigration detention facilities functioned and in consultation with the CDC. *Id.*

In sum, Plaintiff's formulaic recitation of the elements of an ADA claim and conclusions that Plaintiff was discriminated against because of his disability and Defendant's poor COVID policies fail to establish a plausible right to relief.

B. **Plaintiff Has Not Properly Pled A Violation of Cal. Civ. Code § 52.1 ("Bane Act")**

"The elements of a cause of action under the Bane Act are: (1) defendants interfered by threat, intimidation, or coercion, or attempted to interfere ... (2) with the exercise or enjoyment by any individual of rights secured by federal or state law." *Herzog v. Lopez-Cuen*, 221CV01174MCECKD, 2022 WL 784069 (E.D. Cal. Mar. 15, 2022) (citing *Ordonez v. Stanley*, 495 F. Supp. 3d 855, 865–66 (C.D. Cal. 2020) (citing *King v. State of Cal*., 242 Cal. App. 4th 265, 294 (2015)). "Plaintiff must allege defendants had a ***specific intent*** to violate the rights of plaintiff." *Id.* (citing *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018)); *Austin B. v. Escondido Union Sch. Dist*., 149 Cal. App. 4th 860, 882 (2007) (citing California jury instructions in holding that section 52.1 **requires a threat or act of violence**). Further, a "plaintiff must prove that the defendant(s) interfered (or attempted to interfere) with her rights." *Id.*

Defendant respectfully requests the Court dismiss Plaintiff's claim that Defendant violated California Civil Code § 52.1. Plaintiff fails to plead any claim or interfere that Defendant by threat, intimidation, or coercion or attempted to interfere with Plaintiff's exercise of enjoyment of any rights secured by the Constitution. The Ninth Circuit has stated the fact that Defendant "did not respond timely to [Plaintiff's] requests, grievances, and appeals, are not 'threats, intimidation, or coercion for the purposes of § 52.1 *Brook v. Carey*, 352 Fed.Appx. 184, 185 (9th Cir. 2009); see also *Feiger v. Smith*, 114CV01920DADEPGPC, 2016 WL 6821856 (E.D. Cal. Nov. 17, 2016), report and recommendation adopted, 114CV01920DADEPG, 2017 WL 431352 (E.D. Cal. Jan. 31, 2017) ("Because Plaintiff did not allege violence or the threat of violence, the Court finds that Plaintiff has failed stated a claim under § 52.1. Court granted Plaintiff's motion).

Furthermore, placing an inmate in solitary confinement is not a violation of a detainee's constitutional right. "A term of 24 months in solitary confinement, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment." *See Anderson v. Cty. of Kern*,

45 F.3d 1310, 1315-16 (9th Cir.), opinion amended on denial of reh'g, 75 F.3d 448 (9th Cir. 1995) (finding "[a]n indeterminate sentence in administrative segregation, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment"); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[Supreme Court of the United States] has recognized **detention during deportation proceedings as a constitutionally valid aspect of the deportation process**."); *accord Zadvydas v. Davis*, 533 U.S. 678, 711 (2001)("Congress' power to detain aliens in connection with removal or exclusion, the Court has said, is part of the Legislature's considerable authority over immigration matters"); *Terry v. Salinas Valley State Prison*, 243 F.3d 550 (9th Cir. 2000) (affirming dismissal because "a resulting placement in an area of higher security does not inflict pain within the meaning of the Eighth Amendment, and cannot form the basis of a constitutional claim"); *Bayramoglu v. Cate*, No. C 13-1094 YGR (PR), 2013 WL 5934702, at *3 (N.D. Cal. Oct. 30, 2013) (classification of prisoner did not state an Eighth Amendment claim, even though the prisoner was placed in solitary confinement because of classification); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). ("[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation.); *cf. Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1206-07 (9th Cir. 2008) (injunctive orders relating to jail's reading materials, mattresses and beds, law books, population caps, sleep, blankets, telephone access, and communication with jailhouse lawyers **were not necessary** to correct current and ongoing violations of pretrial detainees' constitutional rights.).

Lastly, regardless of Plaintiff's attempt to argue that Detainee's constitutional rights were violated, "the operation of [a] correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Fraihat*, 16 F.4th at 645. Based on the legislative and executive branches of our government Defendant has not unlawfully detained or interfered with the exercise or enjoyment by any individual of rights secured by federal or state law.

Furthermore, Plaintiff has failed to plead threats, intimidation, or coercion that is separate from the constitutional violation. *Shaymus v. Tulare Cnty.*, No. 1:14-cv-01633-MCE-GSA, 2015 U.S. Dist. LEXIS 70828 (E.D. Cal. May 29, 2015)(Court dismissed Plaintiff's Bane Act claim); *see also Lopez v. Cnty. of Tulare*, No. 1:11-cv-1547-LJO-BAM, 2012 U.S. Dist. LEXIS 1833, 2012 WL 33244, *11 (E.D. Cal. Jan. 6, 2012) ("Incarceration coupled with deliberate indifference to medical and psychiatric needs **does not constitute** 'threats, intimidation, or coercion for purposes of [the Bane Act]."); *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1118 (E.D. Cal. 2012) ("Whether there was a violation of a right and whether that violation was accompanied by threat, intimidation, or coercion are separate analytic inquiries.").

Plaintiff has not pled facts showing any threat, intimidation, or coercion on the part of Defendant's staff that prevented Detainee from doing something he had a right to do or forced him to do something he was legally not required to do.

**CONCLUSION**

The Amended Complaint's attempt to state a violation of Cal. Civil Code § 43, Cal. Civil Code § 51 ("UNRUH") and Cal. Civil Code § 52.1 ("Bane Act") fails as a matter of law.

WHEREFORE, in light of the foregoing, and as more fully explained below, Defendant respectfully requests that this honorable Court grant their Amended Motion to Dismiss Counts Seven and Eight against Defendant in the Amended Complaint.

.

DATED:  August 5, 2022              LEWIS BRISBOIS BISGAARD & SMITH LLP


By:     /s/ Cheryl Wilke
        CHERYL WILKE
        Attorneys for Defendant GEO GROUP, INC.

**SERVICE LIST VIA CM/ECF**
**SYLVIA AHN, as daughter and on behalf of the Estate of Choung Woong Ahn, v. GEO GROUP, INC**

**Case No. 1:22-at-00351**

Trevor Kosmo (SBN 329218)

Priya Arvind Patel (SBN 295602)
CENTRO LEGAL DE LA RAZA
3400 East 12th Street
Oakland, CA 94601
Telephone: (510) 838-02656
Facsimile: (510) 437-9164
tkosmo@centrolegal.org
*Attorney for Plaintiff, SYLVIA AHN, as daughter and on behalf of the Estate ofChoung Woong Ahn*

Oren Nissim Nimni*
Amaris Montes*
sophie Angelis (SBN 341668)
RIGHTS BEHIND BARS
416 Florida Ave. NW #26152
Washington, D.C. 20001
Telephone: (202) 540-0029
oren@rightsbehindbars.org
A*ttorney for Plaintiff, SYLVIA AHN, as daughter and on behalf of the Estate of Choung Woong Ahn*

Lisa Knox (SBN 279406)

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
1999 Harrison St #1800
Oakland, CA 94612
Telephone: 5102302746
Facsimile: (415) 840-0046
lisa@ccijustice.org