Lisa Knox  (SBN: 279406)
CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
1999 Harrison St #1800
Oakland, CA 94612
Telephone: (510) 230-2746
Facsimile: (415) 840-0046
lisa@ccijustice.org

Oren Nissim Nimni*
Amaris Montes*
Sophie Angelis (SBN 341668)
RIGHTS BEHIND BARS
416 Florida Ave. NW #26152
Washington, D.C. 20001
Telephone: (202) 540-0029
oren@rightsbehindbars.org

Trevor Kosmo (SBN 329218)
Priya Arvind Patel (SBN 295602)
CENTRO LEGAL DE LA RAZA
3400 East 12th Street
Oakland, CA 94601
Telephone: (510) 838-0265
Facsimile: (510) 437-9164
tkosmo@centrolegal.org
ppatel@centrolegal.org

*Counsel for Plaintiff Sylvia Ahn*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SYLVIA AHN, as daughter and on behalf of the Estate of Choung Woong Ahn,<br><br>    Plaintiff,<br><br>    v.<br><br>GEO GROUP, INC.; UNITED STATES IMMIGRATION & CUSTOMS ENFORCEMENT; and the CITY OF MCFARLAND,<br><br>    Defendants. | Case No. 1:22-cv-00586-JLT-BAK (SAB)<br><br>**MEMORANDUM IN OPPOSITION TO DEFENDANT GEO GROUP'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |

*pro hac vice

## MEMORANDUM IN OPPOSITION TO DEFENDANT GEO GROUP'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

GEO Group, Inc. ("Defendant") asks this Court to dismiss Plaintiff's claims under the Unruh Civil Rights Act ("Unruh Act") and the Bane Civil Rights Act ("Bane Act") for failure to state a claim. Defendant's request should be denied because Plaintiff properly states a claim under both California statutes.

First, as to the Unruh Act, Defendant argues that 1) it does not qualify as a "business establishment" and is therefore not covered by the Act. *See* Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("Mot. Dismiss") at 5, ECF No. 48. But, GEO Group is a for-profit company, contracted by ICE to provide services (e.g., medical care, food, etc.) to detainees at Mesa Verde, and it did provide those services to Mr. Ahn. These features place Defendant well within the expansive definition of a "business establishment" under the Unruh Act. Defendant also argues that 2) Mr. Ahn was not denied accommodations "because of any alleged disability" for purposes of the Unruh Act. Mot. Dismiss at 6, ECF No. 48. This argument also fails. Plaintiff has alleged that Defendant violated Mr. Ahn's rights under the ADA, which in turn automatically constitutes a violation of the Unruh Act. Defendant appears to argue that it is not liable for violating Mr. Ahn's rights under the ADA if it did not *intentionally* do so, but this misstates the legal standard: there need not be intentional discrimination to plead a violation of the ADA – failure to accommodate is enough.

Defendant also requests that this Court dismiss Plaintiff's claim under the Bane Act. This request should also be denied. Defendant argues that 1) it did not have "specific intent" to violate Mr. Ahn's rights, as the Bane Act requires. But recklessness (the *mens rea* that Plaintiff has pleaded) satisfies the intent requirement—which, anyways, is a "factual determination" and not a legal question suitable for resolution on a motion to dismiss. Defendant's second argument that 2) it did not violate Mr. Ahn's right through "coercion" also fails. Detention in a

solitary cell constitutes a "coercion" imposed on Mr. Ahn, and recent precedent suggests that Plaintiff need not plead a separate "threat, intimidation, or coercion" by Defendant to show a Bane Act violation. For these reasons and those that follow, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint should be DENIED.

## **Legal Standard**

To withstand a challenge pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But "the plausibility standard is not akin to a probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And when considering a motion to dismiss, a court must construe the complaint in the light most favorable to the non-moving party and accept as true all the complaint's material allegations. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). A court must also accept as true all reasonable inferences to be drawn from those material allegations. *See Brown v. Elec. Arts, Inc.,* 724 F.3d 1235, 1247–48 (9th Cir. 2013).

In deciding questions of state law, e.g., interpretations of the Bane Act and Unruh Act, this Court is bound by precedents of the California Supreme Court, and when there are no such relevant decisions, by precedents of the California Courts of Appeal. *See Vestar Development II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) ("[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." (quoting *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996)). A California Court of Appeal is not bound by conflicting precedents from other California Courts of Appeal in different districts or divisions. *See McCallum v. McCallum*, 190 Cal. App. 3d 308, 315 n.4 (Cal. Ct. App. 1987) ("[D]ecision of a [California] court of appeal is not binding [on others]. One district or division may refuse to follow a prior decision of a different

district or division[.]"). If there is no decision from the California Supreme Court, and case law from different California Courts of Appeal is unclear on an issue, "a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Vestar*, 249 F.3d at 960.

## Argument

**I.     As a "private operator" of a federal detention center, Defendant's failure to provide reasonable accommodation is a violation of the Unruh Act.**

Defendant first argues in its Motion to Dismiss that it is not liable under the Unruh Act because "(1) [it] is not a business establishment and there was no customer-proprietorship relationship and (2) [Mr. Ahn] was not denied accommodations because of any alleged disability." Mot. Dismiss at 5, ECF No. 48. Both arguments fail.

*1.     Defendant is a "business establishment" under the Unruh Act because it is a for-profit entity operating within a detention facility, whose services such as medical care were used by Mr. Ahn.*

Defendant first argues that, despite being a business operating in California, it is not a business establishment and so not liable under the Unruh Act. Defendant is incorrect. The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). A private cause of action for damages is available for a violation of the Unruh Act. Cal. Civ. Code § 52. The California Supreme Court has held that, in the context of the Unruh Act, "the term 'business establishments' [should be] used in the broadest sense possible." *O'Connor v. Village Green Owners Assn.*, 33 Cal. 3d 790, 795 (Cal. 1983). That same court has also held that a for-profit corporation is a "business establishment," because the word business "embraces everything about which one

can be employed, and it is often synonymous with calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain." *Burks v. Poppy Construction Co.*, 57 Cal. 2d 463, 468 (Cal. 1962). The Northern District has since held that that "a private, for-profit entity that functions as a business within County jails, whereby it is paid to provide services to inmates," is a "business establishment." *Wilkins-Jones v. Cnty. of Alameda*, 859 F. Supp. 2d 1039, 1050 (N.D. Cal. 2012). Defendant is a private, for-profit company, that is contracted by the government to provide services to the immigrant detainees in the Mesa Verde facility—that is, a business establishment.

      Defendant's arguments to the contrary are unsuccessful. First, Defendant argues that it is not a business establishment because there is no "customer-proprietorship relationship" between itself and Mr. Ahn. *See* Mot. Dismiss at 5, ECF No. 48. The Ninth Circuit has made clear that California courts "have allowed parties that are not 'clients, patrons or customers' in the traditional sense to bring Unruh Act claims" so long as they are "recipients of the business establishment's . . . goods, services or facilities." *See Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 873 (9th Cir.1996) (quoting *Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72, 83 n.12 (Cal. 1985)); *see also Wilkins-Jones*, 859 F. Supp. 2d at 1050 ("The fact that [the private contractor] receives its profits from the County, not directly from the inmates it serves, does not defeat the [Unruh] Act's application."). Detainees are the recipients of numerous GEO Group services at Mesa Verde, including meal and medical services. The Ninth Circuit noted in *Arizona ex rel. Horne* that GEO "provides corrections and detention management, health and mental health services." 816 F.3d at 1195. Plaintiff has also pleaded that Defendant's mental health services are provided to detainees such as Mr. Ahn. *See, e.g.*, SAC ¶ 57, ECF No. 48 ("[A] clinical psychologist *subcontracted by GEO Group* reported that Mr. Ahn appeared to be at 'high suicidal risk if deported.'") (emphasis added).

Second, Defendant attempts to argue that it is not a business establishment because it is a private operator, rather than a private contractor, of Mesa Verde. To make this argument, Defendant relies solely on a non-binding, unpublished case, *Estate of Mejia v. Archambeault*, No. 20-cv-2454, 2021 WL 4428990, at *8 (S.D. Cal. Sept. 27, 2021), for the proposition that the Unruh Act creates a distinction between "private operators" of detention centers (which are *not* business establishments) and "private contractors," which are. According to Defendant, it is a private "operator" and so not covered by the Unruh Act. *See* Mot. Dismiss at 5–6, ECF No. 48.

There are a few problems with this argument. One is that the distinction between operator and contractor—though used by the *Estate of Meija* court—is not based in statutory text and is nowhere to be found in California state court cases interpreting the Unruh Act. Courts in general should not create atextual exceptions to statutes. *See, e.g.*, *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1747 (2020) ("[W]hen Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule."). And here, Defendant's proposed exception is even more problematic, because it contravenes logic and the direction of the California Supreme Court to interpret "business establishment" broadly, and adds confusion where there is none. To date, cases where California courts have held a defendant to *not* be a "business establishment" involve suits against actual government agencies. *See, e.g.*, *Spanish Speaking Citizens' Found., Inc. v. Low*, 85 Cal. App. 4th 1179, 1240 (Cal. Ct. App. 2000) (holding that the California Department of Insurance is not a "business establishment"); *Brennon B. v. Superior Ct. of Contra Costa Cnty.*, 57 Cal. App. 5th 367, 389 (Cal. Ct. App. 2020) (holding that "California's public school districts are not business establishments").

Other courts have also rejected this distinction, and this Court should do the same. For instance, the *Wilkins-Jones* court reasoned that both contractors and operators alike are "private, for-profit entit[ies] that function[] as a business within

[the detention facility], whereby they are paid to provide services to inmates." *Wilkins-Jones*, 859 F. Supp. 2d at 1050. Because both "provid[e] services for a fee," they both "perform[] a 'customary business function,'" through which they serve inmates. *Id*. Under this more sensible judicial approach, Defendant's argument that they are "operators" as opposed to "contractors" is inapposite.

For these reasons Defendant is a business establishment for purposes of the Unruh Act and its motion to dismiss should be denied.

> *2.   Defendant violated the Unruh Act by failing to provide Mr. Ahn with a reasonable accommodation as required by the ADA, even if it did not take affirmative steps to discriminate against him*

To show an Unruh Act violation, a plaintiff may prove that "he was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment"; that "his disability was a motivating factor for this denial"; that "defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services;" and that "defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm." *Johnson v. Beahm*, No. 11-cv-294, 2011 WL 5508893, at *4 (E.D. Cal. Nov. 8, 2011) (citing California Civil Jury Instructions (BAJI), No. 7.92 (Spring 2009)); *see also* Mot. Dismiss at 4–5, ECF No. 48. Alternatively, a plaintiff can show an Unruh Act violation by demonstrating that the defendant violated the Americans with Disabilities Act ("ADA"). Cal. Civ. Code § 51(f). "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007); *see also* 42 U.S.C. § 12182(a)

Defendant does not contest that Plaintiff alleged elements (1) and (2), and that argument is waived. *See Dytch v. Yoon*, No. C-10-02915-MEJ, 2011 WL 839421, at

*3 (N.D. Cal. Mar. 7, 2011) (collecting cases).[1] Instead, Defendant takes issue only with prong (3), arguing that "Plaintiff fails to present any evidence to state a claim of relief that [Mr. Ahn] was denied accommodations because of his alleged disability[.]"). Mot. Dismiss at 6, ECF No. 48.

This argument is incorrect for a couple reasons. For one, Defendant appears to believe that it is not liable because it did not intentionally deny Mr. Ahn accommodations. But the ADA does not recognize only *intentional action* as disability discrimination: the statute also contemplates that *thoughtless inaction* can also be discrimination, if reasonable accommodations were required but not provided. *See, e.g.*, 42 U.S.C. § 12182(b)(2)(A)(ii) ("[D]iscrimination includes . . . a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such . . . accommodations to individuals with disabilities[.]"); *see also Payan v. Los Angeles Community College District*, 11 F.4th 729, 737 (9th Cir. 2021) ("Section 504 and the ADA were specifically intended to address both intentional discrimination and discrimination caused by 'thoughtless indifference' or 'benign neglect[.]'").

Here, Plaintiff alleged that Defendant discriminated against Mr. Ahn, because Mr. Ahn required accommodations and Defendant did not provide them. *See, e.g.*,

---

[1] Plaintiff has alleged these elements. Mr. Ahn had "depression, anxiety, and other mental illnesses that substantially limited his 786 ability to perform major life activities, including sleeping, communicating and regular socialization," and a recorded history of the same. *See* SAC ¶ 169; *see also* 42 U.S.C. § 12102(2) ("(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."). Mesa Verde is a public accommodation because it is a "place of lodging" that Defendant "operates." *See* 42 U.S.C. § 12182(a) (listing examples of public accommodations); 42 U.S.C. § 12182 (defining public accommodation); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676–77 (2001) ("[T]he legislative history indicates 'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled.").

SAC ¶ 113a, ECF No. 46 ("Mr. Ahn requested an accommodation of his disabilities repeatedly when he made requests for release and all of those requests for accommodation were denied."); *id.* at ¶ 99c ("GEO Group failed to provide Mr. Ahn the reasonable accommodation of a room that was regularly observed and devoid of implement with which one could affect a suicide attempt."); *id.* at ¶ 171–72 ("The denial constitutes discrimination against Mr. Ahn on the basis of his disability, because GEO Group failed to provide him with a reasonable accommodation (*e.g.*, a different housing assignment) when one was necessary."); SAC at ¶ 89d; *id*. at 171. The Unruh Act requires no additional proof of intentional discrimination, even if a plaintiff seeks damages. *See Munson*, 46 Cal. 4th at 665 ("A plaintiff who establishes a violation of the ADA . . . need not prove intentional discrimination in order to obtain damages under [the Unruh Act].").

Defendant's argument that "Plaintiff fails to present any evidence" regarding the denial of accommodations misunderstands the case's current procedural posture. Mot. Dismiss at 6, ECF No. 48. Plaintiff need not "present any evidence" at the pleading stage: a plaintiff need only well-pled allegations that state a claim, not evidence.

Because Plaintiff has adequately pleaded that Mr. Ahn was denied a reasonable accommodation for his disability and suffered as a result, Plaintiff has stated an Unruh Act claim and Defendant's motion should be denied.

**II.  Defendant's placement of Mr. Ahn in solitary confinement despite his depression and obvious suicidal risk constitutes "specific intent" and "coercion" as required by the Bane Act.**

The Bane Act provides a private cause of action "[i]f a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution

or laws of [California]." Cal. Civ. Code § 52.1(b). California Courts have read this provision to include two distinct elements: "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Warren v. Mgt. and Training Corp.*, No. 16-cv-849, 2016 WL 8730711, at *4 (E.D. Cal. Aug. 5, 2016) (quoting *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (Cal. Ct. App. 2015)). Defendant argues that Plaintiff failed to allege both elements. Mot. Dismiss at 9, ECF No. 48. But Plaintiff alleged that Defendant knowingly and recklessly placed Mr. Ahn in a solitary cell in violation of his rights: knowledge and recklessness meets the *mens rea* standard, and solitary confinement is a form of coercion, so Plaintiff plausibly stated both elements. Thus, Defendant's request to dismiss Plaintiff's claim under the Bane Act should be denied.

    *1.    Defendant's reckless disregard of Mr. Ahn's suicidal risk constitutes "specific intent" under the Bane Act.*

Under California state court precedent, recklessly placing Mr. Ahn in a solitary cell satisfies the intentionality prong of the Bane Act analysis. *Cornell v. City and County of San Francisco* is instructive here. 17 Cal. App. 5th 766 (Cal. Ct. App. 2017). After finding that the defendant in that case engaged in "threats, intimidation or coercion," *Cornell* adopted a two-step test for the scienter requirement under the Bane Act: first, a legal determination of whether the right at issue is "clearly delineated and plainly applicable under the circumstances of the case"; if the right is applicable, a factual determination for the jury of whether Defendant "commit[ed] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that [] right." *Cornell*, 17 Cal. App. 5th at 803.

As to the first step, Plaintiff alleged that Defendant violated Mr. Ahn's Fifth Amendment due process right to adequate medical care, and Defendant does not argue otherwise. SAC ¶ 177–87, ECF No. 48. As to the second step, Defendant argues that its actions were not "Plaintiff fails to properly plead that the decision was

committed for the particular purpose of depriving Detainee of his enjoyment of right." Mot. Dismiss at 8, ECF No. 48. To the extent Defendant is suggesting that it did not violate the Bane Act because it did not affirmatively want Mr. Ahn to suffer (despite knowing that he would), *Cornell* flatly contradicts that statutory reading: "Subjective 'spite' was relevant here . . . . But whether the appellant officers understood they were acting unlawfully was not a requirement. Reckless disregard of the 'right at issue' is all that was necessary." *Cornell*, 17 Cal. App. 5th at 804; *see also Murchison v. Cnty. of Tehama*, 69 Cal. App. 5th 867, 897 (Cal. Ct. App. 2021) (quoting and applying the "reckless disregard" standard from *Cornell*). The Ninth Circuit, following *Cornell* as binding precedent, has more than once applied "reckless disregard" as the requisite scienter under the Bane Act. *Reese v. Cnty. of Sacramento,* 888 F.3d 1030, 1045 (9th Cir. 2018) ("[I]t is not necessary for the defendants to have been thinking in constitutional or *legal terms* at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." (internal citations and quotations omitted)); *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) ("[S]pecific intent can be shown 'even if the defendant did not in fact recognize the unlawfulness of his act' but instead acted in 'reckless disregard' of the constitutional right." (internal citations omitted)). Applying the scienter requirement to the facts there, *Cornell* found that the officers involved "were *unconcerned* from the outset with whether there was legal cause to detain or arrest [the plaintiff], but that when they realized their error, they doubled-down on it, *knowing* they were inflicting grievous injury on their prisoner," and thus violated the Bane Act. *Id.* (emphasis added). *Cornell*'s finding on "specific intent," in other words, did not require that the officers affirmatively desired the infringement of the plaintiff's right.

Like in *Cornell*, Plaintiff here alleged sufficient facts to show that Defendant displayed reckless disregard towards Mr. Ahn's right to medical care and accommodation. Plaintiff alleged that Defendant was *unconcerned* about the well-

known suicide risks attendant to placing Mr. Ahn in a solitary cell with a "tie off point" and a bedsheet. *See, e.g.*, SAC ¶ 48, ECF No. 46. Plaintiff also alleged that Defendant "doubled-down" (*i.e.*, kept Mr. Ahn there) after *knowing* the suicide risks and being successively warned by a clinical psychologist, Mr. Ahn's attorney, and a medical provider. *See id.* at ¶ 57–59; *see also id.* at ¶ 178 (citing various sources to establish that "the consequences of defendant's acts and omissions [were] obvious"). These allegations "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," because Plaintiff pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). Defendant's placement of Mr. Ahn in a solitary cell, despite his known suicidal risk, allows a reasonable inference that Defendant recklessly or even knowingly interfered with Mr. Ahn's Fifth Amendment due process rights.

Further, whether "specific intent" existed is a factual issue that survives dismissal at the pleading stage. Defendant argues that "Plaintiff fails to *establish* a reckless disregard for Detainee's constitutional right." Mot. Dismiss at 8, ECF No. 48 (emphasis added). But, again, at this stage, Plaintiff need only plausibly *plead* and need not *establish* any facts. As Defendant acknowledged in its Amended Motion to Dismiss, whether Defendant "commit[ed] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that [] right" is a factual determination for the jury. *Cornell*, 17 Cal. App. 5th at 803; *see also* Mot. Dismiss at 8, ECF No. 48. Defendant's invocation of *Reese* regarding what "the jury must find" does not support its Motion to Dismiss, but rather shows that Plaintiff has pleaded enough facts for a reasonable disagreement of whether Defendant in fact possessed "specific intent." Mot. Dismiss at 8, ECF No. 21 (quoting *Reese,* 888 F.3d at 1045).

    2.    *Placing Mr. Ahn in a solitary cell constitutes "coercion" under the Bane Act.*

Defendant also argues that Plaintiff failed to allege a violation of the Bane Act because Defendant's interference with Mr. Ahn's Fifth Amendment due process right was not "by threat, intimidation, or coercion" under the Bane Act. Defendant asserts that "there is no evidence in the Complaint Defendant *threatened* or attempted to *intimidate* [Mr. Ahn]," and concluded that the "threat, intimidation, or coercion" element was not pleaded. Mot. Dismiss at 8–9, ECF No. 48 (emphasis added). Defendant, however, leaves out "coercion." Placing Mr. Ahn in a solitary cell constitutes "coercion."

Placing Mr. Ahn in a solitary cell in violation of due process, like an unreasonably prolonged detention, is inherently coercive. The plaintiff in *Shoyoye v. County of Los Angeles* continued to be detained after the court ordered him released, so he sued under the Bane Act. 203 Cal. App. 4th 947, 953, 960 (Cal. Ct. App. 2012). The court noted that that in such cases of over-detention or wrongful detention, the "coercion is inherent in the constitutional violation alleged." *Id.* at 958. This is so even though the plaintiff in *Shoyoye* was already in detention before the constitutional violation. *Id.* at 951. *Shoyoye* also cites to *Gant v. County of Los Angeles*, which noted that where the prisoner was "unlawfully transferred to an administrative segregation unit in another prison without a hearing," "the constitutional violation itself is inherently coercive." 765 F. Supp. 2d 1238, 1253 (C.D. Cal. 2011). Likewise, here, Plaintiff detailed Mr. Ahn's placement in a segregation in violation of the Fifth Amendment is inherently coercive for purposes of the Bane Act.

The inherent coerciveness of unlawful solitary confinement suffices to show "coercion" under the Bane Act. A California Court of Appeals has recently rejected a reading of *Shoyoye* which would suggest that coercion inherent in an unlawful action is never sufficient for a Bane Act claim and that Plaintiff must always show an independent "threat, intimidation, or coercion." *B.B. v. Cnty. of Los Angeles*, 25

Cal. App. 5th 115, 130 (Cal. Ct. App. 2018), *rev'd on other grounds*, *B.B. v. Cnty. of Los Angeles*, 10 Cal. 5th 1 (Cal. 2020) ("While we acknowledge there is language in *Shoyoye* to support this view, we find this reading to be inconsistent with the court's actual analysis of the issue. More importantly, this reading conflicts with the Bane Act's statutory text. Accordingly, we reject it."). The court instead read *Shoyoye* to hold only that "where an individual is subject to coercion that is incidental to an *unintentional or negligent* interference with civil rights, the individual must show some additional coercion," a result the court found compelled by the statutory language. *Id.* at 131 (emphasis added); *see also Cornell*, 17 Cal. App. 5th at 800 ("Nothing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged."); *Reese*, 888 F.3d at 1043 (reading *Cornell* to hold that "*Shoyoye* was limited to cases involving mere negligence").

*B.B.* is binding on this Court because there has been no decision from the California Supreme Court on whether inherent coerciveness suffices to show "coercion" under the Bane Act, nor is there convincing evidence that the California Supreme Court would disagree with *B.B. See Vestar*, 249 F.3d at 960 ("[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts."). The California Supreme Court has had no decision interpreting Cal. Civ. Code § 52.1(b) since *Venegas v. County of Los Angeles*. 32 Cal. 4th 820 (Cal. 2004). And the earlier two decisions either concerned different questions or different provisions of the Bane Act. *See Jones v. Kmart Corp.*, 17 Cal. 4th 329 (Cal. 1998) (holding that a constitutional violation actionable under § 52.1(b) requires some involvement of state authority); *In re M.S.*, 10 Cal. 4th 698 (Cal. 1995) (interpreting § 52.1(j)).

Even if this Court finds precedents from California Courts of Appeal to be in tension and proceeds to "predict how the highest state court would decide the issue,"

this Court should follow *B.B.*'s reading of the Bane Act. *Vestar*, 249 F.3d at 960. In *Venegas*, the California Supreme Court rejected a reading of the Bane Act that required plaintiffs to be a member of a protected class, noting that "imposing added limitations on the scope of section 52.1 would appear to be more a legislative concern than a judicial one." *B.B.*, 25 Cal. App. 5th at 132 (quoting *Venegas*, 32 Cal. 4th at 842–43). As the *B.B.* court noted, requiring an independent "threat, intimidation, or coercion" here is exactly a judicial imposition of added limitation that "has no basis in the statute's unambiguous language, and thus can be imposed only by legislative action." *Id*. Adding to the prediction, other California Courts of Appeal have agreed with *B.B.*'s reading of the statute and *Shoyoye*. *See Cornell*, 17 Cal. App. 5th at 799–800 ("[S]ome courts have read *Shoyoye* as having announced 'independen[ce] from [inherent coercion]' as a requisite element of all Section 52.1 claims . . . but we think those courts misread the statute as well as the import of *Venegas*. . . . [T]he [California] Supreme Court [in *Venegas*] declined to place 'added restrictions on the scope of section 52.1' beyond its plain language, concluding that that 'would appear to be more a legislative concern than a judicial one.' The same may be said here.") (internal citations omitted); *Murchison*, 69 Cal. App. 5th at 896 ("The Bane Act does not require that 'the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged.") (quoting *Cornell*, 17 Cal. App. 5th at 800).

In addition, the Ninth Circuit in *Reese* agreed with *Cornell*'s reading of the Bane Act's statutory language. *Reese*, 888 F.3d at 1043 ("As to the requirement of coercion independent from the constitutional violation, *Cornell* correctly notes that the plain language of Section 52.1 gives no indication that the 'threat, intimidation, or coercion' must be independent from the constitutional violation."). *Reese* also found no convincing evidence that the California Supreme Court would disagree with this reading of the statute. *Id.* ("Moreover, in the two California Supreme Court cases to apply Section 52.1 [*Venegas* and *Jones*] . . . neither gave any indication of

Opp. to Defendant's Mot. Dismiss         14

an independent coercion requirement."). *See also Reese*, 888 F.3d at 1044 n.5 ("To the extent that we previously followed *Shoyoye* in concluding that 'a plaintiff in a search-and-seizure case must allege threats or coercion beyond the coercion inherent in a detention or search,' . . . we are now guided by *Cornell* to interpret *Shoyoye*'s holding as limited to cases involving mere negligence.") (internal citations omitted).

Defendant placed Mr. Ahn in solitary confinement. Plaintiff alleged that this involved scienter beyond mere "*unintentional or negligent* interference with civil rights." *B.B.*, 25 Cal. App. 5th at 131; *see also* SAC ¶ 185, ECF No. 46 ("[Defendant's] acts and omissions are also evidence of a 'reckless disregard' if not a knowing interference, of [Mr.Ahn's] rights."). Both "specific intent" and "coercion" have been sufficiently pleaded, and this Court should deny Defendant's motion to dismiss Plaintiff's Bane Act claim.

## Conclusion

For the forgoing reasons, Defendant's Amended Motion to Dismiss should be denied.

Dated: May 22, 2023                         Respectfully submitted,

By: */s/*Oren Nimni

Oren Nimni *admitted pro hac vice*

Amaris Montes *admitted pro hac vice*

Sophie Angelis (SBN 341668)
416 Florida Avenue, NW #26152
Washington, D.C. 20001
Rights Behind Bars
(206) 200-9088
oren@rightsbehindbars.org

*Attorneys for Plaintiff Sylvia Ahn*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2023, a true and accurate copy of the foregoing has been served on all parties and counsel of record via this Court's CM/ECF electronic filing system and/or via first class mail.

Dated: May 22, 2023

/s/ Oren Nimni<br>Oren Nimni