PHILLIP A. TALBERT
United States Attorney
BRODIE M. BUTLAND
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000

Attorneys for Defendants United States
Immigration and Customs Enforcement and
the United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA AHN,<br><br>                              Plaintiff,<br><br>                    v.<br><br>GEO GROUP, INC., et al.,<br><br>                              Defendants. | CASE NO. 1:22-CV-00586-CDB<br><br>MEMORANDUM IN SUPPORT OF THE UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT'S AND THE UNITED STATES OF AMERICA'S MOTION TO DISMISS |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.  INTRODUCTION .................................................................................................1

II. BACKGROUND ..................................................................................................2
    A.  Mr. Ahn is transferred to Mesa Verde ...................................................2

    B.  Mesa Verde ............................................................................................2

    C.  The Second Amended Complaint's allegations regarding Mr. Ahn's suicide...................5

III. STANDARD OF REVIEW ...................................................................................6
    A.  Federal Rule of Civil Procedure 12(b)(1). .............................................6

    B.  Federal Rule of Civil Procedure 12(b)(6). .............................................6

IV. LAW AND ANALYSIS ........................................................................................7
    A.  ICE is immune from suit.........................................................................7

    B.  The United States is immune from suit under the independent contractor and discretionary function exceptions to the FTCA. ...................................7

        1.  The United States is immune under the independent contractor exception. ...................................................................................8

        2.  The United States has immunity under the discretionary function exception. ..................................................................................14

    C.  Plaintiff cannot state a claim for false imprisonment. .........................23

    D.  Plaintiff cannot state a claim for intentional infliction of emotional distress. ..................23

    E.  Plaintiff cannot recover punitive damages or attorney fees from the United States. .........................24

    F.  Plaintiff is not entitled to a jury trial against the United States. .........................24

V.  CONCLUSION....................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Ahn v. Barr,*
   No. 20-cv-2604, 2020 WL 2113678 (N.D. Cal. May 4, 2020)............................................. 10

*Alvarado v. United States,*
   No. CVF-09-243, 2010 WL 3001391 (E.D. Cal. July 29, 2010)....................................... 11

*Anderson v. United States,*
   127 F.3d 1190 (9th Cir. 1997) ............................................................................................ 24

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)............................................................................................................. 7

*Autery v. United States,*
   424 F.3d 944 (9th Cir. 2005) ...................................................................................... 8, 9, 12

*A-Z Int'l. v. Phillips,*
   323 F.3d 1141 (9th Cir. 2003) ............................................................................................. 6

*Balisteri v. Paifica Police Dept.,*
   901 F.2d 696 (9th Cir. 1990) ............................................................................................... 6

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................................................................. 7

*Bibeau v. Pac. Nw. Rsch. Found., Inc.,*
   339 F.3d 942 (9th Cir. 2003) ....................................................................................... 17, 19

*Bocanegra v. Jakubowski,*
   241 Cal. App. 4th 848 (2015) ............................................................................................ 23

*Borquez v. United States,*
   773 F.2d 1050 (9th Cir. 1985) ...................................................................................... 8, 13

*C.R.S. v. United States,*
   11 F.3d 791 (8th Cir. 1993) ............................................................................................... 22

*Carroll v. CDCR,*
   No. 1:23-cv-0005, 2023 WL 1477410 (E.D. Cal. Feb. 2, 2023) ....................................... 13

*Chaffin v. United States,*
   176 F.3d 1208 (9th Cir. 1999) ........................................................................................... 11

*Clemons v. United States,*
   No. 2:21-cv-9194, 2022 WL 4596651 (C.D. Cal. July 7, 2022) ....................................... 19

*Colwell v. HHS*,
  558 F.3d 1112 (9th Cir. 2009) ................................................................. 6

*Copeland v. Cnty. of Alameda*,
  No. 12-cv-4286, 2014 WL 1266198 (N.D. Cal. Mar. 21, 2014) ...................... 23

*Dang Chan v. Holder*,
  594 F. App'x 931 (9th Cir. 2015) ............................................................ 10

*Demore v. Kim*,
  538 U.S. 510 (2003) .............................................................. 10, 15, 23

*Dickman v. United States*,
  No. 02-cv-2371, 2006 WL 8455252 (S.D. Cal. Mar. 8, 2006) ...................... 11

*E&J Gallo Winery v. Pestmaster Servs., Inc.*,
  No. 2:19-cv-2120, 2020 WL 1451582 (E.D. Cal. Mar. 25, 2020) ................. 9, 12

*Edison v. United States*,
  822 F.3d 510 (9th Cir. 2016) ............................................ 9, 12, 13, 15

*Esquibel v. United States*,
  No. 1:14-cv-1702, 2015 WL 4069060 (E.D Cal. July 2, 2015) ...................... 24

*FDIC v. Craft*,
  157 F.3d 697 (9th Cir. 1998) ................................................................. 7

*FDIC v. Meyer*,
  510 U.S. 471 (1994) ............................................................................. 6

*Foster v. United States*,
  522 F.3d 1071 (9th Cir. 2008) ................................................................ 6

*Fraihat v. U.S. ICE*,
  16 F.4th 613 (9th Cir. 2021) ............................................................... 21

*GEO Group, Inc. v. Newsom*,
  50 F.4th 745 (9th Cir. 2022) ............................................................ 2, 17

*Gonzales v. United States*,
  814 F.3d 1022 (9th Cir. 2016) ............................................................. 20

*Gowdy v. United States*,
  412 F.2d 525, 529 (6th Cir. 1969) ..................................................... 11, 18

*Guile v. United States*,
  422 F.3d 221 (5th Cir. 2005) ........................................................... 18, 19

*Gunn v. Tilton*,
  No. CV-08-1038, 2010 WL 3744610 (E.D. Cal. Sept. 21, 2020) ...................................... 13

*Hakimi v. United States*,
  No. 08-0075, 2008 WL 8140104 (E.D. Va. Nov. 18, 2008) .............................................. 16

*Hanus v. United States*,
  736 F. App'x 173 (9th Cir. 2018) ..................................................................... 11

*Hines v. United States*,
  60 F.3d 1442 (9th Cir. 1995) ........................................................................... 8

*In re Consol. U.S. Atmospheric Testing Litig.*,
  820 F.2d 982 (9th Cir. 1987) ......................................................................... 22

*In re Sparkman*,
  703 F.2d 1097 (9th Cir. 1983) ....................................................................... 24

*Jacobsen v. Marin Gen. Hosp.*,
  192 F.3d 881 (9th Cir. 1999) ......................................................................... 24

*Johnson v. United States*,
  No. CV-12-9051, 2014 WL 12572914 (C.D. Cal. Mar. 14, 2014)..................................... 14

*Jones v. United States*,
  No. 1:08-cv-1137, 2011 WL 773285 (E.D. Cal. Feb. 28, 2011) .................................. 8, 11

*Kennedy v. USPS*,
  145 F.3d 1077 (9th Cir. 1998) ......................................................................... 7

Kokkonen v. Guardian Life Ins. Co.,
  511 U.S. 375 (1994)...................................................................................... 6

*Kowbel v. Univ. of S. Cal.*,
  827 F. App'x 794 (9th Cir. 2020) ..................................................................... 24

*Krainski v. Nev. Bd. of Regents*,
  616 F.3d 963 (9th Cir. 2010) ......................................................................... 13

*Lanza v. Ashcroft*,
  389 F.3d 917 (9th Cir. 2004) ........................................................................... 6

*Layton v. United States*,
  984 F.2d 1496 (8th Cir. 1993) ....................................................................... 18

*Lehman v. Nakshian*,
  453 U.S. 156 (1981)...................................................................................... 7

*Lemus-Galvan v. Mukasey*,
    518 F.3d 1081 (9th Cir. 2008) ................................................................................. 10

*Limpin v. United States*,
    No. 17-cv-1729, 2019 WL 1326670 (S.D. Cal. Mar. 25, 2019) ................................. 15

*Lopez v. U.S. ICE*,
    455 F. App'x 427 (5th Cir. 2011) ............................................................................. 21

*Martin v. Cal. Dep't of Veterans Affairs*,
    560 F.3d 1042 (9th Cir. 2009) ................................................................................. 23

*Martinez v. GEO Group, Inc.*,
    2020 WL 2496063 (C.D. Cal. Jan. 7, 2020) ............................................................. 13

*Martinez v. GEO Group, Inc.*,
    No. 18-1125, 2019 WL 3758026 (C.D. Cal. Apr. 30, 2019) ..................................... 13

*Martinez v. United States*,
    No. 1:16-cv-1556, 2017 WL 1881962 (E.D. Cal. May 9, 2017) ................................ 22

*Martinez v. United States*,
    No. CV-13-6844, 2014 WL 12607839 (C.D. Cal. Mar. 17, 2014) .............................. 10

*Maryland Cas. Co. v. United States*,
    No. C-05-2558, 2006 WL 563046 (N.D. Cal. Mar. 6, 2006) ..................................... 19

*Mirmehdi v. United States*,
    689 F.3d 975 (9th Cir. 2012) ................................................................................... 16

*Morales-Alfaro v. U.S. Dep't of Homeland Security*,
    No. 20-cv-82, 2021 WL 1061171 (S.D. Cal. Mar. 17, 2021) ..................................... 23

*Myers & Myers, Inc. v. U.S. Postal Serv.*,
    527 F.2d 1252 (2d Cir. 1975) ................................................................................... 18

*Myles v. United States*,
    47 F.4th 1005 (9th Cir. 2022) ................................................................................. 14

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2002) ..................................................................................... 6

*Nelson v. United States*,
    No. 13-1817, 2014 WL 988860 (D. Md. Mar. 12, 2014) ........................................... 10

*Nurse v. United States*,
    226 F.3d 996 (9th Cir. 2000) ................................................................................... 22

*Perkins v. United States*,
   55 F.3d 910 (4th Cir. 1995) ............................................................................. 10

*Rabieh v. United States*,
   No. 5:19-cv-944, 2019 WL 5788673 (N.D. Cal. Nov. 6, 2019) ........................ 22

*Reno v. Am.-Arab Anti-Disc. Comm.*,
   525 U.S. 471 (1999) ......................................................................................... 15

*Rios-Berrios v. INS*,
   776 F.2d 859 (9th Cir. 1985) ........................................................................... 16

*Sabow v. United States*,
   93 F.3d 1445 (9th Cir. 1996) ........................................................................... 23

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ........................................................................... 6

*Sai v. Smith*,
   No. 16-cv-1024, 2018 WL 534305 (N.D. Cal. Jan. 24, 2018) ..................... 11, 19

*Sanchez-Soriano v. United States*,
   No. 09-cv-500, 2011 WL 6217063 (S.D. Ill. Aug. 2, 2011) ............................. 16

*Schwartz v. Lassen Cnty.*,
   838 F. Supp. 2d 1045 (E.D. Cal. 2012) ............................................................ 23

*Sissoko v. Rocha*,
   509 F.3d 947 (9th Cir. 2007) ........................................................................... 15

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ........................................................................... 7

*Steinle v. San Francisco*,
   230 F. Supp. 3d 994 (N.D. Cal. 2017) .............................................................. 16

*ThermoLife Int'l, LLC v. Compound Solns., Inc.*,
   848 F. App'x 706 (9th Cir. 2021) ..................................................................... 13

*United States v. Cornejo-Macias*,
   616 F. App'x 287 (9th Cir. 2015) ..................................................................... 10

*United States v. Gaubert*,
   499 U.S. 315 (1991) ......................................................................................... 14

*United States v. Orleans*,
   425 U.S. 807 (1976) ....................................................................................... 8, 9

*United States v. Rodriguez-Garcia,*
    605 F. App'x 659 (9th Cir. 2015) ................................................................ 10

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),*
    467 U.S. 797 (1984) ...................................................................... 14, 19

*Vallier v. Jet Propulsion,*
    *Lab.*, 120 F. Supp. 2d 887 (C.D. Cal. 2000) .................................... 19, 20

*Walding v. United States,*
    955 F. Supp. 2d 759 (W.D. Tex. 2013) ............................................... 20

*Wang v. United States,*
    No. CV-10-389, 2010 WL 11463156 (C.D. Cal. Aug. 18, 2010) ............. 16

*Weissich v. United States,*
    4 F.3d 810 (9th Cir. 1993) ................................................................ 20

*Williams v. United States,*
    50 F.3d 299 (4th Cir. 1995) .............................................................. 18

*Wood v. United States,*
    290 F.3d 29 (1st Cir. 2002) ............................................................... 18

*Yanez v. United States,*
    63 F.3d 870 (9th Cir. 1995), ....................................................... 8, 9, 13

**Statutes**

8 U.S.C. § 1226 ............................................................................................. 2

8 U.S.C. § 1226(c)(2) ........................................................................... 10, 16

8 U.S.C. § 1226(e) ....................................................................................... 10

8 U.S.C. § 1252(g) ....................................................................................... 15

8 U.S.C. §§ 1101(a)(43) ................................................................................ 2

8 U.S.C. §§ 1226(c)(1)(B) ..................................................................... 15, 23

8 U.S.C. §§ 1226(c)(1)(C) ........................................................................... 10

28 U.S.C. § 1346(b)(1) ................................................................................ 14

28 U.S.C. § 2402 ......................................................................................... 24

28 U.S.C. § 2671 ........................................................................................... 8

28 U.S.C. § 2674 ............................................................................................................... 24

28 U.S.C. § 2680(a) ..................................................................................................... 14, 15

41 U.S.C. §§ 1101 ............................................................................................................ 17

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ......................................................................... 6

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 6, 7

**Regulations**

32 C.F.R. § 750.32 ........................................................................................................... 24

48 C.F.R. § 1.102(a) ........................................................................................................ 17

48 C.F.R. § 1.102-2 .......................................................................................................... 17

48 C.F.R. § 1.102-1(b) ..................................................................................................... 17

48 C.F.R. § 1.102-2(d) ..................................................................................................... 17

48 C.F.R. § 1.103 ............................................................................................................. 17

48 C.F.R. § 46.102(a) ...................................................................................................... 18

48 C.F.R. § 46.103(e) ...................................................................................................... 20

48 C.F.R. § 46.104(b) ...................................................................................................... 18

48 C.F.R. § 46.201(a) ...................................................................................................... 18

48 C.F.R. § 49.402-3(f) ................................................................................................... 20

48 C.F.R. §§ 1.000 ........................................................................................................... 17

# I.    INTRODUCTION

Choung Woong Ahn (Mr. Ahn), a lawful permanent resident, was convicted of attempted murder with a firearm enhancement.  Mr. Ahn's conviction of an aggravated felony rendered him deportable, and thus Immigration and Customs Enforcement (ICE) initiated removal proceedings against him shortly before he was released from state prison.  Because federal statutes required ICE to detain Mr. Ahn while his removal proceedings were pending, he was detained at Mesa Verde, a privately-owned, privately-run detention center operated by The GEO Group, Inc. pursuant to a federal government contract, where he died by suicide.  Plaintiff sues GEO under several state law theories and, separately, the United States under the Federal Tort Claims Act (FTCA).

Plaintiff asserts that Mr. Ahn's suicide could have been prevented but for a plethora of negligent acts and omissions by GEO.  Plaintiff further asserts that the United States is independently negligent for not releasing Mr. Ahn, for selecting GEO as contractor in the first place, for insufficiently inspecting and auditing GEO, and for not creating an adequate COVID-19 plan for Mesa Verde.  Even if Plaintiff's allegations were true, that would not establish the United States' liability for two main reasons:

1.  GEO is an independent contractor, and under the FTCA, the United States is immune to claims based on the acts and omissions of an independent contractor.  Plaintiff's allegations of ICE's independent negligence do not undermine the independent contractor exception because they either were required by law or involve duties contractually delegated in their entirety to GEO.

2.  Under the FTCA, the United States is immune from suit for performance of discretionary functions.  Yet the allegedly negligent actions Plaintiff attributes to the United States—not releasing Mr. Ahn, selecting GEO, insufficient inspections, and insufficient COVID-19 plans—involve discretionary judgments susceptible to a policy analysis.

Plaintiff further asserts that the United States is liable for false imprisonment and intentional infliction of emotional distress (IIED).  Those claims also are jurisdictionally barred by the independent contractor and discretionary function exceptions to the FTCA.  And they fail to state a claim.  The false imprisonment claim fails because ICE had legal justification to detain Mr. Ahn—in fact, federal statutory law required his detention.  Further, an emotional distress claim does not survive the death of a decedent, and plaintiff cannot assert an IIED claim on her own behalf because ICE's actions were neither directed at her nor occurred in her presence.  Plaintiff's claims against the United States therefore should be dismissed due to lack of jurisdiction and/or for failure to state a claim.

## II.    BACKGROUND

### A.    Mr. Ahn is transferred to Mesa Verde

Mr. Ahn was admitted to the United States as a lawful permanent resident in 1988.  Second Amended Complaint, ECF No. 46, ¶ 13 ("SAC ¶ __").  In 2013, he was convicted of attempted murder and sentenced to seven years imprisonment, plus an additional three years for use of a firearm.  Ex. 1, Declaration of Nancy Gonzalez ¶ 4.  He served his sentence in California State Prison (CSP) Solano.  *Id.*

Mr. Ahn's conviction was an "aggravated felony" rendering him deportable.  *Id.* at ¶ 5; 8 U.S.C. §§ 1101(a)(43); 1227(a)(2)(A)(iii).  Thus, ICE placed a detainer on Mr. Ahn so that it would be notified when he was to be released from prison.  Gonzalez Decl. ¶ 5.  In January 2020, CSP Solano informed ICE that Mr. Ahn was to be released on February 21, 2020.  *Id.*  ICE therefore commenced removal proceedings against Mr. Ahn and issued a warrant for his arrest.  *Id.* at ¶ 6.  Mr. Ahn was taken into ICE custody upon his release from CSP Solano and served with a warrant for arrest and a notice to appear at a removal hearing in immigration court.  *Id.* at ¶¶ 5-6.  Mr. Ahn was transported to Mesa Verde for detention pending his removal proceedings.  *Id.* at ¶ 7; SAC ¶ 15.

### B.    Mesa Verde

One of ICE's primary duties is Enforcement and Removal Operations (ERO), which enforces federal immigration laws and arrests, detains, and removes non-citizens who have violated them. Gonzalez Decl. ¶¶ 1, 7.  If an individual is deportable, 8 U.S.C. § 1226 permits—and sometimes requires (such as for conviction of aggravated felonies)—that ICE take him into custody during removal proceedings.  *Id.* at ¶ 7.  Although ICE owns and operates some detention facilities, it primarily houses detainees in (1) federal, state, or local facilities (such as jails or prisons) pursuant to a contract between ICE and the governmental entity; and (2)  privately-owned, privately-run facilities that house detainees pursuant to a contract between ICE and the private operator.  *See GEO Group, Inc. v. Newsom*, 50 F.4th 745, 751 (9th Cir. 2022) (en banc).

Mesa Verde is one such privately-owned, privately-run federal detention center.  SAC ¶ 5; Gonzalez Decl. ¶ 3; Ex. 2, Declaration of Natasha Nguyen ¶¶ 3-4.  Neither ICE nor any other federal agency runs the facility or owns the land—the detention center is owned and operated entirely by GEO

pursuant to a federal government contract under the Federal Acquisition Regulations (FAR).[1]  Nguyen Decl. ¶ 5; SAC ¶¶ 5, 17; *see also* Contract Att. 19, at 12 (defining scope of work as "[a] Contractor-owned/Contractor-operated detention facility to house detainees").  The contract was originally signed in 2015 and renewed in 2019.  SAC ¶¶ 18, 21; Nguyen Decl. ¶ 4.

Under the Contract, GEO provided comprehensive "detention, transportation, and medical services at the Mesa Verde Detention Facility" and to "ensure that detainees are housed in a safe, secure, and humane manner."  Nguyen Decl. ¶ 4; Nguyen Decl. Ex. A, Contract at 1-2 ("Contract at __"); Nguyen Decl. Ex. 2-B, Contract Attachment 19 at 12, 67 ("Contract Att. 19 at __").  Among its responsibilities, GEO was "responsible for providing health care services for ICE detainees," including "intake arrival screening, infectious disease screening and treatment, emergent, acute and chronic care, on-site sick call, dental services, and mental health services."  Contract Att. 19 at 46.

GEO employees exclusively ran Mesa Verde's operations, and ICE was not involved in and had no authority over the day-to-day operations of Mesa Verde.  Nguyen Decl. ¶¶ 4-5; Contract Att. 19, Att. 2 at 1 ("[GEO], and not the Government, is responsible for the day-to-day operations of the Facility and all the management and quality control actions required to meet the terms of the Agreement.").  GEO furnished "[a]ll equipment, supplies, and services" for Mesa Verde's operations.  Contract Att. 19, at 67; Nguyen Decl. ¶ 5(a).  No ICE employees were responsible for detainee safety and security, building and ground maintenance, sanitation, medical and health services, detainee housing or activities, detainee discipline, or any other aspects of day-to-day operations at Mesa Verde.  Nguyen Decl. ¶ 5(b).  ICE employees did not supervise detainees or conduct detainee health assessments, recommend or provide treatment, or respond to medical emergencies.  *Id.* at ¶ 5(c)-(d).  Nor did ICE employees decide housing arrangements of detainees.  *Id.* at ¶ 5(e).  ICE employees did not supervise GEO employees or assist with running Mesa Verde.  *Id.* at ¶ 5(f); *see also* Contract Att. 19, at 9 (GEO's project manager was "responsible for on-site supervision of all Contractor employees").

Although ICE did not supervise or directly oversee GEO's operations at Mesa Verde, the

---

[1] Plaintiff alleges that "[o]n information and belief, ICE was the landowner of Mesa Verde at all times relevant to this Complaint."  SAC ¶ 16.  This allegation is not accurate, and the Court need not accept it as true when deciding a Rule 12(b)(1) motion in the face of contrary evidence provided by the United States.  *See* Section III.A, *infra*.

Contract required GEO to follow the 2011 Performance-Based National Detention Standards (PBNDS) and standards set forth by the Prison Rape Elimination Act (PREA), the American Correctional Association (ACA), and the National Commission on Correctional Health Care (NCCHC).  Contract at 2; Contract Att. 19, at 12-13; *see also* Contract Att. 19 at 48-49 (requiring compliance with PBNDS 2011, NCCHC, and ACA standards for medical care).  GEO also had to comply with all federal, state, and local codes, regulations, guidelines, and policies.  Contract Att. 19, at 14, 67-68.  GEO alone was contractually "responsible for management and quality control actions necessary to meet the quality standards set forth in the contract" and was expected to conduct its own daily inspections and engage in all necessary management and quality control actions to ensure compliance with contractual and legal standards.  Contract Att. 19, at 22-23, 45, 65-66; Contract Att. 19 Ex. 2B, at 1.

ICE retained no rights to manage Mesa Verde under the Contract—it only reserved a right to "conduct periodic and unscheduled audits and inspections of contract performance and the facility to ensure contract compliance."  Contract Att. 19, at 13; *see also id.* at 45 ("The facility shall be subject to periodic and random inspections by the COR, ICE designee, or other officials to insure compliance with ICE Standards."); Nguyen Decl. ¶¶ 5, 6.  Audits of GEO's clinical operations occurred every six months.  Contract Att. 19, at 56.  Additionally, a Contracting Officer's Representative (COR) assessed GEO's technical performance of the Contract "in areas of contract compliance, contract administration, cost and property control" and provided reports of such to the Government's Contracting Officer (CO).  Contract Att. 19, at 23.  The COR, however, had no authority to modify the Contract's terms or approve actions that would result in additional charges to the Government.  Contract Att. 19, at 13.

The Contract did not specify how audits and inspections were to occur or prescribe how any non-compliances should be handled—those determinations were entirely discretionary.  Nguyen Decl. ¶ 6.  The Contract only generally stated that if deficiencies were found, they "shall be immediately rectified or [GEO submit] a plan for correction to the COR for approval."  Contract Att. 19, at 45.  The Contract also required monthly meetings to provide a management level review and assessment of GEO's performance, with "a discussion and resolution of problems."  *Id.* at 24.  The Contract did not specify how noncompliances were to be penalized.  The CO had the authority to make "monetary adjustments for inadequate performance" or to terminate the contract "for default based upon inadequate

1  performance of services," but no standards governed when these sanctions were appropriate—the

2  standards to apply and the sanctions to impose were solely at the CO's discretion.  *Id.* at 23, 24.

3        **C.**    **The Second Amended Complaint's allegations regarding Mr. Ahn's suicide.**

4        Plaintiff alleges that while serving his attempted murder sentence at CSP Solano, Mr. Ahn

5  became severely depressed and attempted suicide three times.  SAC ¶ 14.  GEO did not know Mr. Ahn's

6  history during his intake at Mesa Verde because GEO gave him only "a cursory mental health screening

7  and his records were not examined."  SAC ¶¶ 26, 27.

8        Plaintiff alleges that when the COVID-19 pandemic began in March 2020, GEO and ICE did not

9  create an adequate facility-specific plan to handle the virus.  SAC ¶ 33.  In April 2020, Mr. Ahn reported

10  feelings of sadness, low energy, and trouble sleeping to a GEO-employed psychologist, and informed

11  medical staff that he attempted suicide three times while in state prison.  SAC ¶¶ 36, 37.  In an April 30,

12  2020 "talk therapy" session, he rated his depression as 6-7 out of 10 and expressed feelings of anxiety

13  and not "want[ing] to live in this life."  SAC ¶ 38.

14        On May 12, 2020, Mr. Ahn went to an outside hospital due to chest pain, difficulty breathing,

15  and liquid coming out of his nose.  SAC ¶¶ 42, 45.  According to plaintiff, GEO did not timely refill Mr.

16  Ahn's diabetes or high blood pressure medications and ignored complaints of persistent pain in his feet,

17  shoulder, and chest.  SAC ¶¶ 43, 44.  Further, the day before his hospital admission, Mr. Ahn learned

18  that his third request for release from detention was denied, causing him to fall into a "despondent

19  silence" and "comment[] to others that he would never get out of detention."  SAC ¶¶ 40-41.

20        Mr. Ahn returned to Mesa Verde on May 14.  SAC ¶ 46.  GEO placed him in a solitary cell with

21  a bed sheet and tie-off point, which plaintiff asserts had no legitimate justification and constituted a

22  high-risk factor for Mr. Ahn given his mental health history.  SAC ¶¶ 47-51.  While in isolation, Mr.

23  Ahn informed GEO medical staff that he had feelings of depression and suicidal ideation.  SAC ¶¶ 54,

24  56.  On May 16, a GEO-contracted clinical psychologist reported that Mr. Ahn appeared to be at "high

25  suicidal risk if deported."  SAC ¶ 57.  The next day, another GEO-contracted medical provider indicated

26  that Mr. Ahn's mental illness was "severe" and that he was at "high risk of suicide if deported."  SAC ¶

27  59.  Mr. Ahn's next scheduled hearing in his removal proceedings was May 19.  SAC ¶ 60.

28        Despite these reports, GEO staff left Mr. Ahn unobserved in his cell on the evening of May 17,

in violation of GEO's own internal policies.  SAC ¶ 61.  Plaintiff also asserts that this violated the PBNDS standards for detainees with significant risk of self-harm.  *See, e.g.*, SAC ¶¶ 67-75.  Mr. Ahn hanged himself with a bedsheet that night.  SAC ¶ 62.[2]

### III.    STANDARD OF REVIEW

**A.    Federal Rule of Civil Procedure 12(b)(1).**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."  *A-Z Int'l. v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003); *Lanza v. Ashcroft*, 389 F.3d 917, 930 (9th Cir. 2004) ("There is a general presumption against federal court review, and the burden of establishing the contrary rests on the party asserting jurisdiction.").  "[W]aivers of sovereign immunity must be construed in favor of the sovereign."  *Foster v. United States*, 522 F.3d 1071, 1074 (9th Cir. 2008).  Plaintiffs have the burden to prove the existence of subject matter jurisdiction.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual. . . . In a factual attack, the challenger disputes the truth of the allegations, that, by themselves, would otherwise invoke federal jurisdiction. . . . In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint" and "need not presume the truthfulness of the plaintiff's allegations."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Once the moving party presents such evidence, the opposing party "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Id.*; *Colwell v. HHS*, 558 F.3d 1112, 1121 (9th Cir. 2009).

**B.    Federal Rule of Civil Procedure 12(b)(6).**

Rule 12(b)(6) permits dismissal of legally insufficient claims.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2002).  Dismissal is appropriate where there is a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balisteri v. Paifica Police Dept.*,

---

[2] Plaintiff also alleges that in March 2020, Mr. Ahn had surgery to remove a mass on his lung. SAC ¶ 28.  Plaintiff asserts that Mr. Ahn believed he had been diagnosed with lung cancer but that ICE delayed a follow-up appointment to go over the biopsy results.  *Id.* at ¶¶ 28, 30.  There are no factual allegations explaining how ICE delayed the process (especially given that GEO alone was responsible for providing medical care to detainees) or how this delay contributed to Mr. Ahn's suicide.

901 F.2d 696, 699 (9th Cir. 1990).  To survive a Rule 12(b)(6) motion, a complaint must contain

sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

While Rule 12(b)(6) requires the Court to assume the truth of well-pleaded factual allegations,

this "tenet . . . is inapplicable to legal conclusions." *Id.*  Nor may the Court "accept as true a legal

conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Further, under Rule 8, a complaint does not "suffice if it tenders 'naked assertions' devoid of 'further

factual enhancements.'" *Iqbal*, 556 U.S. at 678.  Under Rule 8, "[a] pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a

complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'" *Iqbal*, 556

U.S. at 678 (citation omitted); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a

complaint . . . must plausibly suggest an entitlement to relief[.]").  A complaint must, in short, contain

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to survive a Rule 12(b)(6)

motion to dismiss.  *Iqbal*, 556 U.S. at 678.

## IV.     LAW AND ANALYSIS

### A.     ICE is immune from suit.

The FTCA provides the exclusive remedy for torts committed by a federal agency or a federal

employee acting within the scope of his employment.  *Kennedy v. USPS*, 145 F.3d 1077, 1078 (9th Cir.

1998) (per curiam).  "[A]n agency itself cannot be sued under the FTCA." *FDIC v. Craft*, 157 F.3d 697,

706 (9th Cir. 1998); *Kennedy*, 145 F.3d at 1078.  Rather, "the United States is the only proper party

defendant in an FTCA action." *Kennedy*, 145 F.3d at 1078.  Because ICE is immune from suit under the

FTCA, all claims against it should be dismissed.

### B.     The United States is immune from suit under the independent contractor and discretionary function exceptions to the FTCA.

The United States "is immune from suit save as it consents to be sued . . . and the terms of its

consent to be sued in any court define the court's jurisdiction to entertain the suit." *Lehman v.*

*Nakshian*, 453 U.S. 156, 160 (1981) (citation and quotation marks omitted).  Here, the United States has

immunity against plaintiff's claims because they are premised on acts by an independent contractor.  But

even if some of plaintiff's claims fall outside the FTCA's independent contractor exception, the United States would still be immune from them under the discretionary function exception.  The Court should dismiss plaintiff's claims against the United States for lack of subject matter jurisdiction.

1. **The United States is immune under the independent contractor exception.**

a. **GEO alone ran Mesa Verde's day-to-day operations.**

Plaintiff directly and explicitly alleges that Mr. Ahn died because of GEO's acts and omissions. GEO's agents or employees allegedly failed to properly identify Mr. Ahn's suicide risk, did not properly evaluate or treat his mental health, and locked him into an unmonitored solitary confinement cell with tools for suicide despite knowing his suicide risk.  SAC ¶¶ 89(a)-(f), 91, 94, 127-33, 147-53, 171, 180, 182-84, 186.  Further, GEO did not properly train its employees in COVID protocols or in identifying self-harm risks, suicide prevention, or detainee intervention.  SAC ¶¶ 157-62.

Although the FTCA renders the United States liable to the same extent as a private party for certain torts by federal employees, independent contractors are not federal employees, and the United States is not liable for a contractor's acts or omissions.  28 U.S.C. § 2671; *United States v. Orleans*, 425 U.S. 807, 814 (1976); *Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985).  Plaintiff acknowledges that GEO is an independent contractor.  *See* SAC ¶¶ 5, 18.  And rightly so, as the "key factor" distinguishing a federal employee from an independent contractor is "the existence of federal authority to control and supervise the 'detailed physical performance and day-to-day operations' of the contractor."  *Hines v. United States*, 60 F.3d 1442, 1446 (9th Cir. 1995).  Even contracts "directing detailed performance" or "fix[ing] specific and precise conditions" do not abrogate the independent contractor exception.  *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005).  Nor do "[d]etailed regulations and inspections" or "standards that are designed to secure federal safety objectives."  *Id.* "[A] principal may retain a broad general power of control to inspect, to make recommendations, and to prescribe alterations and modifications without altering the relationship of principal and contractor." *Yanez*, 63 F.3d at 875; *Jones v. United States*, No. 1:08-cv-1137, 2011 WL 773285, at *5 (E.D. Cal. Feb. 28, 2011) ("[G]eneral supervisory right to control the work so as to insure its satisfactory completion in accordance with the terms of the contract does not make the hirer of the independent contractor liable for the latter's negligent acts in performing the details of the work.").

The independent contractor exception may only be vitiated if the relationship between the United States and GEO "cannot be said to be 'independent'" because the contract "requires 'substantial supervision over the day-to-day operations of the contractor.'" *E&J Gallo Winery v. Pestmaster Servs., Inc.*, No. 2:19-cv-2120, 2020 WL 1451582, at *2 (E.D. Cal. Mar. 25, 2020) (quoting *Orleans*, 425 U.S. at 814; *Autery*, 424 F.3d at 957).   But that did not happen here.   GEO alone ran Mesa Verde's operations, deciding whether it had the capability to accept detainees with medical issues, how to classify detainees, where to house them, how to supervise them, and how to ensure that they received necessary medical treatment and intervention.   *See* Section II.B, *supra*; Contract Att. 19, at 22, 58, 64. ICE was not involved in and had no authority over Mesa Verde's day-to-day operations, and ICE employees were not responsible for detainee safety, housing, medical services, or medical assessments. *Id.*   GEO was "responsible for providing health care services for ICE detainees at [Mesa Verde] in accordance with the current PBNDS 2011, NCCHC and/or the ACA standards," including for "intake arrival screening, infectious disease screening and treatment, . . . and mental health services."   Contract Att. 19, at 46; *see also id.* at 49 (GEO "must provide detainees with access to medical services," including "mental health" and "psychiatric services").   GEO, in short, is an independent contractor, and thus the United States has immunity against plaintiff's claims.

> b.       **Plaintiff's allegations of negligent acts or omissions by ICE do not undermine the independent contractor exception.**

The independent contractor exception precludes governmental liability for GEO's actions.   In an effort to avoid this bar, plaintiff identifies four purportedly negligent actions by the United States itself:

1. ICE declined to release Mr. Ahn from detention.  SAC ¶ 190.

2. ICE negligently contracted with GEO to operate Mesa Verde.  SAC ¶¶ 196-98.

3. ICE negligently supervised GEO with its "perfunctory and unreliable" inspections and failure to terminate (or choose not to renew) the Contract.  SAC ¶¶ 203a-b, 204, 211.

4. As a "landowner" and "jailer," ICE failed to protect Mr. Ahn against COVID-19 hazards and enact adequate COVID-19 policies and protections.  SAC ¶¶ 203c, 207, 210-11.  Plaintiff relies on *Edison v. United States*, 822 F.3d 510 (9th Cir. 2016), and *Yanez v. United States*, 63 F.3d 870 (9th Cir. 1995), to suggest that ICE owed Mr. Ahn non-delegable duties to mitigate such risks.  *See* SAC ¶ 207.

Plaintiff's false imprisonment and intentional infliction of emotional distress (IIED) claims are based on

similar allegations.  SAC ¶¶ 216-18, 222-24.

These allegations, however, do not undermine the independent contractor exception.  Plaintiff's assertion that ICE's failure to release Mr. Ahn should be legally actionable (SAC ¶ 190) is a non-starter because ICE's judgment of whether to detain or release an alien "shall not be subject to judicial review." 8 U.S.C. § 1226(e); *Martinez v. United States*, No. CV-13-6844, 2014 WL 12607839, at *5 (C.D. Cal. Mar. 17, 2014) (holding that court lacked jurisdiction over FTCA claim based on a "decision not to release Plaintiff while removal proceedings were pending" because of § 1226(e)).  Further, ICE is *required* to detain aliens who are deportable because of an aggravated felony conviction like attempted murder.  8 U.S.C. §§ 1226(c)(1)(C), 1227(a)(2)(A)(iii); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003).[3] The Attorney General thus could only release Mr. Ahn if doing so was "necessary to provide protection to a witness, . . . a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate . . . and [Mr. Ahn] satisfies the Attorney General that [he] will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding."  8 U.S.C. § 1226(c)(2).  Plaintiff pleads no facts suggesting that Mr. Ahn's requests for release met the narrow and formidable § 1126(c)(2) standard.[4]

Negligent selection allegations likewise cannot save Plaintiff's claims.  *See* SAC ¶ 196.  Despite explicitly pleading that GEO's acts and omissions caused Mr. Ahn's death (SAC ¶¶ 89(a)-(f), 91, 94, 127-33, 147-53, 157-62, 171, 180, 182-84, 186), plaintiff seeks to evade the independent contractor exception by bootstrapping GEO's negligent acts into ICE's negligent retention.  This is not permissible. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (holding that negligent retention claim could not withstand motion to dismiss under independent contractor exception because the proximate cause of the injury was the contractor's negligence); *Nelson v. United States*, No. 13-1817, 2014 WL 988860, at *4 (D. Md. Mar. 12, 2014) (holding that the independent contractor exception bars negligent

---

[3] *See also United States v. Rodriguez-Garcia*, 605 F. App'x 659, 660 (9th Cir. 2015); *United States v. Cornejo-Macias*, 616 F. App'x 287, 288 (9th Cir. 2015); *Dang Chan v. Holder*, 594 F. App'x 931, 932 (9th Cir. 2015); *Lemus-Galvan v. Mukasey*, 518 F.3d 1081, 1083 (9th Cir. 2008).

[4] Plaintiff's focus on Mr. Ahn's alleged medical vulnerabilities to COVID-19 is misguided, as it ignores the 8 U.S.C. § 1226(c)(2) standard.  The United States further notes that Mr. Ahn's habeas petition seeking relief based on his vulnerability to COVID-19 was rejected because "the evidence of petitioners' medical vulnerability, which is a lynchpin of their TRO and habeas arguments, is thin to the point of vanishing."  *Ahn v. Barr*, No. 20-cv-2604, 2020 WL 2113678, at *3 (N.D. Cal. May 4, 2020).

supervision or retention claims if they "depend[] on activity of the supervised agent").

Plaintiff further alleges that ICE did not properly inspect or supervise Mesa Verde.  SAC ¶¶ 203-04, 211.  But for negligent supervision to override the independent contractor exception, an agency must "affirmatively undertake[] a duty to supervise in the first place."  *Chaffin v. United States*, 176 F.3d 1208, 1212 (9th Cir. 1999).  That did not happen here, as ICE delegated all day-to-day operations and decisionmaking to GEO, including all matters germane to Mr. Ahn's death like housing of detainees, health care, mental health services, and detainee supervision.  *See* Section II.B, *supra*.  "The mere reservation of the right to inspect the work did not impose upon the Government any duty of inspection or control."  *Gowdy*, 412 F.2d at 529; *Jones*, 2011 WL 773285, at *5.  Without any facts alleging that ICE directed or caused GEO's noncompliance, there is no basis in California law to impose liability.  *See Hanus v. United States*, 736 F. App'x 173, 174 (9th Cir. 2018) (affirming application of independent contractor exception because "even if the United States knew of its independent contractor's unsafe practice and failed to exercise its authority to correct that unsafe practice, 'mere retention of the ability to control safety conditions is not enough' to sustain a claim of negligent exercise of retained control"); *Alvarado v. United States*, No. CVF-09-243, 2010 WL 3001391, at *6-7 (E.D. Cal. July 29, 2010) (dismissing plaintiff's claim that the government created a dangerous condition through improper management and inspections and not ensuring strict compliance with safety standards because "the government delegated operational and maintenance duties to the State, and is therefore not responsible for the negligent operation and maintenance"); *Sai v. Smith*, No. 16-cv-1024, 2018 WL 534305, at *6 (N.D. Cal. Jan. 24, 2018) (rejecting argument that alleged negligent supervision of contractor avoided independent contractor exception because plaintiff identified no such duty in California law); *Dickman v. United States*, No. 02-cv-2371, 2006 WL 8455252, at *6 (S.D. Cal. Mar. 8, 2006) (rejecting plaintiff's assertion that negligent supervision of contractor eliminated independent contractor defense because plaintiff "has not cited to the California law that imposes liability under such facts").

Finally, plaintiff argues that Mesa Verde did not sufficiently protect him from the COVID-19 pandemic.  *See* SAC ¶¶ 210-11.  Plaintiff's argument, however, is premised on ICE owning Mesa Verde, which is erroneous.  *See* SAC ¶¶ 207-08; Gonzalez Decl. ¶ 3; Nguyen Decl. ¶ 4.  And there is no contractual basis to impose such a duty on ICE because the Contract delegated all matters relating to

inmate health care to GEO.  Nguyen Decl. ¶ 5(c)-(d); *see also* SAC ¶ 113(f) (referring to "GEO Group's

COVID-19 and isolation policies"); *id.* at ¶ 127 ("GEO Group supervisors ordered Mr. Ahn's placement

in solitary confinement for medical quarantine[.]"); *id.* at ¶ 197 ("GEO Group . . . failed to maintain safe

conditions at Mesa Verde during the pandemic").  This delegation even extended to whether to accept a

detainee—GEO had the right to refuse admission of or remove any detainee for any valid justification,

including if the detainee has "a medical condition that requires medical care beyond the scope of the

Contractor's health care provider."  Contract Att. 19, at 22.  In short, under the Contract, GEO alone

determined how many detainees it could accept, what types of detainees it could accept, and how to

provide the detainees all necessary medical care.  Plaintiff cannot avoid the independent contractor

exception by asserting that ICE should have intervened in areas expressly and entirely delegated to

GEO.  *Autery*, 424 F.3d at 959 (affirming application of independent contractor exception because

"whether or not there was such a duty regarding firebreaks around SR-24, the contractual provisions

plainly provide that 'fire protection' was delegated by the [government] to contractors.  The contracts

necessarily encompassed decisions about firebreaks as well"); *Pestmaster Services*, 2020 WL 1451582,

at *3 (rejecting argument that government had duty to take action and thus independent contractor

exception did not apply because "the alleged breaches are attributable to [the contractor's] actions

alone," not from a duty "outside the scope of [the United States'] relationship' with the independent

contractors responsible for the prison's daily operations").

    To avoid the independent contractor exception, plaintiff asserts that ICE had (and breached) a

special or non-delegable duty towards Mr. Ahn.  SAC ¶¶ 189, 207.  Plaintiff's legal authorities do not

support her.  *Edison* involved a federally-owned prison operated by a contractor, and it repeatedly

invoked the duty of landowners under California law to reject the independent contractor defense under

the FTCA.[5]  But GEO, not the federal government, owns Mesa Verde.  Nguyen Decl. ¶ 5.  Further, in

---

[5] *See Edison*, 822 F.3d at 514 (noting that the Federal Bureau of Prisons owned the prison); *id.* at 519 ("California law imposes a general duty of care on the United States as a landowner" and "a strong presumption in favor of finding that landowners . . . have a duty to use ordinary care to prevent injury to others[.]"); *id.* at 520 ("[L]andowners may be held liable for a failure to warn invitees of hidden dangers[.]"); *id.* at 521 ("[A] landowner's duty of care does not end with the requirement to warn individuals of hidden dangers. . . . As a landowner, the BOP had a duty to protect Taft's prisoners from cocci to the extent that they could not protect themselves."); *id.* at 523 ("[T]he BOP had a duty, as a landowner and jailer, to protect vulnerable prisoners in its charge from foreseeable harm[.]"); *id.* ("The government owed a duty of care to Plaintiffs under California law, which generally assumes that

*Edison*, the government "retained control over [building] construction" at the prison in the contract, and thereby "also retained the *duty* to construct such structures, should it become necessary to do so." 822 F.3d at 522. The Contract here has no similar reservation of rights. *See* Nguyen Decl. ¶ 5.

*Yanez* also does not evince a special duty to Mr. Ahn. *Yanez* not only involved a completely different factual situation (an inherently dangerous workplace safety risk at a munitions plant that used explosive chemicals), but it explicitly rejected the claim that "the United States [was] liable for its *negligent failure to supervise* precautions taken by its contractor and to take those precautions itself if necessary." *Id.* at 873; *id.* at 875 ("[T]he mere right to see that work is satisfactorily completed [does not] impose[] upon the one hiring the independent contractor the duty to assure that the contractor's work is performed in conformity with all safety provisions."). The government could be liable only if it had "actual knowledge" of safety violations and did not exercise its contractual rights to remedy them. *Id.* at 875. Here, plaintiff pleads no facts showing ICE's actual knowledge of GEO's acts or omissions pertaining to Mr. Ahn,[6] and the Contract did not allow ICE to control Mesa Verde's operations—ICE only had the right to inspect the facility and withhold payment or terminate for noncompliance. *See Borquez*, 773 F.2d at 1052 (barring claims under independent contractor exception because the contracts "did not reserve to the government any ultimate duties over care, operation and maintenance" of a dam and "granted [it] no more than the right to inspect the project and terminate the agreements").[7]

---

landowners have a duty to exercise reasonable care in the ownership and management of property.").

[6] Plaintiff pleads that ICE "knew or should have known" about Mr. Ahn's medical problems and serious mental illness and that GEO's mental health care was inadequate. SAC ¶ 190. But without facts showing that ICE had actual knowledge of these matters—especially given that ICE delegated all medical screening and treatment decisions to GEO—plaintiff's pleading is conclusory and insufficient to state a plausible claim against the United States. *Krainski v. Nev. Bd. of Regents*, 616 F.3d 963, 969 (9th Cir. 2010); *ThermoLife Int'l, LLC v. Compound Solns., Inc.*, 848 F. App'x 706, 708 (9th Cir. 2021); *Gunn v. Tilton*, No. CV-08-1038, 2010 WL 3744610, at *4 (E.D. Cal. Sept. 21, 2020); *Carroll v. CDCR*, No. 1:23-cv-0005, 2023 WL 1477410, at *3 (E.D. Cal. Feb. 2, 2023). True, plaintiff identifies a handful of reports asserting that GEO had prior instances of inadequate care of inmates or detainees. *See* SAC ¶¶ 19, 20, 23, 197 & nn.2-6, 8-9. But those reports did not pertain to Mesa Verde and concerned incidents years before Mr. Ahn's detention. Some even pre-dated the standards in the Contract. *See, e.g.*, SAC ¶ 19 (citing ACLU report examining detainee deaths before PBNDS 2011 standards).

[7] Plaintiff also references *Martinez v. GEO Group, Inc.*, No. 18-1125, 2019 WL 3758026 (C.D. Cal. Apr. 30, 2019) (*see* SAC ¶¶ 189, 195, 203), but that case has no bearing on the FTCA's independent contractor exception. *Martinez* involved a claim against a nurse employed by a private corporation, not claims against the United States or any federal actor. *Id.* at *1; *Martinez v. GEO Group, Inc.*, 2020 WL 2496063, at *1 (C.D. Cal. Jan. 7, 2020) (identifying all parties in case).

In short, even if plaintiff's assertions of independent failings by ICE were true, they do not countermand the independent contractor exception. The Court should dismiss all claims against the United States for lack of subject matter jurisdiction.

### 2. The United States has immunity under the discretionary function exception.

The FTCA waives the United States' immunity "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Under the discretionary function exception, however, the United States retains immunity against "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception was aimed at "prevent[ing] judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). It "protects the federal government's choices, even if they are bad ones." *Johnson v. United States*, No. CV-12-9051, 2014 WL 12572914, at *4 (C.D. Cal. Mar. 14, 2014).

A two-step inquiry governs whether claims fall within the discretionary function exception. "First, [the court] assess[es] whether the allegedly wrongful conduct is discretionary—that is, whether the action is a matter of choice for the acting employee." *Myles v. United States*, 47 F.4th 1005, 1011 (9th Cir. 2022) (citation and quotation marks omitted). Second, if the conduct involves discretion or choice, the Court then examines whether the decision was "grounded in social, economic, and political policy." *Id.* The focus is "not on the agent's subjective intent in exercising the discretion . . . but on the nature of the actions taken and on whether they are susceptible to a policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). Immunity applies not just to true policymaking, but to decisions by federal employees exercising discretion. *Id.* at 325-26; *Varig Airlines*, 467 U.S. at 813. Where government policy allows a government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

As noted above, plaintiff asserts four allegedly negligent acts by ICE. All four, however, are

discretionary acts for which the United States has retained immunity.[8]

    a.    **The Court lacks jurisdiction over any claims relating to the government's refusal to release Mr. Ahn from detention.**

Plaintiff contends that Mr. Ahn should have been released from custody during his removal proceedings.  SAC ¶¶ 40, 190.  The Court lacks jurisdiction over this claim under 8 U.S.C. § 1252(g) and the discretionary function exception of 28 U.S.C. § 2680(a).

Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]"  Although Section 1252(g) is not a "zipper clause" that "covers the universe of deportation claims," *Reno v. Am.-Arab Anti-Disc. Comm.*, 525 U.S. 471, 482 (1999), it still bars claims whenever a "detention arose from [the government]'s decision to commence . . . removal proceedings."  *Sissoko v. Rocha*, 509 F.3d 947, 950 (9th Cir. 2007).

Here, Mr. Ahn's detention arose from ICE's decision to commence removal proceedings against him.  Gonzalez Decl. ¶ 7; *see also* SAC ¶ 60.  He had an aggravated felony conviction, and thus ICE was *required* to detain him during removal proceedings.  8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(A)(iii); *Demore*, 538 U.S. at 517-18 ("Section 1226(c) mandates detention during removal proceedings for . . . [aliens] convicted of an aggravated felony.").  Further, he could only be released if he showed that it was necessary for witness protection purposes and, additionally, that he "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding."  8 U.S.C. § 1226(c)(2).[9]  Section 1252(g) thus bars any claims based on the fact that Mr. Ahn was detained.  *See Limpin v. United States*, No. 17-cv-1729, 2019 WL 1326670, at *3-4 (S.D. Cal. Mar. 25, 2019) (holding that § 1252(g) barred plaintiff's FTCA claims resulting from his detention under § 1226(c)(1)(B) and (C)); *Sissoko*, 509 F.3d at 949 (holding that § 1252(g) barred plaintiff's damages claim for false arrest

---

[8] *Edison* and *Yanez* never considered the discretionary function exception because the government did not raise that defense in those cases.  *See Edison*, 822 F.3d at 522-23 n.9.  Those cases therefore have no application to the United States' discretionary function jurisdictional defense.

[9] On April 4, 2020, ICE issued a memorandum providing COVID-19 logistical guidance.  Although the memorandum stated that an alien being in a higher-risk category for serious illness for COVID-19 "should be considered a significant discretionary factor weighing in favor of release," it also said that "[f]ield offices must remain cognizant of the requirements of mandatory detention," and that aliens falling under Section 236(c) of the Immigration and Nationality Act "may not be released . . . during the pendency of removal proceedings."  https://www.ice.gov/doclib/coronavirus/attk.pdf.

because he was subject to a "mandatory detention provision" as a result of the government pursuing expedited removal proceedings against him); *Wang v. United States*, No. CV-10-389, 2010 WL 11463156, at *6 (C.D. Cal. Aug. 18, 2010) (dismissing false imprisonment claim under § 1252(g) because plaintiff was detained "pursuant to a statute mandating detention during removal proceedings," and thus his "detention necessarily arises from the decision to initiate removal proceedings").

Even if plaintiff could escape the § 1252(g) jurisdictional bar to her claims based on Mr. Ahn's detention, she cannot avoid the discretionary function exception. As noted above, the government "may release" Mr. Ahn if his release was "necessary" for witness protection purposes and he showed that he "will not pose a danger to the safety of other persons or of property" and was "likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2). Even if Mr. Ahn could meet the § 1226(c)(2) factors, whether to release him was still entirely up to the Attorney General's discretion. *See Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012) ("[T]he decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General.").

Further, the decision to release an alien implicates policy considerations. "[I]mmigration issues 'have the natural tendency to affect diplomacy, foreign policy, and the security of the nation.'" *Id.* at 982. Because exercise of discretion on whether to detain an alien pending immigration proceedings "implicates issues of foreign policy," it falls within the discretionary function exception. *See id.* (affirming dismissal of claim based on unlawful detention of alien under the discretionary function exception); *Steinle v. San Francisco*, 230 F. Supp. 3d 994, 1028-29 (N.D. Cal. 2017) (holding that discretionary function exception barred claim based on apprehension of alien under § 1226(c)); *Hakimi v. United States*, No. 08-0075, 2008 WL 8140104, at *1 (E.D. Va. Nov. 18, 2008), *aff'd*, 332 F. App'x 816 (4th Cir. 2009) (holding that decision under § 1226 to detain permanent resident alien convicted of an aggravated felony during removal proceedings was barred by discretionary function exception). Thus, any claims based on ICE's decision to detain Mr. Ahn are jurisdictionally barred.[10]

---

[10] The Second Amended Complaint asserts that Mr. Ahn should have been released from detention entirely. *See* SAC ¶ 190. But even if plaintiff attempts to shift her position to assert that Mr. Ahn should have been detained in a different center, the discretionary function exception would still bar her claim. *See, e.g.*, *Rios-Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985) (stating that choice of facility to house alien detainee was a decision "within the province of the Attorney General to decide"); *Sanchez-Soriano v. United States*, No. 09-cv-500, 2011 WL 6217063, at *3-4 (S.D. Ill. Aug. 2, 2011) (applying discretionary function exception to detainee's claim based on his detainment facility

b.      **Contracting with GEO to operate Mesa Verde**

Plaintiff also alleges that ICE negligently contracted with GEO in 2015, and again in 2019, to operate Mesa Verde.  SAC ¶ 196.  The discretionary function exception bars this claim as well.

ICE is empowered "to make contracts . . . as may be necessary and proper to carry out" detention responsibilities.  *GEO Group*, 50 F.4th at 751.  The Contract was entered into pursuant to the Federal Acquisition Regulations (FARs), 48 C.F.R. §§ 1.000, et seq., which were created by the Office of Federal Procurement Policy (OFPP) pursuant to congressional statute.  41 U.S.C. §§ 1101, 1121; 48 C.F.R. § 1.103; Nguyen Decl. ¶ 4.  The FARs provide guidance to federal agencies in selecting a contractor that can "deliver on a timely basis the best value product or service" to the government "while maintaining the public's trust and fulfilling public policy objectives."  48 C.F.R. § 1.102(a).  The "best value" is "viewed from a broad perspective and is achieved by balancing the many competing interests" identified in the FARs.  48 C.F.R. § 1.102-1(b).  The FARs offer four "performance standards" to determine the best value: (1) satisfying the agency in terms of cost, quality, and timeliness; (2) minimizing administrative operating costs; (3) conducting business with integrity, fairness, and openness; and (4) fulfilling public policy objectives adopted by Congress and the President.  48 C.F.R. § 1.102-2.  The FARs enumerate further considerations for each of the four performance standards above that are applied and balanced for any contract award.  48 C.F.R. § 1.102-2; Nguyen Decl. ¶ 4.

ICE's selection of GEO under the FARs falls under the discretionary function exception.  The FARs involve discretion in deciding with whom to contract, as they do not objectively mandate selection of any particular contractor.  Further, the "broad Congressional grant of discretion to contract . . . carries with it the presumption that acts made in pursuit of that goal are grounded in policy."  *Bibeau v. Pac. Nw. Rsch. Found., Inc.*, 339 F.3d 942, 946 (9th Cir. 2003).  That presumption is warranted because the FARs codify various performance standards for an agency to weigh in deciding a contract award, including, most significantly, that the agency "[f]ulfill public policy objectives" by "support[ing] the attainment of public policy goals adopted by Congress and the President."  48 C.F.R. § 1.102-2(d).

_____

assignment because "factors such as availability of bed space, contract costs, staffing, resources, and travel are assessed when a detention facility is selected.  Those factors reflect the economic, social and political concerns the discretionary function exception was designed to protect.").

Given the policy considerations permeating government contracting, "[t]he selection of contractors is clearly a discretionary function within the scope of the discretionary function exception." *Layton v. United States*, 984 F.2d 1496, 1502 (8th Cir. 1993).[11]  This Court should follow that consensus and hold that the United States has immunity against any claim based on its selection of GEO as contractor.

### c.   **Negligent supervision/inspection**

Plaintiff asserts that ICE engaged in "perfunctory" and "unreliable" inspections and insufficient supervision at Mesa Verde.  SAC ¶¶ 22-23, 203(a).  But how to conduct inspections is discretionary.  The FARs do not prescribe specific inspections or quality requirements—they only generally contemplate contractual provisions for "inspection and other quality requirements . . . that are determined necessary to protect the Government's interest" in a contract.  48 C.F.R. § 46.102(a); *see also* 48 C.F.R. § 46.201(a) (requiring the contracting officer to include "the appropriate quality requirements" in an agency contract).  And rather than enumerate specific quality control regimens, the FARs only require agencies to "[p]erform all actions necessary to verify whether the supplies or services conform to contract quality requirements."  48 C.F.R. § 46.104(b).  Consistent with the FARs, the Contract provides for "periodic and unscheduled audits and inspections" of Mesa Verde but does not specify how often they are to occur, who should be involved, how they should be performed, or what should be audited or inspected.  Contract Att. 19, at 13, 45; Nguyen Decl. ¶ 6.  Indeed, the inspections do not even have to be performed by ICE—they could be performed by "other officials."  Contract Att. 19, at 13, 45.  The Contract also requires semi-annual audits of Mesa Verde's clinical operations but again does not specify who will perform the audits or how they will occur.  Contract Att. 19, at 56.

---

[11] *See, e.g.*, *Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005) (holding that "a decision to hire a contractor and the choice of contractor are policy-based discretionary decisions" for which the United States has immunity under the discretionary function exception); *Wood v. United States*, 290 F.3d 29, 37-38 (1st Cir. 2002) (holding that Navy's selection of contractor fell under discretionary function exception because it "was required to evaluate and weigh a plethora of factors, using its overall judgment as to the final choice"); *Williams v. United States*, 50 F.3d 299, 310 (4th Cir. 1995) ("The decision to hire an independent contractor to render services for the United States is precisely the type of decision that the [discretionary function] exception is designed to shield from liability because it involves exercising judgment based on considerations of policy[.]"); *Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975) ("[T]he award of Government contracts is generally held to involve the exercise of a discretionary function."); *Gowdy v. United States*, 412 F.2d 525, 529 (6th Cir. 1969) ("[T]he award of contracts by the Government involves a 'discretionary function or duty,' in the exercise of which it is exempt from liability under the [FTCA].").

Not only are government inspections and oversight under the GEO Contract discretionary, but they involve policy considerations.  Inspection and audit requirements are aimed at ensuring that a contractor is meeting the policy objectives of the FARs.  Given the policy considerations involved in supervision of a contractor, "many courts have found that the government's negligent supervision or even total failure to supervise are discretionary decisions protected by the discretionary function exception."  *Vallier v. Jet Propulsion Lab.*, 120 F. Supp. 2d 887, 914 (C.D. Cal. 2000); *Varig Airlines*, 467 U.S. at 819-20 ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."); *Bibeau*, 339 F.3d at 945-46 (affirming dismissal of plaintiff's claim that agency negligently supervised a contractor based on the discretionary function exception); *Sai*, 2018 WL 534305, at *5 ("[S]upervision of contractors falls within the discretionary function exception."); *Clemons v. United States*, No. 2:21-cv-9194, 2022 WL 4596651, at *3-4 (C.D. Cal. July 7, 2022) (applying discretionary function exception and holding that "[t]he government's role in supervising an independent contractor is also policy-based, requiring the government to balance its objectives with various practical considerations"); *Maryland Cas. Co. v. United States*, No. C-05-2558, 2006 WL 563046, at *7 (N.D. Cal. Mar. 6, 2006) (applying discretionary function exception and holding that the "decision regarding the level of supervision applied to [a contractor] [is] susceptible to a policy analysis").

*Guile v. United States* held that the discretionary function exception applied under facts similar to this case.  There, a patient with a history of mental illness hanged herself while at a government-contracted psychiatric ward.  Facility staff did not monitor the patient despite being required to at least every thirty minutes.  422 F.3d at 223-24.  Plaintiff argued that the government retained safety oversight authority over the contractor, yet negligently supervised the facility and failed to provide safe premises. *Id.* at 229-30.  The Fifth Circuit affirmed dismissal of plaintiff's negligent supervision claim against the government because "[s]upervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function" for which the government retained immunity.  *Id.* at 231.  The Court should follow *Guile* and the consensus of courts and hold here that the discretionary function exception bars plaintiff's claims based on allegedly negligent supervision or oversight of GEO.

In addition to negligent supervision, plaintiff also asserts that ICE should be held liable for not

terminating the Contract or otherwise taking punitive action in light of GEO's alleged noncompliance. SAC ¶¶ 203(b), 211.  This also involves discretionary policy considerations.  The Contract does not identify how a "noncompliance" is determined, and the FARs give contracting officers discretion to "establish[] the significance of a nonconformance when considering the acceptability of supplies or services which do not meet contract requirements."  48 C.F.R. § 46.103(e); *cf. Gonzales v. United States*, 814 F.3d 1022, 1029 (9th Cir. 2016) (holding that guidelines requiring referral to local law enforcement when there is "credible information" of "serious criminal activity" was still discretionary because "[t]he Guidelines provide no criteria for determining what is 'credible information' or what constitutes 'serious criminal activity'").  Further, the Contract allows only two potential penalties (monetary adjustments and termination) and does not offer standards to impose them.  Contract Att. 19, at 23-24.  Nor do the FARs—in fact, they confirm that even when nonconformances constitute a default, agencies still retain discretion to continue the contract "when in the Government's interest."  48 C.F.R. § 49.402-4.  The FARs provide several factors to weigh in determining whether to terminate a contract, including the terms of the contract and applicable laws, the specific failures at issue, the availability of services from other sources, the urgency of the need for services, the degree of essentiality of the contractor, and "any other pertinent facts and circumstances."  48 C.F.R. § 49.402-3(f).

In short, how to determine a noncompliance, and then whether and how to penalize it, "depends upon a selective case-by-case evaluation.  A 'case-by-case' evaluation presumes significant officer discretion."  *Weissich v. United States*, 4 F.3d 810, 914 (9th Cir. 1993).  And these matters involve policy judgments, especially in the immigration context laden with congressional and executive policy objectives.  The Court thus should also hold that the discretionary function exception bars plaintiff's claims to the extent they rely on the government's failure to terminate the contract or impose penalties on GEO for noncompliance.  *Vallier*, 120 F. Supp. 2d at 913-14 (holding that discretionary function exception barred claim for government's failure to enforce contractors' compliance with safety regulations); *Walding v. United States*, 955 F. Supp. 2d 759, 784-85 (W.D. Tex. 2013) (holding that discretionary function exception barred claims based on government's alleged "fail[ure] to take appropriate action" after learning of abuse and mismanagement at a detainment facility because "[t]he Project Officer was given discretion and specifically empowered to make policy judgments concerning

how to respond to information obtained during monitoring" and "determinate appropriate corrective

measures," including freezing funds, suspension, and termination); *Lopez v. U.S. ICE*, 455 F. App'x

427, 433 (5th Cir. 2011) (holding that USMS directives regarding inspection of facilities to house ICE

detainees were discretionary because they "provided no guidance, or even mention" numerous topics

such as "what minimum 'level of compliance' . . . a facility had to meet, and what remedial actions to

take (if any) in the event of insufficient compliance with USMS guidelines").

### d.   COVID-19 policies

Finally, plaintiff faults ICE for failing to protect Mr. Ahn from COVID-19 and "develop an

adequate COVID-19 prevention policy" at Mesa Verde.  SAC ¶¶ 210-11.  Plaintiff's assertion that ICE

had a duty to create a COVID-19 protocol is premised on ICE being the landowner of Mesa Verde.

SAC ¶ 208; *see also id.* at ¶ 207 (citing *Edison*, which relied on the government's status as landowner).

But ICE does not own Mesa Verde, GEO does (Nguyen Decl. ¶¶ 4-5), and thus GEO is the "landowner"

and "jailer" that would hold the duty to implement proper COVID-19 protocols.  Plaintiff pleads no

facts indicating that ICE retained a duty towards Mr. Ahn or other detainees at Mesa Verde, especially

because ICE deliberately delegated all responsibility for medical care and detainee safety to GEO.

But even assuming ICE had a duty to implement COVID-19 protocols, the discretionary function

exception bars plaintiff's claims that those protocols were inadequate (SAC ¶¶ 203(c), 210) or that ICE

failed to properly supervise GEO in ensuring those protocols be enacted (SAC ¶ 211).  As the Ninth

Circuit has previously found, "ICE in the spring of 2020 (and earlier) took steps to address" the COVID-

19 pandemic, and its multiple directives "reflect[ed] a mobilized effort to address . . . the 'seriousness

and pervasiveness of COVID-19.'"  *Fraihat v. U.S. ICE*, 16 F.4th 613, 637-38 (9th Cir. 2021).  In a

March 27, 2020 Memorandum to ICE-dedicated facility wardens and superintendents, ICE provided

initial guidance on COVID-19 management.  Nguyen Decl. ¶ 7(a) & Ex. 2-C.  The Memorandum

referred to the Center for Disease Control and Prevention's (CDC) interim guidelines for managing

COVID-19 in correctional and detention facilities, as well as its recommended steps for handling

persons with COVID-19 symptoms.  Nguyen Decl. ¶ 7(b) & Ex. 2-D, Pandemic Response Requirement

at 1, 4 ("PRR at __").  The Memorandum also set forth guidance relating to staff hiring, logistics, social

visitation, visits from legal representatives, COVID-19 screening of staff and detainees, and optimizing

1   supply of personal protective equipment (PPE).  PRR at 2, 4-5.

2          Less than two weeks later, ICE issued its COVID-19 Pandemic Response Requirements (PRR),

3   which it developed in consultation with the CDC.  Nguyen Decl. ¶ 7(b).  The PRR applied to all

4   detention facilities (including privately owned ones) and "set[] forth expectations and assists . . . facility

5   operators to sustain detention operations, while mitigating risk to the safety and well-being of detainees,

6   staff, contractors, visitors, and stakeholders."  PRR at 3, 5 & n.4.  The PRR imposed new mandatory

7   requirements and recommendations for, among other things, reporting requirements for confirmed and

8   suspected COVID-19 cases, identification of detainees at higher risk of serious illness from COVID-19,

9   facility pandemic and disaster plans, sick leave policies, supplies of hygiene products and PPE, mask

10  wearing, cleaning and disinfecting practices, screening of staff and detainees for COVID-19, social

11  distancing, and medical isolation and quarantine.  PRR at 5, 7-15.

12         In short, plaintiff cannot claim that ICE failed to issue COVID-19 policies at all—she can only

13  argue that those policies were inadequate.  But that falls squarely within the discretionary function

14  exception.  "Typically, the promulgation of policies and rules is protected by the FTCA's discretionary

15  function exception."  *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000).  Federal regulations do

16  not impose any specific pandemic protocols for immigrant detention centers, especially privately run

17  ones.  "The decision to establish a policy not required by law falls squarely within the discretionary

18  function exception."  *Martinez v. United States*, No. 1:16-cv-1556, 2017 WL 1881962, at *5 (E.D. Cal.

19  May 9, 2017).  Further, ascertaining the nature of a potential harm and deciding how to mitigate it

20  through protocols are quintessential discretionary policy questions.  *Rabieh v. United States*, No. 5:19-

21  cv-944, 2019 WL 5788673, at *10 (N.D. Cal. Nov. 6, 2019) (dismissing claim that agency negligently

22  designed its directives and safety policies because they were "safety measure 'designs' and are thus

23  within the discretionary function exception"); *In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d

24  982, 994 (9th Cir. 1987) (holding that discretionary function exception barred negligence claim that

25  federal agency failed to appreciate or sufficiently protect against potential hazards of nuclear detonation

26  tests in developing safety plan); *C.R.S. v. United States*, 11 F.3d 791, 797 (8th Cir. 1993) (holding that

27  development of blood screening procedures was "precisely the type of policy-bound decision that

28  Congress intended to insulate from judicial scrutiny through the discretionary function exception").

Plaintiff also argues that ICE negligently failed to ensure that Mesa Verde adopted and complied with its COVID-19 guidance. *See* SAC ¶ 211. This merely re-casts her negligent supervision claim, which is barred by the discretionary function exception. *See* Section IV.B.2.c, *supra*; *Morales-Alfaro v. U.S. Dep't of Homeland Security*, No. 20-cv-82, 2021 WL 1061171, at *4 (S.D. Cal. Mar. 17, 2021) (holding that "[t]he decision to contract out to [a contractor] the function of operating the detention facility was discretionary," as was supervising—or failing to supervise—the facility).

In short, the United States is immune from claims relating to any of the negligent actions plaintiff attributes to ICE under the discretionary function exception. The Court therefore should dismiss all claims against the United States for lack of subject matter jurisdiction.

### C.   Plaintiff cannot state a claim for false imprisonment.

"False imprisonment involves the intentional confinement of another against the person's will. The elements are (1) nonconsensual, intentional confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time." *Bocanegra v. Jakubowski*, 241 Cal. App. 4th 848, 855 (2015). Here, however, ICE had lawful privilege to order that Mr. Ahn be confined—in fact, federal law required Mr. Ahn's detention pending his removal proceedings. 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(A)(iii); *Demore*, 538 U.S. at 517-18. Because plaintiff cannot establish a necessary element of a false imprisonment claim, it should be dismissed.

### D.   Plaintiff cannot state a claim for intentional infliction of emotional distress.

Plaintiff cannot assert an IIED claim on Mr. Ahn's behalf because tort claims for emotional distress do not survive the death of the decedent. *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1050-51 (9th Cir. 2009) (affirming dismissal of IIED and NIED claims); *Schwartz v. Lassen Cnty.*, 838 F. Supp. 2d 1045, 1060 (E.D. Cal. 2012); *Copeland v. Cnty. of Alameda*, No. 12-cv-4286, 2014 WL 1266198, at *3 (N.D. Cal. Mar. 21, 2014) (dismissing IIED claim and holding that "emotional distress damages do not survive the death of the person who suffered them.").

Plaintiff also cannot assert an IIED claim individually. To state an IIED claim, a defendant's conduct must be directed at plaintiff or occur in her presence. *Sabow v. United States*, 93 F.3d 1445, 1454-55 (9th Cir. 1996). Plaintiff alleges no facts showing either, and her claim should be dismissed. *Id.* at 1455 (affirming dismissal of family members' IIED claim based on failing to follow investigative

guidelines and negligently handling decedent's remains because those acts were not directed at plaintiffs); *Jacobsen v. Marin Gen. Hosp.*, 192 F.3d 881, 887-88 (9th Cir. 1999) (affirming dismissal of IIED claim because plaintiffs "cannot allege that the conduct complained of was directed primarily at them, was calculated to cause them severe emotional distress, or occurred in their presence"); *Kowbel v. Univ. of S. Cal.*, 827 F. App'x 794, 795 (9th Cir. 2020) (affirming dismissal of IIED claim because plaintiff "failed to allege facts . . . that defendants' actions were directed towards [him]").

**E.**     **Plaintiff cannot recover punitive damages or attorney fees from the United States.**

Plaintiff seeks punitive damages and attorney fees.  SAC ¶¶ 229-30.  But under the FTCA, the United States "shall not be liable . . . for punitive damages."  28 U.S.C. § 2674; *In re Sparkman*, 703 F.2d 1097, 1100 (9th Cir. 1983).  Further, "the government is never held liable for a plaintiff's attorney fees, even if the local substantive law permits recovery of fees."  *Anderson v. United States*, 127 F.3d 1190, 1191-92 (9th Cir. 1997) (reversing district court's fee award against the United States).  Thus, plaintiff's claims for attorney fees and punitive damages against the United States should be dismissed. *Esquibel v. United States*, No. 1:14-cv-1702, 2015 WL 4069060, at *2 (E.D Cal. July 2, 2015).

**F.**     **Plaintiff is not entitled to a jury trial against the United States.**

There is no right to a jury trial under the FTCA.  28 U.S.C. § 2402; 32 C.F.R. § 750.32. Plaintiff's demand for a jury trial against the United States therefore should be stricken.

**V.     CONCLUSION**

For the foregoing reasons, this Court should dismiss the claim against ICE and the United States.


Dated:  June 16, 2023                                     PHILLIP A. TALBERT
                                                         United States Attorney


                                                By:   /s/ BRODIE M. BUTLAND
                                                      BRODIE M. BUTLAND
                                                      Assistant United States Attorney

1

## <u>**CERTIFICATE OF SERVICE**</u>

2      I hereby certify that on June 16, 2023, a true and accurate copy of the foregoing has been served

3   on all counsel of record via this Court's CM/ECF electronic filing system.

4

5                                         /s/   BRODIE M. BUTLAND
                                          Assistant United States Attorney
6
                                          Counsel for the United States of America and U.S.
7                                         Immigration and Customs Enforcement

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28