PHILLIP A. TALBERT
United States Attorney
BRODIE M. BUTLAND
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000

Attorneys for Defendants United States
Immigration and Customs Enforcement and
the United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA AHN,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>GEO GROUP, INC., et al.,<br><br>　　　　　　　Defendants. | CASE NO. 1:22-CV-00586-CDB<br><br>MEMORANDUM IN SUPPORT OF THE UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT'S AND THE UNITED STATES OF AMERICA'S MOTION TO DISMISS |

　　　　Plaintiff's Second Amended Complaint asserts that GEO engaged in a series of inexcusable missteps that enabled—and perhaps encouraged—her father to commit suicide. *See* Mot. at 5-6, 8. She acknowledges that ICE cannot be vicariously liable for GEO's failures, but she argues that she should be able to pursue claims against the United States because of four alleged actions by ICE:

1. The Attorney General's decision to deport Mr. Ahn for his attempted murder conviction, and decision to detain him during his removal proceedings;

2. ICE's decision to contract with GEO;

3. Purportedly inadequate inspections and audits; and

4. Alleged deficiencies with ICE's COVID-19 guidance and policies.

All four are paradigmatic examples of the type of decisions that Congress intended to remove from judicial micromanagement and leave within the prerogative of Congress and the Executive through the discretionary function exception. Moreover, none of the actions constitute a valid exception to the independent contractor exception. The Court should grant the United States' Motion to Dismiss and

hold that it lacks subject matter jurisdiction over plaintiff's claims against the United States.

## I.   The unopposed parts of the United States' Motion to Dismiss should be granted.

Plaintiff agrees that U.S. Immigration and Customs Enforcement (ICE) is not a proper defendant and should be dismissed. She also agrees that her intentional infliction of emotional distress claim and request for punitive damages and attorney fees against the United States should be dismissed, and that her jury trial request for claims against the United States should be stricken. Opp. at 13-14 n.3. The Court should grant those portions of the United States' Motion to Dismiss.

## II.  Any claims relying on the government's refusal to release Mr. Ahn are jurisdictionally barred by 8 U.S.C. §§ 1226(e) and 1252(g) and not legally cognizable.

Plaintiff asserts that ICE could have released Mr. Ahn during his removal proceedings or just not commenced removal proceedings at all, and thus the United States should be liable. Opp. at 16-17. Even if plaintiff was right that ICE had such authority, the Court lacks jurisdiction over any claims "arising from the decision . . . to commence [removal] proceedings" or "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." Mot. at 10, 15-16 (citing 8 U.S.C. §§ 1252(g), 1226(e) and cases applying them); *see also Reno v. AAADC*, 525 U.S. 471, 487 (1999) (holding that "challenge to the Attorney General's decision to 'commence proceedings' against [deportable aliens] falls squarely within § 1252(g)" and is jurisdictionally barred). Plaintiff does not address either statute or case law applying them. For that reason alone the Court should dismiss plaintiff's claims based on ICE's decisions to remove Mr. Ahn, to detain him, or to refuse his release.

Further, ICE lacked authority to do what plaintiff demands. Section 1226(c)(1) states that aliens convicted of an aggravated felony "shall" be detained during removal proceedings, and the Supreme Court has confirmed that "Section 1226(c) mandates detention during removal proceedings for . . . aliens . . . convicted of an aggravated felony," and that such aliens may only be released if they meet the requirements of § 1226(c)(2). Mot. at 10 (quoting *Demore v. Kim*, 538 U.S. 510, 517-18 (2003)); *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018); *Arizona v. United States*, 567 U.S. 387, 456 (2012) (Alito, J., concurring). Quoting *Fraihat*, plaintiff asserts that "[t]he Ninth Circuit has made clear that 1226(c)'s mandate is not absolute and cannot override 'consideration of the risk of severe illness or death [of a detainee].'" Opp. at 17 (quoting *Fraihat v. U.S. ICE*, 16 F.4th 613, 633 (9th Cir. 2021)).

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS      2

The Ninth Circuit held no such thing—that quote summarized part of the district court's injunction order that the Ninth Circuit reversed.  16 F.4th at 635-36.  *Fraihat* also said that many aliens were "under mandatory detention" pursuant to § 1226(c) (*id.* at 620), and the Ninth Circuit has previously deemed § 1226(c) a "mandatory detention" statute.  *Rodriguez v. Robbins*, 715 F.3d 1127, 1137-38 (9th Cir. 2013); *Casas-Castrillon v. DHS*, 535 F.3d 942, 947 (9th Cir. 2008).  So have other courts of appeals.[1]  Rather than adopt dicta from an overruled district court case[2] as plaintiff suggests, the Court should follow the consensus authority that § 1226(c) means what it says.

### III. Plaintiff's claims are barred by the discretionary function exception.

The United States retains immunity against any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty[.]"  Mot. at 14.  A two-step inquiry governs whether claims fall within the discretionary function exception: (1) whether the action is a matter of choice; and (2) if so, whether the choice is grounded in policy.  Mot. at 14; Opp. at 24.

The Second Amended Complaint identifies four allegedly negligent acts by ICE that renders the United States liable: (1) detaining Mr. Ahn and not releasing him; (2) contracting with GEO and not terminating the agreement for noncompliance; (3) perfunctory and unreliable inspections; and (4) COVID-19 protocols.  *See also* Mot. at 9 (citing SAC).  Plaintiff's Opposition does not dispute either step of the discretionary function test for the first or second acts—it asserts only that the PBNDS and

---

[1] *Hosh v. Lucero*, 680 F.3d 375, 384 (4th Cir. 2012) ("§ 1226(c)'s mandatory detention provision . . . withdraws the Attorney General's discretion to release such an alien on bond pending [removal] proceedings."); *Chavez-Alvarez v. Warden*, 783 F.3d 469, 473 (3d Cir. 2015) ("[S]ection 1226(c) expand[ed] the range of serious crimes for which the Government was required to detain convicted aliens . . . [and] does not give the Attorney General any authority to release these aliens on bond."); *Castaneda v. Souza*, 810 F.3d 15, 18, 45 (1st Cir. 2015) (en banc) (unanimously agreeing that § 1226(c) requires mandatory detention and that § 1226(c)(2) forbids release of mandatory detainees on bond but disagreeing on whether § 1226(c) applies when ICE has not promptly detained the alien after release from prison); *Wekesa v. U.S. Att'y*, No. 22-10260, 2022 WL 17175818, at *1 (5th Cir. Nov. 22, 2022) ("Section 1226(c) provides that the Attorney General shall detain aliens who are . . . removable based on having committed certain criminal offenses," and pursuant to § 1226(c)(2) they may "be released only if . . . necessary for witness-protection purposes" and other conditions are met).

[2] Aside from not being good law, plaintiff overstates *Fraihat v. U.S. ICE*, 445 F. Supp. 3d 709 (C.D. Cal. 2020).  Opp. at 17.  Although the court suggested that some aliens "required to be detained by statute can be and were released" by ICE, it also found that "ICE's current policy does not allow the exercise of discretion to release those subject to mandatory detention even if at higher risk for COVID-19."  *Id.* at 726; Mot. at 15 n.9 (citing April 4, 2020 ICE memorandum).  The fact that ICE may have violated a mandatory statutory directive for a couple weeks in March 2020 during the pandemonium of a nascent global emergency does not override the plain language of § 1226(c) or case law interpreting it.

PRR standards are mandatory directives, and thus violations of them are neither discretionary nor grounded in policy. *See* Opp. at 29-35. As plaintiff has conceded that the first and second acts are discretionary and grounded in policy, her claims relying on them should be dismissed. Further, the Court should hold that the third and fourth acts fall within the discretionary function exception, and thus plaintiff's claims relying on them likewise should be dismissed.

### A. ICE's detaining Mr. Ahn and not releasing him during removal proceedings and contracting with GEO fall within the discretionary function exception.

In its Motion, the United States demonstrated, with controlling law, that the decision of whether to detain or release an alien during removal proceedings is committed to the Attorney General's discretion, and that exercise of that discretion necessarily implicates foreign policy issues. Mot. at 16. The same is true of any decision relating to choice of facility for Mr. Ahn.[3] *Id.* at 16 n.10. Plaintiff does not dispute this analysis or case law in her Opposition.

Similarly, the decision to contract with GEO was explicitly committed to ICE's discretion under the Federal Acquisition Regulations (FARs), which set forth only general performance standards to consider in selecting a contractor. Mot. at 17. And the FARs themselves state that agencies should consider "public policy goals," including those of Congress and the President, in selecting a contractor. *Id.* at 17-18. As a result, courts have consistently held that choice of contractor is an immunized discretionary function, including in the cases plaintiff's Opposition relies on. Mot. at 18 & n.11; *see also Marlys Bear Medicine v. United States*, 241 F.3d 1208, 1214 (9th Cir. 2001) (Opp. at 33); *Morales-Alfaro v. U.S. DHS*, No. 20-cv-82, 2021 WL 1061171, at *4 (S.D. Cal. Mar. 17, 2021) (Opp. at 22). Plaintiff does not dispute any of this in her Opposition either.

Because controlling law confirms that decisions relating to the detention/release of Mr. Ahn and to contracting with GEO are discretionary acts that implicate policy, which plaintiff does not dispute in her Opposition, the Court should dismiss plaintiff's claims that rely on those decisions.

---

[3] As the United States anticipated, plaintiff shifted her position from asserting only that Mr. Ahn should have been released from detainment entirely to asserting that he could also have been transferred to a different facility. *See* Mot. at 16 n.10 (citing SAC ¶ 190). The Court should disregard plaintiff's new position, as it is not proper to amend a complaint through an opposition brief.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS   4

**B.     GEO's violations of the PBNDS and PRR standards do not undermine application of the discretionary function exception.**

Plaintiff argues that § 2680(a) does not bar claims relating to ICE's allegedly deficient inspections and implementation of COVID-19 protocols because Mesa Verde was governed by mandatory policies (such as PBNDS and PRR), which it had no discretion to violate.[4]  Opp. at 29-33.

But that is not the correct inquiry under the discretionary function exception.  Rather, the Court must assess "whether the action is a matter of choice for the *acting [federal] employee*."  Mot. at 14 (citing authority; emphasis added).  ICE did not own or run Mesa Verde's operations, and thus facility compliance with contractual provisions and legal standards (including PBNDS and PRR) was not the purview of federal employees but rather GEO.  As the Contract confirms, GEO, "and not the Government, is responsible for the day-to-day operations of the Facility and all the management and quality control actions required to meet the terms of the Agreement."  Mot. at 3 (quoting Contract).

Under the Contract, ICE only performed periodic audits and inspections to ascertain GEO's performance with contract requirements (including the PBNDS and PRR standards incorporated into the Contract).  Mot. at 4.  Those audits and inspections involved significant discretion.  The FARs and the Contract did not specify how often audits and inspections should occur, who should conduct them, how they should be performed, or what should be audited or inspected.  Mot. at 18.  Plaintiff has not identified any statute, regulation, or contractual provision that requires ICE to perform inspections in a certain manner.  Further, because inspections are aimed at ensuring that a contractor meets the policy objectives of the FARs and protecting the Government's interest in a contract, they are necessarily grounded in policy.  *Id.* at 18-19.  Although plaintiff believes these inspections were negligently conducted, that does not obviate the discretionary function exception.  Mot. at 14 (citing cases).

Plaintiff asserts, however, that "even if a federal agency did have discretion in how it implemented safety measures, 'its actions in carrying out its responsibilities' related to those safety measures '[are] not protected policy judgments'" under § 2680(a).  Opp. at 34 (quoting *Marlys Bear*,

---

[4] Plaintiff originally asserted that ICE did not "develop an adequate COVID-19 prevention policy."  SAC ¶¶ 210-11.  She appears to concede that the discretionary function exception immunizes ICE against claims that COVID-19 policies themselves are deficient and shifts to a position that ICE is liable because Mesa Verde did not follow those COVID-19 policies.  *See* Mot. at 21-22; Opp. at 33.

REPLY IN SUPPORT OF DEFENDANTS' MOTION   5
TO DISMISS

241 F.3d at 216-17).  She contends ICE should be liable because it "was required to ensure that [its independent contractor] complied with the contract provisions." *Id.* at 33 (quoting *Marlys Bear*, 241 F.3d at 1217 (alteration original)).

*Marlys Bear* and similar cases relying on the so-called "design/implementation distinction" do not apply here.  In *Marlys Bear*, an agency contracted with a logging company for timber operations on an Indian reservation.  241 F.3d at 1212.  Although the contractor conducted logging, the agency "reserve[d] for itself the power to supervise, warn, fine, or suspend operations not complying with contractual terms." *Id.*  Further, the agency's own operation manual required the agency to "ensure 'adherence to basic policy and forestry practices.'" *Id.* at 1215.  Here, by contrast, ICE did not reserve any supervisory powers over Mesa Verde, nor did ICE take upon itself the responsibility to ensure that GEO adhered to safety policies.  *See* Mot. at 3-4.  To the contrary, GEO had primary "responsib[ility] for management and quality control actions necessary to meet the quality standards set forth in the contract," including through daily inspections and undertaking all management and quality control actions necessary to comply with contractual and legal standards.  Mot. at 4 (citing Contract provisions).

Further, plaintiff ignores a critical exception to the design/implementation distinction: "where the implementation itself implicates policy concerns." *Whisnant v. United States*, 400 F.3d 1177, 1182 n.3 (9th Cir. 2005); *Gonzalez v. United States*, 814 F.3d 1022, 1035 (9th Cir. 2016).  In *Marlys Bear*, implementation was straightforward: if safety protocols were not being followed, the agency had already committed to issuing warnings or suspending non-compliant operations.  Here, by contrast, if ICE discovered a contractual noncompliance at Mesa Verde during an inspection (and plaintiff offers no facts suggesting that ICE has[5]), that would not end the matter.  The Contract does not identify how a "noncompliance" is determined, and the FARs explicitly give ICE discretion to "establish[] the significance of a nonconformance when considering the acceptability of supplies or services which do not meet contract requirements."  Mot. at 20 (quoting 48 C.F.R. § 46.103(e)).  The Contract and the

---

[5] As discussed below, *see* Section III.C, plaintiff's Second Amended Complaint offers no well-pleaded factual allegations plausibly showing that ICE was aware of Mesa Verde's myriad noncompliances generally, or its noncompliances with respect to Mr. Ahn specifically.  To the contrary, plaintiff asserts that Mesa Verde passed three audits of its suicide prevention and intervention, and that GEO covered up noncompliances so they would not be discovered during audits.  SAC ¶¶ 22, 24.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS        6

FARs also give ICE discretion to determine whether to impose monetary penalties or terminate the contract if noncompliances are discovered. *Id.* And even if the nonconformances are significant enough to constitute default, the FARs ask provide several policy-based considerations to weigh in determining whether to terminate or continue a contract. *Id.* Simply put, unlike in *Marlys Bear* where noncompliances were a straightforward matter, any discovered noncompliances in the Contract would require additional discretionary determinations grounded in policy.

In short, how ICE conducts its audits and inspections, and how it handles any discovered noncompliances, are discretionary matters that are grounded in policy considerations at the design and implementation stages. The discretionary function exception therefore bars plaintiff's claims.

**C.   ICE's actions did not violate the Constitution.**

Plaintiff argues that the Court need not engage in any of the foregoing analysis because Mr. Ahn's conditions of confinement violated the Constitution, and the discretionary function exception does not shield unconstitutional actions by the government. Opp. at 25-29.

Plaintiff, however, does not show that ICE itself created the allegedly unconstitutional conditions. Rather, she argues that GEO's failure to follow the PBNDS, PPR, and other requirements led to unconstitutional conditions of confinement, and because ICE's discretionary choices did not prevent or ameliorate those conditions, ICE's choices violated the Constitution. Plaintiff does not cite a case accepting this bootstrapping syllogism to negate the discretionary function exception in an FTCA claim. Most of her cases did not involve the FTCA or the discretionary function exception at all,[6] and the few that did considered alleged unconstitutional actions by the government itself.[7]

---

[6] *Henry A v. Willden*, 678 F.3d 991 (9th Cir. 2012); *Gordon v. Cnty. of Orange*, 888 F.3d 1118 (9th Cir. 2018); and *Castro v. Cnty. of L.A.*, 933 F.3d 1060 (9th Cir. 2016) involved claims against state and county officials, not the United States or any federal entity. *Castillo v. Barr*, 449 F. Supp. 3d 915 (C.D. Cal. 2020); *Pimentel-Estrada v. Barr*, 458 F. Supp. 3d 1226 (W.D. Wash. 2020); *Zepeda Rivas v. Jennings*, 465 F. Supp. 3d 1028 (N.D. Cal. 2020); *Ahn v. Barr*, No. 20-cv-2604, 2020 WL 2113678 (N.D. Cal. May 4, 2020); *Bent v. Barr*, 445 F. Supp. 3d 408 (N.D. Cal. 2020); *Ortuno v. Jennings*, No. 20-cv-2064, 2020 WL 1701724 (N.D. Cal. Apr. 8, 2020), involved habeas or injunctive actions, not FTCA claims. *Prado v. Perez*, 451 F. Supp. 3d 306 (S.D.N.Y. 2020), never considered the discretionary function exception.

[7] *Fuentes-Ortega v. United States*, -- F. Supp. 3d --, 2022 WL 16924223, at *3 (D. Ariz. Nov. 14, 2022) (holding that government's family separation under Zero Tolerance Policy did not fall within discretionary function exception); *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) (holding that discretionary function exception did not apply to establishment of discriminatory, unconstitutional policies that resulted in false arrests and detentions by border agents); *Thames Shipyard & Repair Co. v.*

Beyond the legal dubiousness of plaintiff's bootstrapping theory, she has not plausibly asserted a constitutional violation. Plaintiff argues that she can establish that ICE violated the Fifth Amendment through its objective deliberate indifference to Mr. Ahn's safety and well-being. Opp. at 26-28. To do so, plaintiff must show that a reasonable official in ICE's position would have known that measures were necessary to avert an "impending" or "imminent" suicidal crisis. *Damits v. Cnty. of L.A.*, No. CV-17-8620, 2018 WL 6177953, at *3 (C.D. Cal. Sept. 24, 2018); *Hernandez v. Cnty. of Santa Clara*, No. 19-cv-7888, 2020 WL 3101041, at *4-5 (N.D. Cal. June 11, 2020). Plaintiff's argument thus must be premised on ICE having sufficient knowledge about Mr. Ahn's mental health problems, GEO's inadequate medical and mental health care services and lax suicide prevention policies at Mesa Verde generally and towards Mr. Ahn specifically, and Mr. Ahn's being housed in a room with a bed sheet and a tie-off point when he was imminently suicidal. *See* Opp. at 26.

The Second Amended Complaint pleads no facts to suggest that ICE actually had this knowledge—it simply asserts in conclusory fashion that ICE "knew or should have known" about the issues, which is not enough to show a plausible claim under Federal Rule 8. Mot. at 13 n.6. In fact, the well-pleaded factual allegations counter plaintiff's assertion that ICE had the requisite knowledge and appreciation of the situation to meet the deliberate indifference standard. Three inspections of Mesa Verde in 2016 and 2017 found that GEO met all standards relating to suicide prevention and intervention. SAC ¶ 24; *see also* SAC ¶ 23 ("GEO Group regularly passed ICE inspection[.]"). Plaintiff further asserts that GEO "cover[ed] up or obscure[d] issues at its facilities and so passed inspection without having to fix problems." SAC ¶ 22. And she alleges that Mr. Ahn's medical services—from initial screening to psychological evaluation (where Mr. Ahn reported his suicidal tendencies) to prescription refills to medical treatment to housing—were conducted by GEO employees or contractors,

---

*United States*, 350 F.3d 247, 259-60 (1st Cir. 2003) (holding that discretionary function exception protected the Coast Guard from forcibly evacuating a shipping vessel); *U.S. Fidelity & Guar. Co. v. United States*, 37 F.2d 116, 122-23 (3d Cir. 1988) (holding that discretionary function exception protected government's scheduling of chemical removal operations at hazardous site); *Baires v. United States*, No. C-09-5171, 2011 WL 6140998, at *6 (N.D. Cal. Dec. 9, 2011) (considering government agents' failure to provide necessary medication to detainees). Plaintiff also correctly observes that *Myers & Myers, Inc. v. USPS*, 527 F.2d 1252 (2d Cir. 1975), remanded to consider whether USPS violated the constitution. The action at issue, however, was USPS's barring a company from consideration for "star routes" without providing the company with a hearing, which violated USPS's own regulations and possibly the constitution. *Id.* at 1261.

with no well-pleaded factual allegations suggesting that ICE had any involvement in or knowledge of those activities.[8]  Mot. at 5-6 (discussing SAC allegations).

There are, in short, no well-pleaded factual allegations showing that ICE knew of the conditions at Mesa Verde, Mr. Ahn's mental health history, or the risks that Mr. Ahn faced, nor is there a basis to believe that a reasonable officer at ICE would reasonably have known of an "obvious" risk of "imminent suicidal crisis."  *See* Opp. at 26 (citing *Castro* test for objective deliberate indifference).

## IV.   Plaintiff's claims are barred by the independent contractor exception.

Plaintiff admits that the United States is immune from claims based solely on GEO's alleged wrongdoing.  Opp. at 16.  Although plaintiff's pleadings identify four allegedly negligent actions taken by ICE, those actions do not vitiate the independent contractor exception as a matter of law, even if the facts underlying them are accurate (and the United States assumes they are for purposes of its Motion).

### A.   The relevant parts of the applicable contract have been provided.

At the outset, plaintiff falsely accuses the United States of "gamesmanship" and deliberately hiding attachments to the Contract that would undermine its claim.  Opp. at 14-15.  Contracting Officer Natasha Nguyen already explained why only Attachment 19 to the Contract was included: it was the only one relevant to the Motion to Dismiss.  Nguyen Decl. ¶ 4.  Page 3 of the Contract lists all of the Attachments, and their titles alone largely show their irrelevance.  Nonetheless, to avoid having to re-file this Motion, the United States attaches the remaining Contract Attachments to this Reply so plaintiff and the Court can review those provisions.  Should the Court believe limited supplemental briefing as to the impact of those Attachments is warranted before deciding the Motion, the United States will file one according to the Court's order.

### B.   Detention of Mr. Ahn during his removal proceedings.

Plaintiff asserts that the Court may review the constitutionality of Mr. Ahn's detention.  Opp. at 17.  That may be true to some extent in habeas corpus or injunction actions like in plaintiff's cases.[9]  But

---

[8] The only assertion that might suggest ICE's knowledge of Mr. Ahn's mental health history is a May 17, 2020 email that Mr. Ahn's attorneys sent ICE "requesting that the agency return him to his dormitory because isolation was proving detrimental to his mental health."  SAC ¶ 58; *see* Opp. at 7, 26.  But that is far from showing that ICE would reasonably have found it "obvious" that Mr. Ahn had an imminent suicide risk.

[9] *See Zadvydas v. Davis*, 533 U.S. 678, 689, 701 (2001) (holding that court could exercise habeas

constitutional torts are not cognizable under the FTCA,[10] and plaintiff notably fails to marshal a single case permitting an *FTCA damages* claim to proceed based on § 1226(c) detention during removal proceedings. The United States, by contrast, has cited several cases unaddressed by plaintiff that jurisdictionally barred such claims under both § 1226(e) and § 1252(g). *See* Mot. at 10, 15-16. Further, as shown in Section III, *supra*, § 1226(c) required Mr. Ahn's detention and forbade his release unless he met the requirements of § 1226(c)(2).

### C. Selection of GEO as contractor.

Plaintiff acknowledges that the United States cannot be liable for GEO's actions, and she does not dispute that her pleadings attribute Mr. Ahn's death to GEO's acts and omissions. *See* Mot. at 10 (citing SAC). Instead, she argues that she can avoid the independent contractor exception by pleading negligent retention of GEO. Opp. at 18.

But she cites no cases supporting her legal theory. *Id.* (citing *L.B. Foster Co. v. Hurnblad*, 418 F.3d 727 (9th Cir. 1969), which did not involve an FTCA claim). The United States acknowledges that there is little case law on the subject (and it has located none in the Ninth Circuit), as courts typically dismiss negligent selection/retention claims under the discretionary function exception. But the few courts considering the issue have barred negligent retention claims under the FTCA based on harm resulting from actions by a contractor that were expressly committed to it by contract.[11] *See* Mot. at 10-11 (citing *Nelson v. United States*, No. 13-1817, 2014 WL 988860 (D. Md. Mar. 12, 2014), which plaintiff does not address); *see also Hill v. United States*, No. 3:19-958, 2021 WL 1227074, at *8 (D.S.C. Mar. 31, 2021) (dismissing negligent selection of contractor claim under both discretionary function and independent contractor exceptions to the FTCA). Similarly here, GEO's acts or omissions

---

corpus review as to whether post-removal-period detention under 8 U.S.C. § 1231 was unreasonably lengthy); *AAADC v. Reno*, 70 F.3d 1045, 1052 (9th Cir. 1995) (reviewing claims for injunctive relief for constitutional violations).

[10] *See Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995) ("[C]onstitutional claims are outside the purview of the Federal Tort Claims Act."); *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994); *Bruns v. NCUA*, 122 F.3d 1251, 1255 (9th Cir. 1997).

[11] Contrary to plaintiff's suggestion, *Perkins v. United States* is germane. *See* Mot. at 10; Opp. at 18. *Perkins* rejected a request to add a negligent retention claim because the contractor's negligence caused the injury. 55 F.3d 910, 917 (4th Cir. 1995). Plaintiff attempts to distinguish the case by discussing the negligent *supervision* claim, which was a completely different analysis.

concerned matters explicitly committed to it by contract. Instead of making up new law, the Court should follow existing law and hold that plaintiff cannot evade the independent contractor exception by bootstrapping GEO's negligence into ICE's negligent retention.

### D. Negligent supervision and COVID-19 protocols.

As shown in the United States' Motion, plaintiff cannot evade the independent contractor exception by asserting negligent inspections or supervision unless she offers facts that ICE directed or caused GEO's acts or omissions. Mot. at 8-9, 11. Plaintiff offers no such facts. Instead, she asserts that ICE "controls" GEO by "dictating how [it] must operate Mesa Verde" through detailed contractual requirements and mandates, purportedly vitiating the independent contractor exception. Opp. at 19, 21.

But that is not the law. The Ninth Circuit and this Court have consistently held that the United States may "direct detailed performance," "fix specific and precise conditions," "retain a broad power of control to inspect, to make recommendations, and to prescribe alterations and modifications," impose "detailed regulations and inspections" or "standards," and retain "the ability to control safety conditions" without undermining the independent contractor exception. Mot. at 8-9, 11 (citing cases). Plaintiff addresses none of the United States' critical cases—she merely distinguishes one minor case that the United States does not rely on and cites a California district court case that does not involve an FTCA claim. Opp. at 19 (distinguishing *Chaffin v. United States*, 176 F.3d 1208 (9th Cir. 1999); citing *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1239 (N.D. Cal. 2018)).[12]

This legal backdrop is precisely why plaintiff's incantation of "fact-bound" claims and asserted needs for discovery miss the mark and do not justify denying the Motion. *See* Opp. at 19, 21. True, ICE's Contract with GEO is extensive, incorporates numerous specific standards governing GEO's operations, and includes inspection regimens—the United States has already acknowledged as much. *See* Mot. at 3-4. But that does not establish the "substantial supervision over [GEO's] day-to-day operations" necessary to transform GEO from an independent contractor to a federal employee for purposes of an FTCA claim. Mot. at 9, 11 (citing cases). And that is true even if the Court credited Erik

---

[12] *Hodges* also is non-sequitur, as plaintiff cites it to elucidate California independent contractor law. Opp. at 19. Federal law determines whether an individual is a federal employee or independent contractor for purposes of the FTCA. *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005).

Bonnar's declaration from the *Zepeda Rivas* case as plaintiff requests. Opp. at 20. Although describing communication and oversight of Mesa Verde "to ensure ICE protocols are in place," he never stated that ICE ran Mesa Verde's day-to-day operations or managed GEO's employees, which is consistent with Natasha Nguyen's declaration supporting the Motion. *See* Opp. at 20 (quoting Mr. Bonnar); Mot. Ex. 2, ECF No. 54-3. ICE could "retain a broad general power of control to inspect, to make recommendations, and to prescribe alterations and modifications" and "control safety conditions" while still retaining immunity under the independent contractor exception. *See* Mot. at 9, 11 (quoting cases).

In short, plaintiff has not identified any case law suggesting that the Contract requirements, standards, and protocols—extensive though they may be—rise to the level where ICE so controlled GEO's day-to-day operations that ICE and GEO "cannot be said to be 'independent.'" Mot. at 9 (quoting case). The Court should apply the extensive legal authority cited by the United States.

**E.    ICE had no independent sources of duty to Mr. Ahn that would undermine the independent contractor exception.**

Plaintiff concedes that ICE did not own Mesa Verde and thus did not owe any duty to Mr. Ahn as a landowner. Opp. at 23. And she also acknowledged in her pleadings that Mesa Verde is operated by GEO. *See* Mot. at 2-3. She asserts, however, that ICE was a "jailer," and thus owed non-delegable duties to Mr. Ahn under *Edison v. United States*, 822 F.3d 510 (9th Cir. 2016).[13] Opp. at 21-23.

Plaintiff's assertion is based on a faulty premise that *Edison* found a duty on "independent" grounds of the BOP's status as landowner and jailer. Opp. at 22. *Edison* repeatedly stated that the BOP's duty was based on its status as landowner (*see* Mot. at 12 & n.5), and that California's law regarding jailers "bolstered" or "underscored" that duty. *Edison*, 822 F.3d at 521, 523. Indeed, while *Edison* referenced the BOP's duty as "landowner" or "landowner and jailer" multiple times (*see* Mot. at 12 n.5), it never referenced the BOP's duty as "jailer" only. Here, ICE has no duty to bolster—GEO owned Mesa Verde and ran its day-to-day operations, and ICE did not retain any duties through contract.

But even if plaintiff's reading of *Edison* were correct, ICE is not the "jailer" here. A "jailer" is "[a] keeper, guard, or warden of a prison or jail." Black's Law Dictionary 851 (8th Ed. 2004); *see also*

---

[13] Plaintiff asserts that *Yanez v. United States*, 63 F.3d 870 (9th Cir. 1995), "does not apply here" based on its distinct facts. Opp. at 24. The United States agrees with plaintiff's assessment.

*Redman v. Cnty. of San Diego*, 896 F.2d 362, 368 (9th Cir. 1990) (referring to "jail officials" as "jailers"); *United States v. Edwards*, 415 U.S. 800, 804 n.6 (1974) (describing a "jailer" as one having "custody and control" over an inmate); *Morales-Alfaro*, 2021 WL 1061171, at *3 n.3 (stating that the duty of a jailer is "[p]resumably . . . the duty of private persons charged with the custody of [a] prisoner, e.g., the operators of private prisons"); *see also Minneci v. Pollard*, 565 U.S. 118, 128 (2012) (observing that California law imposes duties on "jailers, including private operators of prisons"). In *Edison*, the BOP was a jailer because it owned the prison and retained an exclusive contractual "right to construct new buildings, expand existing buildings, and modify or add to the mechanical or utility systems of existing buildings." *Edison*, 822 F.3d at 514; *see also id.* at 523 ("[T]he BOP did not delegate all of its duties to GEO/MTC, even once prisoners arrived at Taft. Instead, it retained both the exclusive right to construct new buildings and the exclusive right to make modifications to existing buildings."). Likewise in *Morales-Alfaro*, the court found that the United States had a duty towards detainees because "the United States has retained management authority over the detention facility" and "had authority to correct the situation."[14] 2021 WL 1061171, at *3-4.

Whereas the government in *Edison* and *Morales-Alfaro* was a keeper of the facilities because it could control the welfare of detainees through facility ownership and/or retention of contractual duties, ICE did not own Mesa Verde and retained no contractual rights of facility construction or management of GEO personnel. *See* Mot. at 2-4, 12-13. Plaintiff cites no case deeming the government to be a "jailer" where, as here, it has outsourced custody and control of detainees to a privately owned and operated facility while retaining no management or construction rights. At absolute most, ICE acted as a jailer while transferring Mr. Ahn from CSP Solano to Mesa Verde—indeed, that is plaintiff's sole basis for deeming ICE a jailer (though she cites no case to support that proposition either). *See* Opp. at 23. But once ICE relinquished custody and control over Mr. Ahn, GEO became the jailer. *See* SAC ¶ 25 ("[W]hen ICE picked Mr. Ahn up from Solano prison and deposited him at Mesa Verde . . . , the agency was entrusting his health, safety, and wellbeing to GEO[.]").

---

[14] *Morales-Alfaro* also concerned a facial challenge under Rule 12(b)(1), which required the court to assume that the plaintiff's "sweeping" complaint allegations were true. 2021 WL 1061171, at *4. Here, ICE raises a factual challenge, which allows the Court to look beyond plaintiff's allegations.

Finally, plaintiff suggests that ICE had a duty towards Mr. Ahn under the doctrine of peculiar risk. Opp. at 22-23. But she cites no case law supporting her assertion that operating a detention center involves a peculiar risk as a matter of law. *Id.* at 23. This Court appears to have already rejected such a proposition. *Anderson v. United States*, No. 1:16-cv-352, 2018 WL 3388410, at *8 (E.D. Cal. July 10, 2018), *adopted*, 2018 WL 4242344 (E.D. Cal. Sept. 6, 2018) (rejecting application of peculiar risk doctrine to alleged negligence by BOP contractor in providing medical care to a prisoner). In any event, the peculiar risk doctrine is a means of holding landowners responsible for undertaking inherently dangerous activity, but ICE does not own Mesa Verde or the land it sits on. *Id.*; *E&J Gallo Winery v. Pestmaster Servs., Inc.*, No. 2:19-cv-2120, 2020 WL 1451582, at *3 (E.D. Cal. Mar. 25, 2020); *Jackson v. AEG Live, LLC*, 233 Cal. App. 4th 1156, 1182-83 (2015).

There is, in short, no basis to impose a duty on ICE that would allow plaintiff to evade the independent contractor exception to the FTCA. The United States' Motion should be granted.

**V.      Plaintiff cannot state a claim for false imprisonment.**

False imprisonment requires Mr. Ahn to show that he was confined "without lawful privilege." Mot. at 23. Although plaintiff asserts that ICE had discretion to release Mr. Ahn outside the narrow requirements of § 1226(c)(2), she never suggests that ICE lacked authority to bring removal proceedings against Mr. Ahn or to detain him while they were pending. *See* Opp. at 35. And although plaintiff asserts that Mr. Ahn's conditions of confinement violated the constitution.

Therefore, for the foregoing reasons, the Court should dismiss plaintiff's claims against the United States under the discretionary function exception or, alternatively, the independent contractor exception to the Federal Tort Claims Act.

Dated: July 21, 2023

PHILLIP A. TALBERT
United States Attorney

By: /s/ BRODIE M. BUTLAND
BRODIE M. BUTLAND
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2023, a true and accurate copy of the foregoing has been served on all counsel of record via this Court's CM/ECF electronic filing system.

/s/   BRODIE M. BUTLAND
Assistant United States Attorney

Counsel for the United States of America and U.S. Immigration and Customs Enforcement