UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SYLVIA AHN,

Plaintiff,

v.

GEO GROUP, INC., et al.,

Defendants.

Case No. 1:22-cv-00586-CDB

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

(Doc. 54)

Pending before the Court is the motion of Defendants the United States of America and United States Immigration & Customs Enforcement to dismiss the second amended complaint of Plaintiff Sylvia Ahn, supported by declarations and exhibits. (Docs. 54, 60). Plaintiff filed an opposition on July 14, 2023 (Doc. 61), and Defendants filed a Reply supported by an additional exhibit on July 21, 2023. (Doc. 64). For the reasons set forth below, Defendants' motion to dismiss will be granted.[1]

## I. Background

Plaintiff is the daughter of Choung Woong Ahn (the "Decedent" or "Mr. Ahn") and brings this action on behalf of his estate. (Doc. 46, Second Amended Complaint ("SAC") ¶2). She initiated this action with the filing of a complaint on May 17, 2022, asserting claims against the United States of America, the United States Immigration & Customs Enforcement ("ICE"), and GEO Group, Inc. ("GEO"). (Doc. 1). The claims stem from the Decedent's detention at Mesa Verde Detention Facility ("Mesa Verde") in or around February 2020.

[1] Following the parties' grant of consent to the jurisdiction of a U.S. magistrate judge for all purposes, this case was assigned to the undersigned on March 30, 2023. (Doc. 39).

Mr. Ahn was admitted into the United States as a lawful permanent resident in 1988. (SAC ⁋13). He lived in the San Francisco Bay area until 2013, when he was convicted of attempted murder with a firearm enhancement. (Doc. 54-1 p. 1). Since Mr. Ahn's felony was a removable offence, shortly before he served his state sentence, Defendants commenced removal proceedings. *Id.*

While he served his prison sentence, Mr. Ahn developed severe depression and other mental health conditions. Mr. Ahn previously attempted suicide at least three times while incarcerated. (SAC ⁋14). Mr. Ahn also had physical disabilities including hypertension, type two diabetes, and severe heart-related issues. (Doc. 61 pp. 2-3).

Mr. Ahn was placed in detention at Mesa Verde, a federal immigration detention facility, on February 21, 2020, after being released from CSP Solano on parole. (SAC ⁋15). Mr. Ahn was 74 years old at the time. *Id.* ⁋12. According to the SAC, Mesa Verde is operated by GEO, a private company contracted by ICE in 2015. *Id.* ⁋15-16. Conditions in immigration detention facilities like Mesa Verde are governed by ICE's Performance-Based National Detention Standards ("PBNDS"). (Doc. 61 p. 3). The PBNDS require that detainees be screened at intake for disabilities and history of mental illness or self-harm. (Doc. 61-2 "PBNDS" p. 333). The PBNDS further require that "[a]t the time of screening, staff should also assess relevant available documentation as to whether the detainee has been a suicide risk in the past, including during any periods of detention or incarceration." *Id.*

According to Plaintiff, Mr. Ahn's intake screening failed to identify his history of depression, suicide attempts, and other mental health conditions. (SAC ⁋26). In March 2020, Mr. Ahn was admitted to the emergency department of an outside hospital for surgery to remove a mass on his lung. *Id.* ⁋ 28. Mr. Ahn was highly distressed by this mass since he believed that he was diagnosed with lung cancer. ICE allegedly delayed authorizing his follow-up care or biopsy and Mr. Ahn died before receiving any follow ups. *Id.* ⁋⁋29-31.

Plaintiff also avers that the COVID-19 pandemic reached California in or around March 2020. *Id.* ⁋32. On April 10, 2020, ICE issued COVID-19 Pandemic Response Requirements ("PRR") which were mandates applicable to all facilities holding ICE detainees. (Doc. 61 p. 4);

(Doc. 61-3 "PRR"). The PRR required each facility to "have a COVID-19 mitigation plan," comply with CDC guidance, and identify any detainees who had heightened risks, which included detainees who were aged 65 and over as well as detainees who have mental health conditions including depression. *Id*. at 10. Any detainee who required health care beyond facility resources was to be timely transferred to an appropriate facility. *Id*. Furthermore, a facility that reached "community risk status" of level "red" was also required to implement population reduction strategies in order to properly implement physical distancing. *Id*. at 17-18.

Plaintiff avers that at Mesa Verde, ICE and GEO failed to implement even the "most basic protections." (Doc. 61 p. 4). Mr. Ahn's mental health deteriorated as he knew he was at high risk of suffering from health complications if he contracted the virus. Mr. Ahn also knew that he had a high likelihood of contracting COVID-19 at Mesa Verde. (Doc. 61-1 citing pp. 6-7). As a result of conditions in Mesa Verde, Mr. Ahn participated in a peaceful hunger strike. (SAC ⁋35). In April 2020, Mr. Ahn reported to a psychologist employed by GEO that he had feelings of sadness, low energy, and trouble sleeping. The psychologist concluded Mr. Ahn had an unspecified depressive disorder. *Id*. ⁋36. Mr. Ahn reported his previous suicide attempts to the Mesa Verde medical staff and also expressed feelings of anxiety and not "want[ing] to live in this life." *Id*. ⁋⁋37-38. Mr. Ahn's depression worsened due to the COVID-19 conditions present at Mesa Verde as well as ICE's repeated denial of his requests for release. *Id*. ⁋⁋40-41.

Mr. Ahn submitted multiple requests to ICE to release him from custody, all of which were denied. *Id*. ⁋40. On May 11, 2020, after learning that one of his release requests was denied, Mr. Ahn cried and became abnormally quiet. *Id*. ⁋41. Thereafter, on May 12, 2020, he was admitted to Mercy Hospital in Bakersfield after struggling to breathe, experiencing chest pain, and having liquid come out of his nose. *Id*. ⁋⁋ 42-45.

Mr. Ahn was discharged from Mercy Hospital on May 14, 2020, and returned to Mesa Verde. *Id*. ⁋46. Plaintiff alleges that by the day of his return, Mr. Ahn's depression and history of suicidality were well-documented and both ICE and GEO knew or should have known about it. (Doc. 61 p. 7). However, upon his return to Mesa Verde on May 14, he was placed in an isolation cell with a tie-off point. (SAC ⁋48). According to Plaintiff, Mr. Ahn's isolation was ostensibly

for purposes of medical quarantine, though at the time, ICE and GEO were accepting transfers of detainees to Mesa Verde from California prisons and placing them directly into the general population without either quarantining them or testing them. *Id*. ⁋52.

Once in isolation, Mr. Ahn began experiencing suicidal ideation, which he expressed to his brother. *Id*. ⁋56. During his time in solitary, Mr. Ahn informed his psychologist that he had feelings of depression, but he was nevertheless kept in the isolated cell without any attempt to find an alternative celling arrangement. *Id*. ⁋⁋54-55. On May 16, 2020, a clinical psychologist subcontracted by GEO reported that Mr. Ahn appeared to be at "high suicidal risk if deported." *Id*. ⁋57. In addition, on the morning of May 17, 2020, Mr. Ahn's lawyer emailed ICE requesting that Mr. Ahn be returned to a dormitory, as isolation was proving detrimental to his mental health. On that same day, a contracted medical provider also indicated that Mr. Ahn's mental illness was "severe" and that he had a high risk of suicide if deported. *Id*. ⁋⁋58-59. On the evening of May 17, 2020, Mr. Ahn was left unobserved in his isolation cell for a period of at least 18 minutes. (SAC ⁋⁋61-62). During this period, he died by hanging himself with a bedsheet. *Id*. ⁋62.

**The PBNDS**

The PBNBDS contains requirements and protocols for accommodating detainees at risk of significant self-harm or suicide. In addition, the PBNDS requires ICE and GEO to "act affirmatively to prevent disability discrimination." PBNDS at 344. "[I]t is incumbent upon facility staff to identify detainees with impairments that are open, obvious, and apparent." *Id*. at 348. Identification of detainees with potential disabilities may occur through medical or intake screenings, or direct observation. *Id*. at 348. If a detainee with a "potential disability" is identified, "the facility shall review the need for any necessary accommodations," and provide those accommodations "in an expeditious manner." *Id*. at 348-49. Reasonable accommodations include, "proper medication and medical treatment," and "appropriate housing." *Id*. at 347-48. The PBNDS also contains protocols for preventing self-harm and suicide. Under the PBNDS, detainees may be identified as being at risk for self-harm or suicide at the initial intake screening, or at "any time while in ICE custody." *Id*. at 333. "Staff must therefore remain vigilant in recognizing and appropriately reporting when a risk is identified." *Id*.

Once a detainee is identified as "at-risk" of suicide or self-harm, staff must refer the detainee for an evaluation by a mental health provider within 24 hours. *Id*. at 333-34. During the identification and evaluation, security staff must place the detainee in a secure environment with constant one-on-one visual observation. *Id*. If a suicidal detainee is placed in an "isolated confinement setting," the detainee must "receive continuous one-to-one monitoring, welfare checks at least every 8 hours conducted by clinical staff, and daily mental health treatment by a qualified clinician." *Id*. at 334. "The isolation room must be suicide resistant, which requires that it be free of objects and structural elements that could facilitate a suicide attempt." *Id*. "Security staff shall ensure that the room is inspected prior to the detainee's placement so that there are no objects that pose a threat to the detainee's safety." *Id*. "Any detainee who is believed to be in need of seclusion, and/or restraint due to self-harming or suicidal behavior should be transferred to a psychiatric facility, if deemed medically necessary to appropriately treat the needs of the detainee." *Id*. at 336.

**The Claims at Issue**

In the operative SAC, Plaintiff raises the following claims against the United States and ICE that are the subject of Defendants' motion to dismiss: (1) Negligence under the Federal Tort Claims Act ("FTCA") 28 U.S.C. § 1346(b) [Count Nine]; (2) Negligent Hiring under the FTCA [Count Ten]; (3) Negligent Supervision & Retention under the FTCA [Count Eleven]; (4) Negligence for Nondelegable Duties under the FTCA [Count Twelve]; (5) False Imprisonment under the FTCA [Count Thirteen]; and (6) Intentional Infliction of Emotional Distress ("IIED") under the FTCA [Count Fourteen].

## II. Standard of Law

### A. Subject Matter Jurisdiction – Rule 12(b)(1)

The Federal Rules of Civil Procedure provide for the dismissal of a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir 2004). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Id*. On the other hand, "in a factual attack, the

challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. The Court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id*.

**B. Failure to State a Claim – Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the complaint's sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). When dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the

defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (citing *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## **III. Discussion**

### **A. Plaintiff's Non-opposition**

Plaintiff does not oppose Defendants' motion to the extent of dismissing ICE as a named defendant, dismissing Count Fourteen (IIED claim) from the SAC, and striking Plaintiff's jury trial demand for claims and punitive damages against the United States. *See* (Doc. 61 pp.13-14 n.3). Accordingly, this relief will be granted.

### **B. Plaintiff's Claims under the FTCA**

#### **1. Standard of Law**

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued…, and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "The United States has waived its sovereign immunity with regard to tort liability under the Federal Tort Claims Act 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015) (quoting 28 U.S.C. § 1346(b)(1)). But this waiver is subject to certain exceptions.

Independent Contractor Exception: the United States' waiver of immunity under the FTCA expressly excludes liability for the actions of "any contractor with the United States." 28 U.S.C. § 2671. Pursuant to this "independent contractor" exception, the United States has not waived immunity from liability for the tortious acts of independent contractors. "The critical test for distinguishing an agent from a contractor is the existence of federal authority to control and supervise the 'detailed physical performance' and 'day to day operations' of the contractor, and not whether the agency must comply with federal standards and regulations." *Carrillo v. United States*, 5 F.3d 1302, 1304 (9th Cir. 1993) (quoting *Ducey v. United States*, 713 F.2d 504, 516 (9th Cir. 1983)). Thus, the independent contractor exception will not apply if the United States

controlled and supervised the contractor's day-to-day operations. *See Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005) (finding the government may be liable where it exercises "substantial supervision over the day-to-day operations of the contractor").

Importantly, the independent contractor exception "has no bearing on the United States' FTCA liability for its *own* acts or omissions." *Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016) (emphasis in original). To determine whether the United States may be held liable under the FTCA for its own acts or omissions, as is pled here, courts engage in a three-step inquiry. *Id*. at 519. First, the court determines whether state law, in this case, California law, would impose a duty of care on a private individual in a similar situation. *Id*. (citing 28 U.S.C. § 2674; *Autery*, 424 F.3d at 956). "[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law.*"* *Liebsack v. United States*, 731 F.3d 850, 855 (9th Cir. 2013) (quoting *Molzof v. United States*, 502 U.S. 301, 304 (1992)). If state law does impose such a duty, then the Court looks to the contract and the parties' actions to determine whether the United States retained a portion of that state law duty for which it could be held directly liable. *Edison*, 822 F.3d at 519. Lastly, "even if it appears that the government delegated all of its duties to the independent contractor, we ask whether California law imposed any nondelegable duties on the government." *Id*. (citing *Yanez v. United States*, 63 F.3d 870, 874-75 (9th Cir. 1995)).

Discretionary Function Exception: the United States' waiver of immunity under the FTCA also excludes alleged conduct that falls under the "discretionary function exception." 28 U.S.C. § 2680(a). The discretionary function exception precludes claims against the United States that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion was abused." *Id*. This exception protects "legislative and administrative decisions grounded in social, economic, and political policy" from judicial second guessing. *See Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *United States v. S.A. Empresa de Viacao Aeria Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).

Courts conduct a two-step inquiry to determine whether a claim falls within the

"discretionary function exception." First, the court must determine whether the alleged conduct involved an element of judgment or choice. *See Berkovitz*, 486 U.S. at 536. Second, if the conduct involves some element of choice, then the court must determine whether the conduct involves social, economic, or political policy considerations. *See Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994). When a statute or regulation allows a federal agent to act with discretion, there is a "strong presumption" that the authorized act is based upon an underlying policy decision. *United States v. Gaubert*, 499 U.S. 315, 324 (1991). Notably, to be protected from liability, the challenged decision "need not actually be grounded in policy considerations" so long as it is, "by its nature, susceptible to a policy analysis." *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998). The determination of whether particular government conduct falls within the discretionary function exception must focus on the "nature of the conduct, rather than the status of the actor." *Gaubert*, 499 U.S. at 322.

**2. Analysis**

**(a) Count Nine - Negligence for Failure to Release Mr. Ahn**

In Count Nine of the SAC, Plaintiff alleges Defendants breached their duty to protect and treat with reasonable care Mr. Ahn by declining to release him from custody in light of the COVID pandemic. (SAC ⁋188-91).

In moving to dismiss, Defendants argue that their judgment on whether to detain or release an alien is not subject to judicial review pursuant to 8 U.S.C. § 1226(e). (Doc. 54-1 p. 9) (citing *Martinez v. United States*, No. CV-13-6844 SJO (SHx), 2014 WL 12607839, at *5 (C.D. Cal. Mar. 17, 2014)) (finding decision to not release plaintiff while removal proceedings were pending was committed solely to Department of Homeland Security's discretion). Defendants further argue ICE is required to detain aliens who, like Mr. Ahn, are deportable because of an aggravated felony conviction. *Id.* (citing 8 U.S.C. §§ 1226(c)(1)(C), 1227(a)(2)(A); *Demore v. Kim*, 517-18 (2003)).

In opposing the motion to dismiss, Plaintiff asserts Defendants retained the discretion to not remove a deportable alien and, accordingly, permissibly could have released Mr. Ahn pending any such proceedings. (Doc. 61 p. 16) (citing *Dep't of Homeland Security v. Thuraissigiam*, 140

S.Ct. 1959, 1983 n.28 (2020)) ("the Executive always has discretion not to remove"). Plaintiff further argues that since Mr. Ahn's conditions of confinement were unconstitutional, Defendants did not have authority (or obligation) to detain him and that the Court should review the constitutionality of ICE's actions. *Id*.

To determine whether the FTCA's discretionary function exception operates to immunize the government from a negligence claim, the Court "must identify which specific actions or omissions the plaintiff alleges were negligent or wrongful." *Nanouk v. United States*, 974 F.3d 941, 945 (9th Cir. 2020). Here, Plaintiff alleges Defendants were negligent in failing to protect Mr. Ahn from COVID by their refusal to release him. Because the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy, the discretionary function exception immunizes the government from an FTCA claim premised on the government's negligent detention and refusal to release an immigration detainee – as Plaintiff's claim here is framed. *See Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012). Accord *Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020) (applying discretionary function exception and affirming dismissal of FTCA claim; noting that decisions to detain on immigration charges are discretionary "because they depend on a further decision to prosecute and remove").

Although Plaintiff alleges in other causes of action that certain aspects of Defendants' undertaking of the detention of Mr. Ahn amounted to deliberate indifference in violation of the Eighth Amendment (*see* SAC Count One & Count Two), she acknowledges the government possesses inherent discretion to detain someone for immigration offenses (*e.g.* Doc. 61 pp. 16-17) and makes no allegation or advances any argument that *the decision* to detain Mr. Ahn was anything but consistent with the Constitution and applicable statutes. *Cf.* Doc. 61 p. 17 ("Because Mr. Ahn's *conditions of confinement* were unconstitutional, … ICE did not have the authority, let alone obligation, to detain him, and this Court may review the constitutionality of ICE's actions.") (emphasis added).

While the Court acknowledges that leave to amend a dismissed cause of action should be granted liberally, "a party is not entitled to an opportunity to amend his complaint if any potential

amendment would be futile." *Mirmehdi*, 689 F.3d at 985 (citation omitted). Here, no additional factual allegations could bring Plaintiff's claim outside the FTCA's grant of immunity for claims such as Count Nine implicating the discretionary function exception. *Id.* Accordingly, because amendment would be futile, Plaintiff will not be granted leave to amend Count Nine.

**(b) Counts Ten & Eleven - Negligent Hiring & Supervision/Retention of GEO**

In Count Ten of the SAC, Plaintiff alleges Defendants negligently contracted with GEO to operate Mesa Verde (SAC ⁋⁋196-98). Specifically, Plaintiff alleges Defendants "acted unreasonably in hiring" GEO because Defendants were aware of GEO's history of failure to maintain safe conditions at other facilities they operated. *Id.* ⁋197. Relatedly, in Count Eleven, Plaintiff alleges Defendants negligently failed to exercise control over GEO in its operation of Mesa Verde, including through inadequate inspections, assessment of penalties, and implementation of COVID-19 protocols. *Id.* ⁋⁋203-04.

These claims do not seek to impute to Defendants the negligence of GEO – indeed, any such claims would be barred by the independent contractor exception to the FTCA's waiver of sovereign immunity unless Defendants maintained actual control over GEO's performance (which, as discussed further below, they did not). *See Autery*, 425 F.3d at 956-57 (reiterating that the FTCA does not permit claims based on vicarious liability absent a showing that the government controlled and supervised the "detailed physical performance" and "day-to-day operations" of the contractor). Instead, the claims seek to hold Defendants liable for their own affirmative (or omitted) conduct in connection with hiring and supervising (or failing to adequately supervise) GEO.

The discretionary function exception bars Plaintiff's claims to the extent they are based on Defendants' hiring and continued retention of GEO. First, it is beyond debate that the government's hiring of a contactor (like GEO here) involves an element of judgment or choice, thereby satisfying the first step in the discretionary function analysis. *See Berkovitz*, 486 U.S. at 536. Second, the government's hiring of (and decision to retain and not terminate) a contractor invariably involves social, economic, and/or political policy considerations. *E.g.*, *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (holding that "decisions relating to the hiring,

training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield.").

It is a closer call whether Plaintiff may maintain a claim based on Defendants' negligent supervision of GEO. In moving to dismiss, Defendants argue the government remains immune from liability under the FTCA for negligent supervision of GEO unless it "affirmatively undertakes a duty to supervise in the first place." (Doc. 54-1 p. 11) (quoting *Chaffin v. United States*, 176 F.3d 1208, 1212 (9th Cir. 1999)). Defendants argue the government delegated all day-to-day operations and decision making to GEO, including decisions related to the housing of detainees, health care, mental health services, and detainee supervision. *Id.* *See Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) ("allegedly negligent and reckless employment, supervision and training" of government agents "fall squarely within the discretionary function exception").

In opposing dismissal of these claims, Plaintiff argues that Defendants' supposed delegation to GEO of all decision-making responsibilities does not absolve Defendants of their residual duty to adequately supervise GEO's performance under California law. (Doc. 61 p. 19). Plaintiff further argues that Defendants retained under the operative contracts significant oversight responsibilities for GEO's compliance with relevant regulations (*id.* pp. 19-20)[2] and that the declarations Defendants filed in support of their motion suggesting they retained no or minimal oversight are undermined by declarations filed in other COVID-related cases involving Mesa Verde wherein they attest to far greater oversight over GEO-operated facilities. *Id.* p. 20.

The relevant contracts here indisputably vest GEO solely with the rights and responsibilities to manage Mesa Verde's operations and compliance with applicable statutes, regulations, and the PBNDS. *See* (SAC ⁋⁋15-16); (Doc. 64-1 p. 63, noting "ICE's Quality

---

[2] In her opposition brief, Plaintiff asserted Defendants' arguments concerning their supervision and oversight of Mesa Verde were "incomplete and unreliable" because they were based in part on only selected portions of the operative contract. (Doc. 61 p. 20). However, Defendants filed in support of their reply brief what they characterize as all remaining attachments to the contracts. (Doc. 64 p.9; Doc. 64-1). Although entitled under this Court's Local Rules to object or otherwise respond to Defendants' newly submitted evidence (*see* L.R. 230(m)(1)), Plaintiff did not respond to Defendants' new evidentiary submission.

Assurance Surveillance Plan (QASP) is based on the premise that the Service Provider, and not the Government, is responsible for the day-to-day operation of the Facility and all the management and quality control actions required to meet the terms of the Agreement."). Thus, GEO alone runs Mesa Verde's operations, deciding whether it has the capability to accept detainees with medical issues, how to classify detainees, where to house them, how to supervise them, and how to ensure that they receive necessary medical treatment and intervention. (Doc. 54-3, Declaration of Natasha Nguyen ["Nguyen Decl."] ⁋5).

Notwithstanding GEO managed day-to-day operations of Mesa Verde, Defendants retained the right to "conduct periodic and unscheduled audits and inspections of contract performance and the facility to ensure contract compliance." *See* (Doc. 60 p. 13) ("DHS, ICE, federal entities, and third-party inspectors will conduct periodic and unscheduled audits and inspections of contract performance and the facility to ensure contract compliance."). *See also* (Doc. 64-1 p. 468, noting the government "will be responsible for monitoring, assessing, recording, and reporting on the technical performance of the Contractor" and retains "overall responsibility for evaluating the Contractor's performance in areas of contract compliance, contract administration, cost and property control.").

Defendants' retention of general oversight rights for GEO's compliance with the contract and applicable rules and policies by way of audits and evaluations does not impute to Defendants control and supervision of GEO's "detailed physical performance" necessary to pierce the independent contractor exception to FTCA liability. *See Autery*, 425 F.3d at 956-57. *See also Bernal v. United States*, No. SACV 16–02262–CJC(KSx), 2017 WL 7833611, at *3 (S.D. Cal. Sept. 21, 2012) ("Neither the IGSA nor any other evidence indicates that Defendant supervised the actual performance of tasks, rather than set the standards or objectives OCSD must fulfill."); *Fekrat v. United States*, No. CV 13-00594 MMM (PJWx), 2013 WL 12130585, at *6-7 (C.D. Cal. Aug. 6, 2013) ("Although Fekrat cites evidence that BOP personnel contractually reserved and exercised the right to inspect the institution, such inspections do not constitute day-to-day control absent proactive conduct that extends beyond a supervisory role.").

For these reasons, the Court concludes it lacks subject matter jurisdiction over Counts Ten

and Eleven as Defendants are immune from liability under the independent contractor and discretionary function exceptions to the FTCA's waiver of sovereign immunity. Because Plaintiff's theory of liability for Defendants' alleged negligent hiring, supervision and retention of GEO is undermined by the express language of the operative contract, the Court will not grant leave to amend as amendment of these claims would be futile. *See Mirmehdi*, 689 F.3d at 985; *Morales-Alfaro v. United States Dep't of Homeland Security*, No. 20-cv-82-LAB (BGS), 2021 WL 1061171, at *4 (S.D. Cal. Mar. 17, 2021) (dismissing with prejudice under discretionary function exception claims against government based on negligent supervision of facility operator), appeal filed (Mar. 3, 2023).

**(c) Count Twelve – Delegation to GEO of Nondelegable Duties**

In Count Twelve of the SAC, Plaintiff alleges Defendants failed to protect Mr. Ahn against COVID-19 hazards and enacted inadequate COVID-19 policies and protections, despite the fact that Defendants owed Mr. Ahn non-delegable duties to mitigate such risks as a "landowner" and "jailer." *See* (SAC ⁋⁋207-12). Plaintiff alleges Defendants specifically breached their duties in this regard by conducting "superficial and inconsistent inspections" of GEO's operations at Mesa Verde, "by maintaining high numbers of detention that required dense living conditions, and by failing to put in place adequate COVID-19 prevention policies and protocols." *Id.* ⁋211. Plaintiff alleges these breaches "caused Mr. Ahn to suffer extreme mental illness and distress that led him to commit suicide." *Id*. ⁋212.

Unlike earlier-pleaded causes of action in the SAC, Count Twelve does not incorporate the SAC's introductory allegations or allegations from any of the other causes of action. *Cf.* (SAC ⁋⁋188, 191, 201 [Counts Nine through Eleven] *with* ⁋207 [Count Twelve]).

In moving to dismiss this claim, Defendants argue that they do not own and, thus, are not "landowners" of Mesa Verde – a status Plaintiff asserts imposes upon them non-delegable duties they allegedly breached. (Doc. 54-1 p. 11). Defendants separately argue they do not retain non-delegable duties of care based on their alleged status as "jailers," as it is GEO – not the government – that acts as jailer. (Doc. 64 pp. 12-13). In all events, Defendants argue, the independent contractor exception to FTCA liability immunizes them from any liability stemming

from alleged breach of non-delegable duties. (Doc. 54-1 pp. 12-14).

In her opposition, Plaintiff concedes that Defendants are not landowners but argues they retained non-delegable duties to protect Mr. Ahn due to their status as "jailers," relying largely on the Court of Appeals' decision in *Edison v. United States* (*supra*) and California state law authorities holding that a party has a heightened, nondelegable duty of care to others where a "peculiar risk" is implicated (such as the circumstances presented here in connection with detention facility operations). (Doc. 61 p. 21-23).

The Court is unconvinced that *Edison* stands broadly for the proposition that California law imputes to the government a nondelegable duty of care as to all detainees held in custody at privately-operated detention facilities under the circumstances presented in this case. First, the Court of Appeals' holding in *Edison* plainly is tethered to California law imposing duties upon landowners. *See* 822 F.3d at 519 (citing Cal. Civ. Code § 1714). The Bureau of Prisons (BOP) was the owner of the correctional facility at issue there and, moreover, retained landowner rights and responsibilities regarding new construction under the operative contract with the private operator. As such, the Court of Appeals held that BOP owed nondelegable duties of care to inmates housed within its facilities.

The *Edison* court acknowledged that its conclusion in this regard was "bolstered" by the fact that California state courts have recognized a "special relationship" as between jailer and inmate. *Id.* at 521. However, it is not clear from the Court's opinion that any nondelegable duty may derive solely from the jailer/inmate relationship where the defendant is not also a "landowner" of the facility.

Moreover, the two cases the *Edison* court cited for the proposition that a special relationship exists between inmate and jailer are factually distinct from this case. In *Lawson v. Superior Court*, the plaintiff asserted claims against individual correctional staff members at the facility in question. *See* 180 Cal.App.4th 1372, 1390 (2010) (noting that the two named defendants were alleged to be a jailer and supervisor "at the facility"). Similarly, in *Giraldo v. Cal. Dep't of Corrs. & Rehab.*, the plaintiff sued individual correctional, medical and other staff at the facility where the plaintiff was housed when attacked by another inmate. *See* 168

Cal.App.4th 231, 240 (2008). The Court's finding of "special relationship" there turned largely on the fact that the inmate was in the "custody" of the "jailers" named as defendants. *See, e.g.*, *id.* at 246 (citing Restatement Second of Torts section titled, "Duty of Person Having Custody of Another to Control Conduct of Third Persons"). Importantly, the *Giraldo* court remanded the case to the trial court for further proceedings with the following caveat: "Who comes within the category of jailer is not before us, nor is the question of what law pertains to non-jailer defendants – questions that could not be decided on this record in any event." *Id.* at 253.

Thus, while these cases reflect that California state law assigns to both landowners and correctional staff certain duties of care in tort, Plaintiff has not identified any state law or authority that imposes nondelegable duties of care upon parties (such as Defendants here) who are neither landowners nor "jailers" in the traditional sense – *e.g.*, assigned to a facility holding custody of detained inmates.

Although Plaintiff's reliance on *Morales-Alfaro* (Doc. 61 pp. 22) is apt insofar as that case presents similar circumstances as exist here, Plaintiff's arguments concerning that case are not persuasive. In *Morales-Alfaro*, an immigration detainee filed a complaint asserting negligence claims against the contracted detention facility operator and the government. The plaintiff asserted she suffered a miscarriage because the defendants denied her access to medical care and maintained substandard conditions of confinement. The plaintiff alleged the government knew about the contractor's incompetence and poor management of the facility and failed to do anything to correct it. 2021 WL 1061171, at *3. On the government's motion to dismiss, the *Morales-Alfaro* court acknowledged that the independent contractor exception does not operate to immunize the government from FTCA claims based on its alleged breach of any nondelegable duty of care under California state law. *Id.* (citing *Edison*, 822 F.3d at 21-22). Nevertheless, the court applied the discretionary function exception to dismiss the negligence claims against the government. *Id.* at *4-5. The *Morales-Alfaro* court did not expressly decide whether, in fact, the government retained any nondelegable duties in that case.

That Defendants are not bound by a nondelegable special duty of care to Mr. Ahn given that they are neither landowners nor jailers in the traditional sense is consistent with other

California law directly governing contractor liability. Specifically:

> "Under California law, where the factual basis for the claim is that the hirer failed to exercise a general supervisory power to require the contractor to correct an unsafe procedure or condition of the contractor's own making, and there is no allegation that the hirer's conduct contributed in any way to the contractor's negligent performance by, e.g., inducing injurious action or inaction through actual direction, the government has no duty to Plaintiffs for merely failing to exercise a general supervisory power to prevent the creation or continuation of a hazardous practice, or by failing to exercise retained control."

*Alvarado v. United States*, No. CV–F–09–243 LJO SMS, 2010 WL 300139, at *8 (E.D. Cal. July 29, 2010) (relying on *Hooker v. Dept. of Trans*., 27 Cal.4th 198, 202 (2002)).

Notwithstanding the Court finds Plaintiff's Twelfth Cause of action fails to state a claim pursuant to Rule 12(b)(6), it is not clear that the claim is beyond remediation. Accordingly, Plaintiff will be granted leave to amend to assert a claim based on Defendants' negligence in breaching some other nondelegable or nondelegated duty.

**(d) Count Thirteen – False Imprisonment**

In Count Thirteen of the SAC, Plaintiff asserts a false imprisonment claim that alleges Defendants' detention of Mr. Ahn for approximately three months prior to his death by suicide was without lawful privilege and undertaken in a manner that placed him at increased risk of harm (specifically, from COVID and resulting distress and suicide). (SAC ⁋⁋218-18).

In moving to dismiss, Defendants argue that contrary to Plaintiff's pleading, they had lawful privilege to order Mr. Ahn's confinement. (Doc. 54-1 p. 23) (citing *Demore*, 538 U.S. at 517-18). In opposing dismissal, Plaintiff maintains her false imprisonment claim is adequately pleaded because it asserts the imprisonment of Mr. Ahn was unconstitutional and that, in all events, Defendants retained discretion to release him. (Doc. 61 p. 35).

Under California law, a false imprisonment claim requires the "(1) nonconsensual, intentional confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time, however brief." *Bocanegra v. Jakubowski*, 241 Cal.App.4th 848, 855 (2015).

Plaintiff cannot establish that Defendants' confinement of Mr. Ahn was "without lawful privilege." Even assuming Defendants retained discretion "not to remove" Mr. Ahn and, thus, to release him, it does not follow that Defendants acted without lawful privilege by not exercising its

discretion. *Sutherland v. Chertoff*, No. CV 08-03458 JVS(PJWx), 2009 WL 10698908, at *5 (C.D. Cal. Feb. 20, 2009) (dismissing false imprisonment claim with prejudice because § 1226(a) and related regulations authorize ICE to arrest and detain deportable aliens)

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** Defendants' motion to dismiss (Doc. 54) as follows:

1. Defendant ICE is dismissed with prejudice.

2. Counts Nine, Ten, Eleven, Thirteen and Fourteen are dismissed with prejudice.

3. Count Twelve is dismissed without prejudice and with leave to amend.

4. Plaintiff is granted leave to amend Count Twelve to the extent of remedying the deficiencies noted herein. Any Third Amended Complaint shall be filed within 21 days of entry of this order, and Defendants' response shall be filed within 14 days thereafter. *See* Fed. R. Civ. P. 15(a)(3). The Court will set a scheduling conference once the pleadings have settled.

IT IS SO ORDERED.

Dated: **March 25, 2024**

UNITED STATES MAGISTRATE JUDGE