UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA AHN,<br><br>   Plaintiff,<br><br>   v.<br><br>GEO GROUP, INC., et al.,<br><br>   Defendants. | Case No. 1:22-cv-00586-CDB<br><br>ORDER GRANTING IN PART MOTION OF DEFENDANT GEO GROUP, INC., TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)<br><br>(Doc. 48) |

Pending before the Court is the motion of Defendant GEO Group, Inc. ("GEO") to dismiss counts seven and eight of the operative second amended complaint brought by Plaintiff Sylvia Ahn ("Plaintiff"). (Doc. 48). Plaintiff filed an opposition on May 22, 2023 and GEO filed a reply on June 6, 2023. (Docs. 52, 53). For the reasons set forth below, GEO's motion to dismiss is granted in part and denied in part.[1]

**I.   Background**

Plaintiff is the daughter of Choung Woong Ahn (the "Decedent" or "Mr. Ahn") and brings this action on behalf of his estate. (Doc. 46, Second Amended Complaint ("SAC") ¶2). She initiated this action with the filing of a complaint on May 17, 2022, asserting claims against the United States of America, the United States Immigration & Customs Enforcement ("ICE"), and GEO. (Doc. 1). The claims stem from the Decedent's detention at Mesa Verde Detention Facility ("Mesa Verde") in or around February 2020.

Mr. Ahn was admitted into the United States as a lawful permanent resident in 1988.

---

[1] Following the parties' grant of consent to the jurisdiction of a U.S. magistrate judge for all purposes, this case was assigned to the undersigned on March 30, 2023. (Doc. 39).

(SAC ¶13). He lived in the San Francisco Bay area until 2013, when he was convicted of attempted murder with a firearm enhancement. (Doc. 54-1 p. 1).[2]

While he served his prison sentence, Mr. Ahn developed severe depression and other mental health conditions. Mr. Ahn previously attempted suicide at least three times while incarcerated. (SAC ¶14). Mr. Ahn also had physical disabilities including hypertension, type two diabetes, and severe heart-related issues. (Doc. 61 pp. 2-3).

Mr. Ahn was placed in detention at Mesa Verde, a federal immigration detention facility, on February 21, 2020, after being released from CSP Solano on parole. (SAC ¶15). Mr. Ahn was 74 years old at the time. *Id*. ¶12. According to the SAC, Mesa Verde is operated by GEO, a private company contracted by ICE in 2015. *Id*. ¶15-16.

According to Plaintiff, Mr. Ahn's intake screening failed to identify his history of depression, suicide attempts, and other mental health conditions. *Id*. ¶26. In March 2020, he was admitted to the emergency department of an outside hospital for an emergency surgery to remove a mass on his lung. *Id*. ¶28. Mr. Ahn was highly distressed by this mass since he believed that he was diagnosed with lung cancer. ICE allegedly delayed authorizing his follow-up care or biopsy and Mr. Ahn died before receiving any follow ups. *Id*. ¶¶29-31

Plaintiff also avers when COVID-19 reached California in or around March 20, 2020, Mr. Ahn was concerned about the pandemic's effects and GEO's inadequate responses to the pandemic. As a result of conditions in Mesa Verde, Mr. Ahn participated in a peaceful hunger strike. *Id*. ¶35. In April 2020, Mr. Ahn reported to a psychologist employed by GEO that he had feelings of sadness, low energy, and trouble sleeping. The psychologist concluded Mr. Ahn had an unspecified depressive disorder. *Id*. ¶36. Mr. Ahn reported his previous suicide attempts to the Mesa Verde medical staff and also expressed feelings of anxiety and not "want[ing] to live in this life." *Id*. ¶¶ 37-38. Mr. Ahn's depression worsened due to the COVID-19 conditions present at Mesa Verde as well as ICE's repeated denial of his requests for release. *Id*. ¶ 40-41.

On May 12, 2020, Mr. Ahn was admitted to Mercy Hospital in Bakersfield due to chest

---

[2] Facts referenced herein not alleged in the SAC are included for background only and are not relied upon by the Court in ruling on GEO's motion to dismiss.

1    pain. *Id*. ¶42.  He returned to Mesa Verde on May 14, 2020, after receiving a negative COVID-19

2    test; however, he was placed in a solitary isolation unit for "no legitimate purpose." *Id*. ¶ 46-47.

3    This isolation cell presented serious risks for someone with a prior suicide attempt history like

4    Mr. Ahn, including a "tie off point," a bed sheet, and no human contact.

5        Mr. Ahn was placed in a solitary cell as an alleged COVID-19 safety measure even

6    though public health officials concluded that solitary confinement was not an effective method of

7    quarantine. These officials also cautioned that solitary cells posed grave dangers to detainees with

8    mental and physical health problems. *Id*. ¶¶51-52. During his time in solitary, Mr. Ahn informed

9    his psychologist that he had feelings of depression, but he was nevertheless kept in the isolated

10   cell without any attempt to find an alternative celling arrangement. *Id*. ¶¶54-55.  On May 16,

11   2020, a clinical psychologist subcontracted by GEO reported that Mr. Ahn appeared to be at

12   "high suicidal risk if deported." *Id*. ¶ 57. In addition, on the morning of May 17, 2020, Mr. Ahn's

13   lawyer emailed ICE requesting that Mr. Ahn be returned to a dormitory, as isolation was proving

14   detrimental to his mental health.  On that same day, a contracted medical provider also indicated

15   that Mr. Ahn's mental illness was "severe" and that he had a high risk of suicide if deported. *Id*.

16   ¶¶58-59.

17       At the time, Mr. Ahn also felt extreme pressure as he faced the imminent threat of

18   deportation. His next scheduled hearing in his removal proceedings was scheduled for May 19,

19   2020. *Id*. ¶60.  Plaintiff avers that despite the deteriorating and well-documented state of Mr.

20   Ahn's mental health, and despite internal policies directing otherwise, Mr. Ahn remained in an

21   unobserved, isolated cell with access to bed sheets and a "tie off point," which he used to commit

22   suicide by hanging himself on May 17, 2020. *Id*. ¶¶ 61-62.

23       Plaintiff alleges that ICE and GEO are required to follow several protocols related to

24   detainees at risk of suicide.  *Id*. ¶68.  For example, ICE and GEO are required to identify

25   detainees with a risk of suicide or self-harm through an initial screening within 12 hours of the

26   detainee's admission.  *Id*. ¶69.  Likewise, a qualified mental health professional must evaluate the

27   detainee, determine the level of risk, supervision needed, treatment plan, and the need to transfer

28   to an inpatient mental health facility. *Id*. ¶73. The protocols state that a mental health professional

1  may place a detainee in a special isolation room designed for evaluation or treatment, and if no
2  special room is available, the detainee can also be placed in a special management unit.  *Id*. ¶¶ 74-
3  75.  Detainees in the special management unit should have access to all programs and services
4  available to the general population, to the maximum extent possible.  Detainees on suicide
5  precautions who have not been placed in a special isolation room should also receive documented
6  close observations every 15 minutes.  *Id*. ¶ 75.

7  In the SAC, Plaintiff raises claims against GEO for: (1) wrongful death; (2) disability
8  discrimination in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; (3)
9  violation of the Law of Nations Under the Alien Tort Statute for Torture & Cruel, Inhumane and
10 Degrading Treatment; (4) negligence; (5) intentional infliction of emotional distress ("IIED"); (6)
11 negligent training, supervision, and retention; (7) violations of Cal. Civil Code § 51 ("the Unruh
12 Act")[3]; and (8) violations of Cal. Civil Code § 52.1 ("the Bane Act").  *See* (Doc. 46 pp. 19-48).

13 On May 9, 2023, GEO filed the pending motion to dismiss Plaintiff's seventh and eighth
14 causes of action for failure to state a claim upon which relief may be granted under both the
15 Unruh Act and the Bane Act, pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 48).

16 **II.     Standard of Law**

17 A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to
18 dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted" (Fed.
19 R. Civ. P. 12(b)(6)) and tests the complaint's sufficiency.  *N. Star Int'l v. Ariz. Corp. Comm'n.*,
20 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981).  A
21 complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the
22 absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police
23 Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc*., 749
24 F.2d 530, 533-34 (9th Cir. 1984)).

---

[3] The title of Plaintiff's seventh cause of action also cites Cal. Civil Code § 43 (protection from restraint or bodily harm); however, section 43 otherwise is cited nowhere in the complaint or Plaintiff's opposition to GEO's motion to dismiss.  The Court therefore construes this citation as a scrivener's error and concludes Plaintiff's seventh cause of action asserts a single claim for relief pursuant to the Unruh Act.

1  To survive a Rule 12(b)(6) motion, the complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief).  A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010).  The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).   When dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (citing *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

**III.     Discussion**

**A.     The Unruh Act Claim**

    **1.     The Governing Legal Standard**

The Unruh Act provides that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their … disability [or] medical condition … are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).  The Unruh Act "firmly established the right of all persons to nondiscriminatory treatment by establishments that engage in business transactions with the public." *Anderson v. Cnty. of Siskiyou*, No. C 10-01428 SBA, 2010 WL 3619821, at *5 (N.D. Cal. Sept. 13, 2010) (quoting *Warfield v. Peninsula Golf & Country Club*, 10 Cal.4th 594, 618 (1995)).  A plaintiff alleging a violation of the Unruh Act must plead the following:

/ / /

> (1) [plaintiff] was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) [plaintiff's] disability was a motivating factor for this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm.

*Wilkins-Jones v. Cnty. of Alameda*, 859 F. Supp.2d 1039, 1048 (N.D. Cal. 2012) (quoting *Johnson v. Beahm*, No. 2:11-cv-0294-MCE-JFM, 2011 WL 5508893, at *4 (E.D. Cal. Nov. 8, 2011).

**2.    Analysis**

GEO argues that Plaintiff did not properly plead a claim under the Unruh Act because GEO is not a "business establishment." (Doc. 48 p. 4). In addition, GEO argues that Mr. Ahn was not denied accommodations because of any alleged disability. *Id*. (citing *Delta Sav. Bank v. U.S.*, 265 F.3d 1017, 1025 (9th Cir. 2001)). Plaintiff counters that GEO is a business establishment as it is a private, for-profit company, contracted by the government "to provide services to the immigrant detainees" in the Mesa Verde facility. (Doc. 52 pp. 3-4). Plaintiff further argues that the complaint adequately pleads the necessary casual component of an Unruh Act claim. *Id.* pp. 7-8.

Through the Unruh Act, the California legislature intended to provide broad protections against arbitrary discrimination. *O'Connor v. Village Green Owners Assn.*, 33 Cal.3d 790, 795 (1983). The California Supreme Court has declared that the term "business" in the Unruh Act "embraces everything about which one can be employed, and is often synonymous with 'calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain.'" *Id*. (citations omitted).   Whether a defendant qualifies as a "business establishment" under the Unruh Act is a question of law. *McGee v. Poverello House*, No. 1:18-cv-00768-LJO-SAB, 2019 WL 5596875, at *4 (E.D. Cal. Oct. 30, 2019) (citing *Rotary Club of Duarte v. Bd. of Dirs.*, 178 Cal.App.3d 1035, 1050 (1986)).

An organization has sufficient business attributes to qualify as a "business establishment" under the Unruh Act when it appears to operate as the functional equivalent of a commercial enterprise. *Carter v. City of Los Angeles*, 224 Cal.App.4th 808, 825 (2014).   To determine

whether an entity may be considered a "business establishment" within the meaning of the Unruh Act, courts consider numerous factors including:

> (1) What, if any, business benefits one may derive from membership; (2) the number and nature of paid staff; (3) whether the organization has physical facilities, and if so, whether those facilities are incidental to the purposes and programs of the organization; (4) what are the purposes and activities of the organization; (5) the extent to which the organization is open to the public; (6) whether there are any fees or dues for participation or membership; and (7) the nature of the organization's structure.

*McGee*, 2019 WL 5596875, at *5 (citing *Harris v. Mothers Against Drunk Driving*, 40 Cal.App.4th 16, 20 (1995)). The inquiry focuses on whether "the plaintiff was in a relationship with the offending organization similar to that of the customer in the customer-proprietor relationship." *Strother v. Southern Cal. Permanente Medical Group*, 79 F.3d 859, 874 (9th Cir. 1996).

Under some circumstances, private entities that engage in business activities with the public could nevertheless *not* qualify as a "business establishment" under the Unruh Act. *See, e.g., Doe v. Cal. Lutheran School Assn.*, 170 Cal.App.4th 828, 845-46 (2009) (private non-profit religious school not considered business establishment since it was a nonprofit entity that lacked any "significant resemblance to an ordinary for-profit business"); *Curran v. Mount Diablo Council of the Boy Scouts*, 17 Cal.4th 670, 700 (1998) (entity is business establishment when engaging in transactions with nonmembers, but not when engaging in core expressive functions of the organization).

In the context of correctional facilities, state prisons do not qualify as business establishments. *See Beverly v. Cnty. of Orange*, No. 22-55080, 2022 WL 14003695, at *1 (9th Cir. Oct. 24, 2022) (finding jails not a "business establishment" under Unruh Act) (citing *inter alia Carter*, 224 Cal.App.4th at 825); *Walker v. Sec'y of Corr.*, No. 2:21-cv-0364 TLN AC P, 2023 WL 184934, at *4 (E.D. Cal. Jan. 13, 2023) (same); *see also Taormina v. Cal. Dept. of Corrections*, 946 F. Supp. 829, 834 (S.D. Cal. 1996) ("a prison does not qualify as a 'business' because prisoners are not engaged in a calling, occupation, or trade for purposes of making a livelihood or gain. Rather, they are incarcerated by the state because of crimes which they have

committed.").

In *Estate of Mejia v. Archambeault*, Plaintiff argued that an immigration detention center is sufficiently dissimilar from a prison or jail that a court can conclude the facility's operating contractor constitutes a "business establishment" under the Unruh Act. No. 20-cv-2454-MMA (KSC), 2021 WL 4428990, at *8 (S.D. Cal. Sept. 27, 2021). While recognizing that the defendant private contractor in that case operated neither a state jail nor a prison, the district court focused on the relationship between the plaintiff and defendants in finding that an immigration detention center was similar enough to jails and prisons to not be considered a "business establishment" under the Unruh Act. *Id.* at *8 (citing *Crisp v. Wasco State Prison*, No. 1:13-cv-01899-SKO (PC), 2015 WL 3486950 at *6 (E.D. Cal. June 2, 2015) & *Taormina*, 946 F. Supp. at 834). The district court concluded that, "[a]bsent legislation or clear interpretation from the Ninth Circuit, the Court cannot embrace Plaintiffs' novel interpretation of the Unruh Act." *Id.*

The undersigned finds the reasoning of *Estate of Mejia* persuasive and appliable here. Plaintiff's reliance on a contrary decision in *Wilkins-Jones* (Doc. 52 at 4-5) is inapt. In that case, the defendant corporation contracted with a county "to provide assessments of incoming prisoners and medical care to inmates" at a detention facility. 859 F. Supp.2d at 1049. The Court denied defendant's motion to dismiss an Unruh Act claim, finding that the corporation was a "business association" as it provided a discrete service to facilitate the operator's running of the facility and, thus, was "qualitatively different from a correctional facility itself." *Id.* Thus, the defendant acted as a business within the facility, which stands in contrast to the position of Defendant GEO here (and the defendant in *Estate of Mejia*) as the full-time operator of the detention center. *See* SAC ¶5 (alleging that GEO "owned and operated" Mesa Verde immigration detention facility).

The courts' rulings in *Estate of Mejia* and *Wilkins-Jones* are reconcilable and consistent with the governing principle that whether a defendant is a "business establishment" for purposes of an Unruh Act claim depends on the extent to which the parties' relationship is that of customer/proprietor. *See Strother*, 79 F.3d at 874. Indeed, California courts "have allowed parties that are not clients, patrons or customers in the traditional sense to bring Unruh Act claims," so long as the claimant is a "recipient [] of the business establishment's …goods,

services or facilities." *Wilkins-Jones*, 859 F. Supp.2d at 1049 (quotations and citations omitted). Thus, in *Estate of Mejia*, the relationship between plaintiff and the defendant operator of a detention facility was more akin to that of an inmate/jailer, whereas the relationship of the plaintiff and the defendant in *Wilkins-Jones* was more akin to patient/physician.

Similar to the circumstances in *Estate of Mejia*, here, Mr. Ahn was held at Mesa Verde against his will and not as a voluntary "customer." The discriminatory action GEO allegedly undertook was its placement of Mr. Ahn in an isolative cell despite the fact he had serious depression. While Mr. Ahn may have received benefits, privileges, or services that are incidental (or constitutionally required) to his detainment at Mesa Verde, the core relationship he had with GEO was that of a detainee.

Plaintiff alternatively argues that because the pleadings of her complaint establish that GEO violated Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 1202 *et seq*, those pleadings are sufficient to state a claim under the Unruh Act.[4] Cal. Civ. Code § 51(f). However, the California Supreme Court has rejected this contention, instead finding that subdivision (f) of the Unruh Act "expressly makes any violation of the ADA *by a business establishment* a violation of the Unruh Civil Rights Act." *Brennon B. v. Superior Ct.*, 13 Cal.5th 662, 692 (2022) (emphasis in original). Accord *Anderson*, 2010 WL 3619821, at *6 ("in enacting § 51(f), the California Legislature did not purport incorporate the ADA in its entirety to the Unruh Act. Rather, the legislature only intended to incorporate those provisions of the ADA germane to the *original scope of the Unruh Act*.") (internal citation omitted) (emphasis in original). Thus, the Court need not analyze whether Plaintiff otherwise adequately has alleged an ADA claim because, under *Brennon B.*, it would not salvage her Unruh Act claim.

Because GEO is not a "business establishment" liable under the Unruh Act for disability discrimination of detainees in connection with its operation of a detention facility, Plaintiff's claim under the Unruh Act must be dismissed. Leave to amend is not warranted as any amendment would be futile. *See Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)

---

[4] Plaintiff does not assert a Title III ADA claim but instead refers to the ADA in connection with her Unruh Act pleading. (SAC ¶¶167-68).

(leave to amend is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.").

**B.      The Bane Act Claim**

   **1.      The Governing Legal Standard**

The Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1, "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation. or coercion.'" *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (quoting *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230, 1238 (2007)). To prevail on a Bane Act Claim, a plaintiff must allege and show that the defendant intentionally interfered with another's civil rights via threats, intimidation, or coercion. *Id.* at 1044. "Nothing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." *Cornell v. City & Cnty. of San Francisco*, 17 Cal.App.5th 766, 800 (2017). In addition, "a reckless disregard for a person's" constitutional rights is evidence of a specific intent to deprive that person's rights. *Reese*, 888 F.3d at 1045 (citation and quotation omitted).

Other judges of this Court have found that a Bane Act claim properly may be premised on adequate allegations of a deliberate indifference claim pursuant to 42 U.S.C. § 1983. *See, e.g., Cravotta v. Cnty. of Sacramento*, -- F. Supp.3d --, 2024 WL 645705, at *14 (E.D. Cal. Feb. 15, 2024) (relying on *Cornell*, 17 Cal.App.5th at 802 n.31); *Scalia v. County of Kern*, 308 F. Supp.3d 1064, 1084 (E.D. Cal. 2018) (same). Conversely, where a plaintiff fails to sufficiently plead a deliberate indifference claim, a related Bane Act claim also fails. *See Cravotta*, 2024 WL 645705, at *14; *Est. of Miller v. Cnty. of Sutter*, No. 2:20-cv-00577-KJM-DMC, 2020 WL 6392565, at *18 (E.D. Cal. Oct. 30, 2020).

   **2.      Analysis**

GEO argues that Plaintiff's Bane Act claim should be dismissed as she has failed to adequately plead (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion. (Doc. 48 at 9) (citing *Warren v. Mgt. and Training Corp*, 2016 WL

10

8730711, at *4 (E.D. Cal. Aug. 5, 2016)).

Although Plaintiff does not assert a cause of action pursuant to 42 U.S.C. § 1983 for deliberate indifference, she incorporates by reference in her Bane Act allegations the deliberate indifference standard as outlined in *Gordon v. Cnty. of Orange*, 888 F.3d 118, 1125 (9th Cir. 2018)[5]:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. at 1125. Plaintiff alleges that Mr. Ahn's Fifth Amendment rights were violated when (1) GEO made an intentional decision to place Mr. Ahn in "solitary confinement" on March 14, 2020, after he returned from the hospital; (2) GEO engaged in a coercive act with deliberate indifference to Mr. Ahn's medical needs, placing him in a substantial risk of harm ; (3) GEO did not take reasonable available measures to abate that risk even though it could take Mr. Ahn out of isolation, place him in a mental health institution, or place him under one-on-one supervision, despite the fact that GEO knew or should have known that Mr. Ahn had a high risk of suicide if placed in an isolative environment; and (4) as a result of GEO's alleged failure to take reasonable measures related to Mr. Ahn's confinement, he died by suicide. (SAC ¶¶ 181-85).

Because these allegations are sufficient to state a deliberate indifference claim pursuant to 42 U.S.C. § 1983, they also are sufficient to maintain a Bane Act claim. *See Lapachet v. Cal. Forensic Medical Group, Inc.*, 313 F. Supp.3d 1183, 1196 (E.D. Cal. 2018) (a Bane Act claim premised on alleged deliberate indifference "must only allege prison officials 'knowingly deprived [them] of a constitutional right or protection through acts that are inherently coercive and threatening,' such as housing a prisoner in an inappropriate cell, failing to provide treatment

---

[5] As a federal civil detainee, Mr. Ahn's rights are protected by the Fifth Amendment. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Fifth Amendment due process claims, and Fourteenth Amendment due process claims, are analyzed in the same way. *See Paul v. Davis*, 424 U.S. 693, 702 n.3 (1976)

plans or adequate mental care, and failing to provide sufficient observations") (quoting *Atayde v. Napa State Hospital*, No. 1:16-cv-00398-DAD-SAB, 2016 WL 4943959, at *7–8 (E.D. Cal. Sept. 16, 2016)); *see also Cravotta,* 2024 WL 645705, at *14-15; *Scalia*, 308 F. Supp.3d at 1084; *Est. of Miller*, 2020 WL 6392565, at *18.

Accordingly, GEO's motion to dismiss Plaintiff's Bane Act claim will be denied.

### IV.     Conclusion

For the foregoing reasons, the Court hereby **GRANTS IN PART** Defendant's motion to dismiss (Doc. 54) as follows:

1. Count Seven (violation of the Unruh Act) is dismissed with prejudice.
2. Defendant's motion to dismiss Count Eight (violation of the Bane Act) is denied.
3. In the event Plaintiff elects to file a Third Amended Complaint as permitted by the Court's separate order (*see* Doc. 66), Defendant shall file its answer within 7 days thereafter. Otherwise, Defendant shall file its answer to the Second Amended Complaint by no later than April 22, 2024. *See* Fed. R. Civ. P. 12(a)(4)(A). The Court will set a scheduling conference once the pleadings have settled.

IT IS SO ORDERED.

Dated:   **March 25, 2024**                    _____
                                                                 UNITED STATES MAGISTRATE JUDGE