1  PHILLIP A. TALBERT
   United States Attorney
2  BRODIE M. BUTLAND
   Assistant United States Attorney
3  2500 Tulare Street, Suite 4401
   Fresno, CA 93721
4  Telephone:  (559) 497-4000
   Facsimile:  (559) 497-4099
5
   Attorneys for Plaintiff
6  United States of America

7                IN THE UNITED STATES DISTRICT COURT

8                EASTERN DISTRICT OF CALIFORNIA

9

10  SYLVIA AHN,                          CASE NO.  1:22-CV-00586-CDB

11              Plaintiff,               MEMORANDUM IN SUPPORT OF THE UNITED
                                         STATES OF AMERICA'S MOTION TO DISMISS
12          v.                           PLAINTIFF'S THIRD AMENDED COMPLAINT

13  GEO GROUP, INC., et al.,

14              Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND .................................................................................................1

        A.      Mr. Ahn's detention at Mesa Verde.........................................................1

        B.      Mesa Verde .............................................................................................2

        C.      Procedural history and the Third Amended Complaint. ...........................3

III.    LAW AND ANALYSIS .......................................................................................5

        A.      Standard of review ...................................................................................5

                1.      Federal Rule of Civil Procedure 12(b)(1) ...................................5

                2.      Federal Rule of Civil Procedure 12(b)(6) ...................................5

        B.      Count Twelve should be dismissed to the extent that it goes beyond an alleged failure to protect Mr. Ahn from COVID-19 hazards. ..........................................................6

        C.      Plaintiff has not shown breach of a nondelegable duty to override the independent contractor exception to the FTCA. ....................................7

                1.      Jailer ...........................................................................................7

                2.      Legal custodian ...........................................................................8

                3.      Arrestor .......................................................................................8

                4.      Medical provider .......................................................................11

        D.      The United States is immune under the discretionary function exception. ......................14

                1.      The discretionary function exception bars plaintiff's claims based on ICE's oversight of GEO and response to contractual noncompliance..................15

                2.      The discretionary function exception bars plaintiff's claims based on ICE's response to COVID. ................................................17

        E.      Plaintiff cannot recover punitive damages from the United States...................19

IV.     CONCLUSION..................................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Ahn v. Barr,*
   No. 2020 WL 2113678 (N.D. Cal. May 4, 2020) ................................................................ 10

*Alvarado v. United States,*
   No. CV-F-09-243, 2010 WL 300139 (E.D. Cal. July 29, 2010) ................................. 12, 13

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................................... 5, 6

*Autery v. United States,*
   424 F.3d 944 (9th Cir. 2005) ........................................................................................... 13

*A-Z Int'l. v. Phillips,*
   323 F.3d 1141 (9th Cir. 2003) ........................................................................................... 5

*Baires v. United States,*
   No. 2011 WL 1743224 (N.D. Cal. May 6, 2011) .............................................................. 12

*Balisteri v. Paifica Police Dept.,*
   901 F.2d 696 (9th Cir. 1990) ............................................................................................. 5

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .......................................................................................................... 5

*Bell v. Wolfish,*
   441 U.S. 520 (1979) ......................................................................................................... 11

*Bibeau v. Pac. Nw. Research Found., Inc.,*
   339 F.3d 942 (9th Cir. 2003) ........................................................................................... 16

*C.R.S. v. United States,*
   11 F.3d 791 (8th Cir. 1993) ............................................................................................. 18

*Clement v. Gomez,*
   298 F.3d 898 (9th Cir. 2002) ........................................................................................... 11

*Clemons v. United States,*
   No. 2:21-cv-9194, 2022 WL 4596651 (C.D. Cal. July 7, 2022) ....................................... 16

*Clouthier v. Cnty. of Contra Costa,*
   591 F.3d 1232 (9th Cir. 2010) ......................................................................................... 11

*Colwell v. HHS,*
   558 F.3d 1112 (9th Cir. 2009) ........................................................................................... 5

*Edison v. United States*,
    822 F.3d 510 (9th Cir. 2016) ................................................................................................. 12

*Estate of Cruz-Sanchez v. United States*,
    No. 17-cv-569, 2018 WL 3239340 (S.D. Cal. July 2, 2018) ............................................... 12

*Estate of Wilson v. Cnty. of San Diego*,
    No. 20-cv-457, 2022 WL 789127 (S.D. Cal. Mar. 14, 2022) ......................................... 11, 12

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ................................................................................................................ 5

*Foster v. United States*,
    522 F.3d 1071 (9th Cir. 2008) ................................................................................................. 5

*Fraihat v. U.S. ICE*,
    16 F.4th 613 (9th Cir. 2021) .................................................................................................. 17

*Giraldo v. Cal. Dep't of Corr. & Rehab.*,
    168 Cal. App. 4th 231 (2008) .................................................................................................. 7

*Gonzales v. United States*,
    814 F.3d 1022 (9th Cir. 2016) ............................................................................................... 16

*Guile v. United States*,
    422 F.3d 221 (5th Cir. 2005) ................................................................................................. 16

*Hamilton v. Endell*,
    981 F.2d 1062 (9th Cir. 1995) ............................................................................................... 11

*In re Consol. U.S. Atmospheric Testing Litig.*,
    820 F.2d 982 (9th Cir. 1987) ................................................................................................. 18

*Johnson v. United States*,
    No. CV-12-9051, 2014 WL 12572914 (C.D. Cal. Mar. 14, 2014) ....................................... 14

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994) ................................................................................................................ 5

*Lanza v. Ashcroft*,
    389 F.3d 917 (9th Cir. 2004) ................................................................................................... 5

*Lawman v. City and County of San Francisco*,
    No. 2016 WL 924630 (N.D. Cal. Mar. 11, 2016) ................................................................... 9

*Lawson v. Superior Court*,
    180 Cal. App. 4th 1372 (2010) ............................................................................................... 8

*Lopez v. U.S. ICE*,
    455 F. App'x 427 (5th Cir. 2011) ................................................................................. 17

*Lum v. Cnty. of San Joaquin*,
    756 F. Supp. 2d 1243 (E.D. Cal. 2010) ......................................................................... 8

*Martinez v. United States*,
    No. 1:16-cv-1556, 2017 WL 1881962 (E.D. Cal. May 9, 2017) .................................. 18

*Maryland Cas. Co. v. United States*,
    No. C-05-2558, 2006 WL 563046 (N.D. Cal. Mar. 6, 2006) ...................................... 16

*Minneci v. Pllard*,
    565 U.S. 118 (2012) ...................................................................................................... 7

*Morales-Alfaro v. DHS*,
    No. 20-cv-82, 2021 WL 1061171 n.3 (S.D. Cal. Mar. 17, 2021) ........................... 7, 19

*Myles v. United States*,
    47 F.4th 1005 (9th Cir. 2022) ............................................................................... 14, 15

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2002) ........................................................................................ 5

*Nurse v. United States*,
    226 F.3d 996 (9th Cir. 2000) ...................................................................................... 18

*Petrolino v. Cty. and Cnty. of S.F.*,
    No. 16-cv-2946, 2016 WL 6160181 (N.D. Cal. Oct. 24, 2016) .................................... 9

*Rabieh v. United States*,
    No. 5:19-cv-944, 2019 WL 5788673 (N.D. Cal. Nov. 6, 2019) .................................. 18

*Redman v. Cnty. of San Diego*,
    896 F.2d 362 (9th Cir. 1990) ........................................................................................ 7

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ...................................................................................... 5

*Sai v. Smith*,
    No. 16-cv-1024, 2018 WL 534305 (N.D. Cal. Jan. 24, 2018) .................................... 16

*United States v. Edwards*,
    415 U.S. 800 (1974) ...................................................................................................... 7

*United States v. Gaubert*,
    499 U.S. 315 (1991) .................................................................................................... 15

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
  467 U.S. 797 (1984) ................................................................................ 14, 15, 16

*Vallier v. Jet Propulsion*,
  *Lab.*, 120 F. Supp. 2d 887 (C.D. Cal. 2000) ...................................................... 16, 17

*Walding v. United States*,
  955 F. Supp. 2d 759 (W.D. Tex. 2013) ........................................................... 17

*Wedgeworth v. City of Newport Beach*,
  No. 2015 WL 569343 (Cal. Ct. App. Feb. 11, 2015) ......................................... 9

*Weissich v. United States*,
  4 F.3d 810 (9th Cir. 1993) ............................................................................. 17

*West v. Atkins*,
  487 U.S. 42 (1988) ........................................................................................ 11

*Winger v. Cty. of Garden Grove*,
  806 F. App'x 544 (9th Cir. 2020) ................................................................... 8

*Winger v. Cty. of Garden Grove*,
  No. 13-267, 2018 WL 6010310 (C.D. Cal. June 4, 2018) .................................. 8

**Statutes**

8 U.S.C. § 1226(c)(1) .......................................................................................... 11
28 U.S.C. § 1346(b) ............................................................................................. 7
28 U.S.C. § 2680(a) ............................................................................................. 14

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................. 5
Federal Rule of Civil Procedure 12(b)(6) ............................................................. 5

**Regulations**

48 C.F.R. § 46.102(a) .......................................................................................... 15
48 C.F.R. § 46.103(e) .......................................................................................... 16
48 C.F.R. § 46.104(b) .......................................................................................... 15
48 C.F.R. § 46.201(a) .......................................................................................... 15
48 C.F.R. § 49.402-3(f) ........................................................................................ 17

# I.   **INTRODUCTION**

Choung Woong Ahn (Mr. Ahn) died by suicide while in the custody and control of GEO Group, Inc., an independent contractor that exclusively owns and operates the Mesa Verde detention center under a government contract.  Plaintiff sued GEO for alleged acts and omissions that led to Mr. Ahn's suicide.  Her Second Amended Complaint also asserted negligence claims against the United for: (1) deciding to deport and detain Mr. Ahn during removal proceedings; (2) deciding to contract with GEO; (3) inadequately inspecting and auditing GEO; and (4) failing to protect Mr. Ahn from COVID-19 hazards, allegedly violating the United States' nondelegable duty as "landowner" and "jailer."

In granting the United States' Motion to Dismiss, the Court dismissed all four claims (along with two intentional tort claims).  The Court also denied leave to amend as futile for all but one claim, allowing plaintiff to attempt to establish a different source of nondelegable duty for the alleged failure to protect against COVID-19 (Count Twelve of the Second Amended Complaint).

Where the Court gave plaintiff an inch, the Third Amended Complaint took a mile.  New Count Twelve extends well beyond COVID-related issues, expanding to include all aspects of Mesa Verde's operations.  And rather than simply identifying a new basis for alleged nondelegable or nondelegated duties, plaintiff recycles a slew of contract-based claims that the Court already rejected.

Beyond exceeding the Court's Order, plaintiff's claim fails on the merits.  Plaintiff asserts that the United States had nondelegable duties as (1) jailer; (2) legal custodian; (3) arrestor; and (4) medical provider.  But the United States had no such legal duties in this context—indeed, the Court has already largely rejected these grounds in its prior Order.  And even if plaintiff could overcome the independent contractor exception, her claim still fails under the discretionary function exception.  The Court should therefore dismiss plaintiff's one remaining claim against the United States for lack of subject matter jurisdiction and/or failure to state a claim, without leave to amend.

# II.   **BACKGROUND**

## A.   **Mr. Ahn's detention at Mesa Verde.**

Mr. Ahn, a lawful permanent resident, was convicted of attempted murder with a firearm and sentenced to 10 years imprisonment.  Order of 3/25/24, ECF 66, at 1-2 ("Order at __").  Because attempted murder is a deportable offense, U.S. Immigration and Customs Enforcement (ICE) placed a

detainer on Mr. Ahn and took him into custody upon his release from state prison pending his removal proceedings.  *Id.* at 2.  In February 2020, Mr. Ahn was served with a warrant of arrest and transported to Mesa Verde.  Third Am. Compl., ECF 74, ¶¶ 14, 24 ("TAC ¶ __"); Declaration of Nancy Gonzalez, ECF 54-2, ¶ 6 ("Gonzalez Decl. ¶ __").

### B.     Mesa Verde

Mesa Verde is a privately-owned, privately-run federal detention center pursuant to a federal government contract (the "Contract").  Order at 2.  The Court has already held that the Contract "indisputably vests GEO solely with the rights and responsibilities to manage Mesa Verde's operations and compliance with applicable statutes, regulations, and the PBNDS."  *Id.* at 12.  "GEO alone runs Mesa Verde's operations, deciding whether it has the capability to accept detainees with medical issues, how to classify detainees, where to house them, how to supervise them, and how to ensure that they receive necessary medical treatment and intervention."  *Id.* at 13.

Among other things, GEO was "responsible for providing health care services for ICE detainees," including "intake arrival screening, infectious disease screening and treatment, emergent, acute and chronic care, on-site sick call, dental services, and mental health services."  Declaration of Natasha Nguyen ("Nguyen Decl. ¶ __"), ECF 54-3, Ex. A, Contract Attach. 19.  ICE was not responsible for detainee safety and security, building and ground maintenance, sanitation, medical and health services, detainee housing or activities, detainee discipline, or any other aspects of day-to-day operations.  Nguyen Decl. ¶ 5(b).  ICE employees did not supervise detainees or conduct detainee health assessments, including health assessments occurring upon detainees' intake to Mesa Verde.  *Id.* at ¶ 5(c).  Nor did ICE employees recommend or provide treatment, respond to medical emergencies, decide housing arrangements, supervise GEO employees, or assist with running Mesa Verde.  *Id.* at ¶ 5(c)-(f).

As the United States and the Court have acknowledged, the Contract required GEO to comply with numerous specific standards from the 2011 Performance-Based National Detention Standards (PBNDS), the Prison Rape Elimination Act (PREA), the American Correctional Association (ACA), and the National Commission on Correctional Health Care (NCCHC), as well as federal, state, and local laws.  Order at 12-13; Contract at 2 & Attach. 19 at 12-13, 48-49.  The Contract made clear that GEO alone was responsible for complying with those standards and laws.  Order at 12-13.

In fact, ICE only retained a right to "conduct periodic and unscheduled audits and inspections of contract performance and the facility to ensure contract compliance."  Contract Att. 19, at 13; *see also id.* at 45; Nguyen Decl. ¶¶ 5, 6.  But the Contract did not specify how audits and inspections were to occur or prescribe how any non-compliances were to be handled or penalized—those determinations were entirely discretionary.  Nguyen Decl. ¶ 6; Contract Attach. 19 at 23-24.  And the Court held that ICE's "retention of general oversight rights for GEO's compliance . . . by way of audits and evaluations" was not enough "to pierce the independent contractor exception to FTCA liability."  Order at 13.

### C.      Procedural history and the Third Amended Complaint.

In her Second Amended Complaint, plaintiff asserted two intentional tort claims and four different Counts of negligence against the United States under the Federal Tort Claims Act (FTCA):

1. Count Nine – negligence for failure to release Mr. Ahn from detention;

2. Count Ten – negligence for granting GEO the contract;

3. Count Eleven – negligence for retaining GEO and failing to exercise control over GEO through inadequate inspections, assessment of penalties, and implementation of COVID protocols;

4. Count Twelve – "fail[ing] to protect Mr. Ahn against COVID-19 hazards and . . . inadequate COVID-19 policies and protections," in violation of alleged "nondelegable duties to mitigate such risks as a 'landowner' and 'jailer'"; and

5. Counts Thirteen/Fourteen – false imprisonment and intentional infliction of emotional distress.

Order at 9, 11, 14.  The United States moved to dismiss these claims for lack of subject matter jurisdiction based on the independent contractor and discretionary function exceptions to the FTCA.  It also moved to dismiss the two intentional tort claims for failure to state a claim.  *See* ECF 54-1.

The Court granted the United States' Motion in full.  It found that plaintiffs' intentional tort claims were not viable as a matter of law.  Order at 7, 17-18.  It rejected her negligence claims too:

1. Count Nine was barred by the discretionary function exception because the Attorney General had sole discretion to determine whether to detain an alien pending deportation.  *Id.* at 10.

2. Count Ten was barred by the discretionary function exception because the government's hiring and retention of GEO was a judgment that implicated policy.  *Id.* at 11.

3. Count Eleven was barred by the independent contractor exception because the Contract "indisputably vest[ed] GEO solely with the rights and responsibilities to manage Mesa Verde's

operations and compliance with applicable statutes, regulations, and the PBNDS." *Id.* at 12. The Court rejected plaintiff's assertion of governmental liability due to allegedly inadequate inspections and audits because ICE's "general oversight rights for GEO's compliance . . . d[id] not impute to Defendants control and supervision of GEO's 'detailed physical performance' necessary to pierce the independent contractor exception.'" *Id.* at 13.

4.  Count Twelve failed to state a claim because plaintiff identified no nondelegable duty that would obviate the independent contractor exception. The Court rejected plaintiff's claim that the United States retained a nondelegable duty as a "landowner" and "jailer" because GEO owned Mesa Verde, and the United States did not have physical custody of Mr. Ahn and thus was not a "'jailer[]' in the traditional sense" or as seen in California case law. *Id.* at 14-16.

The Court dismissed Counts Nine, Ten, Eleven, Thirteen, and Fourteen with prejudice, without leave to amend. *Id.* at 18. Although it dismissed Count Twelve, the Court granted leave to amend "to assert a claim based on Defendants' negligence in breaching some other nondelegable or nondelegated duty." *Id.* at 17. This leave was only "to the extent of remedying the deficiencies noted herein." *Id.* at 18.

Plaintiff filed a Third Amended Complaint on May 29, 2024.[1]  Aside from a few minor, non-substantive changes, the underlying factual allegations of the Third Amended Complaint were identical to those in the Second Amended Complaint. *Compare* TAC ¶¶ 1-83 *with* SAC, ECF No. 46, ¶¶ 1-84.[2]

New Count Twelve,[3] however, asserted that the United States had nondelegable duties to Mr. Ahn based on its status as a (1) jailer; (2) legal custodian; (3) arrestor; and (4) medical provider.  TAC ¶¶ 180, 224.  It asserted these grounds even though the Court had already found that the United States was not Mr. Ahn's jailer or legal custodian and that all medical care provision was delegated entirely to GEO.  Further, plaintiff did not confine her amendment to nondelegable duties related to COVID hazards as the Court ordered.  Instead, she asserted liability for all aspects of Mr. Ahn's confinement, including GEO's numerous alleged failures relating to his mental healthcare.

---

[1] The Court originally gave plaintiff 21 days to amend but gave three extensions to allow for settlement discussions between plaintiff and the United States.  *See* ECF 69, 71, 73.  The parties regrettably were not able to resolve the matter.

[2] Plaintiff's Third Amended Complaint even retained the assertion that "ICE was the landowner of Mesa Verde," which plaintiff has already conceded was wrong.  *See* TAC ¶ 16; Order at 15 ("In her opposition, Plaintiff concedes that Defendants are not landowners[.]").

[3] Counts One through Eight were asserted against GEO only.  Count Twelve is the only Count asserted against the United States.  There was no Count Nine, Ten, or Eleven.

### III.       LAW AND ANALYSIS

**A.       Standard of review**

#### 1.       Federal Rule of Civil Procedure 12(b)(1)

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A-Z Int'l. v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003); *Lanza v. Ashcroft*, 389 F.3d 917, 930 (9th Cir. 2004) ("There is a general presumption against federal court review, and the burden of establishing the contrary rests on the party asserting jurisdiction.").  "[W]aivers of sovereign immunity must be construed in favor of the sovereign." *Foster v. United States*, 522 F.3d 1071, 1074 (9th Cir. 2008).  Plaintiffs have the burden to prove the existence of subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual. . . . In a factual attack, the challenger disputes the truth of the allegations, that, by themselves, would otherwise invoke federal jurisdiction. . . . In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint" and "need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Once the moving party presents such evidence, the opposing party "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.*; *Colwell v. HHS*, 558 F.3d 1112, 1121 (9th Cir. 2009).

#### 2.       Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits dismissal of legally insufficient claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2002).  Dismissal is appropriate where there is a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Paifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

While Rule 12(b)(6) requires the Court to assume the truth of well-pleaded factual allegations, this "tenet . . . is inapplicable to legal conclusions." *Id.*  Nor may the Court "accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Further, under Rule 8, a complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'"  *Iqbal*, 556 U.S. at 678.

**B.     Count Twelve should be dismissed to the extent that it goes beyond an alleged failure to protect Mr. Ahn from COVID-19 hazards.**

Count Twelve in the Second Amended Complaint asserted breach of a nondelegable duty as landowner and jailer "to protect Mr. Ahn against COVID-19 hazards and enact []adequate COVID-19 policies and protections."  Order at 14; *see* SAC ¶¶ 210-12.  Although the Court held that the United States was neither a landowner nor a jailer, and thus did not retain any nondelegable special duty of care sufficient to override the independent contractor exception, it permitted plaintiff to amend Count Twelve "to the extent of remedying the deficiencies noted herein."  Order at 18.

Plaintiff, however, did not limit new Count Twelve to alleged negligence relating to COVID. Instead, she dramatically expanded Count Twelve to encompass nearly every alleged failing at Mesa Verde, including intake screenings, medical care, mental health treatment, suicide prevention policies, and use of segregation.  *See, e.g.*, TAC ¶¶ 209-10, 216, 218-20.  Nor did she limit new Count Twelve to asserting other nondelegable or non-delegated duties.  Instead, she again asserted that the United States was contractually obligated to ensure GEO's compliance with various standards and to provide Mr. Ahn with adequate medical care, despite the Court already holding that the Contract "indisputably vest[s] GEO solely with the rights and responsibilities to manage Mesa Verde's operations and compliance with applicable statutes, regulations, and the PBNDS," and that "GEO alone runs Mesa Verde's operations, deciding whether it has the capability to accept detainees with medical issues, how to classify detainees, where to house them, how to supervise them, and how to ensure that they receive necessary medical treatment and intervention."  Order at 12-13.

Rather than simply attempt to remedy deficiencies in Count Twelve, plaintiff couches as "nondelegable duties" the same claims from Counts Nine through Eleven that the Court already dismissed with prejudice.  At minimum, plaintiff's Third Amended Complaint should be dismissed to the extent that it exceeded the Court's limited grant of leave to amend.

**C.    Plaintiff has not shown breach of a nondelegable duty to override the independent contractor exception to the FTCA.**

To avoid the independent contractor exception, plaintiff must show the existence of a nondelegable duty.  Plaintiff posits that the United States had four "special relationships" with Mr. Ahn that created legal duties: (1) jailer; (2) legal custodian; (3) arrestor; and (4) medical provider.  The United States does not fall into any of these special relationships and did not retain any nondelegable duties.  The Court therefore should dismiss Count Twelve with prejudice.

**1.    Jailer**

Plaintiff asserts that ICE was a "jailer," which created a nondelegable duty to care for Mr. Ahn.  TAC ¶¶ 181-82.  But the Court already held that ICE and the United States are not "'jailers' in the traditional sense—*e.g.*, assigned to a facility holding custody of detained inmates."  Order at 16.  Further, the Court already distinguished the legal authority plaintiff relies upon, finding it "factually distinct" because the plaintiff there "asserted claims against individual correctional staff members at the facility in question."  *Id.* at 15-16 (distinguishing *Giraldo v. Cal. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231 (2008)); TAC ¶ 181 (citing *Giraldo* to claim that ICE was a jailer).

The Court was correct the first time.  Once ICE deposited Mr. Ahn at Mesa Verde, GEO alone had physical custody of him and was his "jailer" as that term is normally understood.[4]  Further, while California courts have found a "special relationship" between jailers and inmates, plaintiff has identified no authority indicating that California would impose a similar duty on a private person, as opposed to a governmental entity, as the FTCA requires.  *See* 28 U.S.C. § 1346(b) (the United States is liable only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with [state law]").

In short, plaintiff still has identified no authority suggesting that the United States can be sued

---

[4] *See* Black's Law Dictionary 851 (8th Ed. 2004) (defining "jailer" as "[a] keeper, guard, or warden of a prison or jail"); *Redman v. Cnty. of San Diego*, 896 F.2d 362, 368 (9th Cir. 1990) (referring to "jail officials" as "jailers"); *United States v. Edwards*, 415 U.S. 800, 804 n.6 (1974) (describing a "jailer" as one having "custody and control" over an inmate); *Morales-Alfaro v. DHS*, No. 20-cv-82, 2021 WL 1061171, at *3 n.3 (S.D. Cal. Mar. 17, 2021) (stating that the duty of a jailer is "[p]resumably . . . the duty of private persons charged with the custody of [a] prisoner, e.g., the operators of private prisons"); *Minneci v. Pllard*, 565 U.S. 118, 128 (2012) (observing that although a plaintiff could not assert a *Bivens* action against a private prison operator, California tort law imposes duties on "jailers, including private operators of prisons").

under the FTCA based on an alleged "jailer" status or that the United States qualifies as a "jailer." The Court should reaffirm that the United States has not retained a duty towards Mr. Ahn as a "jailer" here.

### 2. Legal custodian

Plaintiff next asserts that the United States retained a duty towards Mr. Ahn as his "legal custodian." TAC ¶ 183. The Court has already rejected this theory too, holding that any duties under California law have only been applied to "correctional staff" and "facilit[ies] holding custody of detained inmates." Order at 15-16. The Court has already found plaintiff's legal authority "factually distinct" because the "'special relationship' there turned largely on the fact that the inmate was in the 'custody' of the 'jailers' named as defendants." *Id.* (distinguishing *Lawson v. Superior Court*, 180 Cal. App. 4th 1372 (2010)); TAC ¶ 183 (citing *Lawson*). *Lawson* imposed a duty not based on legal custody, but rather on the "special relationship between jailer and prisoner" that imposed a duty on the "jailers *at the facility*." *Lawson*, 180 Cal. App. 4th at 1390 (emphasis added).

The Court has already correctly decided this issue. Plaintiff has identified no legal authority suggesting that California imposes a non-delegable duty based on a generalized "legal custodian" relationship—at most, it imposes a duty on staff and facilities that physically hold the detainees and are responsible for their welfare. Under that framework, GEO is the custodian, not the United States.

### 3. Arrestor

Plaintiff argues that the United States owed a duty to Mr. Ahn as his "arrestor." TAC ¶ 184. Plaintiff bases "arrestor" status on: (1) ICE arresting Mr. Ahn on February 21, 2020, to take him to Mesa Verde; and (2) transporting Mr. Ahn to Mercy Hospital for treatment for shortness of breath and chest pain on May 12, 2020, monitoring him during treatment (including a surgery), and returning him to Mesa Verde two days later. TAC ¶¶ 24, 27, 41, 185, 190-91.

Plaintiff's cases, however, suffer from the same deficiency as his "jailer" and "legal custodian" bases—they all involved arrestors or jailers who had physical custody of the arrestees.[5] At most, those

---

[5] *See* TAC ¶ 193; *Lum v. Cnty. of San Joaquin*, 756 F. Supp. 2d 1243, 1246 (E.D. Cal. 2010) (holding that arresting officers had duty to decedent where they failed to give him medical attention despite observing erratic behavior and obvious physical injuries, and that officers at the jail holding decedent had duty where they released him without medical evaluation or treatment despite observing him hallucinating and seizing and knowing that he took bipolar disorder medication); *Winger v. Cty. of Garden Grove*, 806 F. App'x 544 (9th Cir. 2020) ("[A] law enforcement officer owes a duty of reasonable care to an arrestee in his custody who needs immediate medical attention."); *Winger v. Cty.*

cases might impose a duty on ICE during the brief periods it had physical custody of Mr. Ahn, away from GEO.  But plaintiff does not assert that Mr. Ahn killed himself because of wrongful treatment by ICE agents during his February 21 or May 12-14, 2020 excursions with them—rather, she asserts that Mr. Ahn's suicide was caused by deficient mental healthcare and failure to follow suicide protocols, which occurred at Mesa Verde while Mr. Ahn was in GEO's custody.[6]  Plaintiff, in short, has established neither the existence nor breach of a legal duty to Mr. Ahn.

Not only are plaintiff's cases inapposite, but she fails to satisfy a necessary condition of them: she must show that Mr. Ahn's suicide was foreseeable because of ICE's knowledge that Mr. Ahn was in imminent need of medical or mental health treatment.  *See Wedgeworth*, 2015 WL 569343, at *7 (affirming summary judgment for defendants because even though arresting and jailing officers knew of decedent's mental health problems and that he had previously had multiple suicidal ideations while on a mental health hold, that alone did not show that the officers knew he "was necessarily suicidal or in need of immediate medical or psychological care"); *Lawman*, 2016 WL 924630, at *4 (summary judgment granted for defendants because even though arresting officers may have known about plaintiff's mental disability, "there are no facts to indicate that [plaintiff] was in medical crisis at the time of his arrest").

Plaintiff claims that ICE reviewed Mr. Ahn's "medical history" during his February 21, 2020 arrest and May 12-14, 2020 trip to Mercy Hospital.  *See* TAC ¶¶ 186-88, 190-92.  But she never

---

*of Garden Grove*, No. 13-267, 2018 WL 6010310, at *1 (C.D. Cal. June 4, 2018) (arresting officer directly observed plaintiff experiencing stroke symptoms but did not seek medical attention); *Petrolino v. Cty. and Cnty. of S.F.*, No. 16-cv-2946, 2016 WL 6160181, at *1, *4 (N.D. Cal. Oct. 24, 2016) (finding that arresting officer had a duty to decedent where "[decedent] was in [the officer's] custody, and [the officer] was the only person in a position to protect him" from harming himself).

Two of plaintiff's cases rejected the existence of a duty.  *Wedgeworth v. City of Newport Beach* acknowledged *Lum*'s finding "a special relationship . . . between a jailer and a prisoner" but distinguished it and affirmed summary judgment for defendants.  No. G048784, 2015 WL 569343, at *8 (Cal. Ct. App. Feb. 11, 2015).  *Lawman v. City and County of San Francisco* likewise recognized that *Lum* and *Giraldo* found that arresting officers and jailers could owe a duty to an arrestee in certain circumstances, but concluded no duty existed on the facts of the case and confirmed its prior grant of summary judgment to defendants.  No. 15-cv-1202, 2016 WL 924630, at *5 (N.D. Cal. Mar. 11, 2016).  Notably, in both cases, the arresting officers or jailers had physical custody of the arrestee.

[6] As in the Second Amended Complaint, the Third Amended Complaint asserts that Mr. Ahn believed he had lung cancer as a result of a March 12, 2020 surgery, but ICE delayed an appointment to review biopsy results.  ECF No. 54-1, at 6 n.2; TAC ¶¶ 27-29.  Plaintiff offers no factual allegations explaining how ICE delayed the process or how this delay contributed to Mr. Ahn's suicide despite the United States previously identifying this deficiency.  *See* ECF No. 54-1, at 6 n.3.

specifies what "history" ICE allegedly reviewed that would suggest an imminent medical or mental

health crisis, nor are there plausible facts suggesting that ICE necessarily would have reviewed Mr.

Ahn's mental health records as part of unrelated treatment for chest pain in May 2020.  Even more

basically, plaintiff's assertion that ICE reviewed records is simply not accurate.  Although she identifies

PBNDS provisions requiring review of a detainee's medical history for classification and suicide

prevention purposes, those obligations apply to "staff" at the "facility"—here, Mesa Verde.  *See* TAC

¶¶ 186-87; PBNDS Art. 2.2 §§ A, B; PBNDS Art. 4.6(I), (II), (V).  The Court has already acknowledged

as much, holding that "[t]he relevant contracts here indisputably vest GEO solely with . . . compliance

with applicable statutes, regulations, and the PBNDS."  Order at 12.

Plaintiff also argues that declarations in an unrelated case, *Ahn v. Barr*, N.D. Cal. No. 20-cv-

2604, state that ICE reviewed Mr. Ahn's medical records and communicated with GEO regarding

detainee health.  TAC ¶¶ 188-89.  The undersigned cannot verify plaintiff's assertions because the

declarations are sealed,[7] but even the selectively presented information does not identify records

allegedly reviewed that would suggest Mr. Ahn was in imminent danger of medical emergency.  In fact,

the context of the declarations shows otherwise.  They were filed as part of temporary restraining order

briefing relating to COVID-19 vulnerability, not mental health treatment.  Further, the court denied the

TRO because "the evidence of petitioners' medical vulnerability . . . is thin to the point of vanishing,"

undermining any assertion that ICE was aware of Mr. Ahn's medical vulnerability at all, let alone one

making suicide foreseeable. 2020 WL 2113678, at *3 (N.D. Cal. May 4, 2020).  Regardless, as the Court

previously held, ICE's general oversight "does not impute to [ICE] control and supervision over GEO's

'detailed physical performance' necessary to pierce the independent contractor exception."  Order at 13.

Plaintiff also asserts that ICE is responsible for approving, reviewing, and/or denying offsite

medical procedures for detainees.  TAC ¶ 186.  The only identified offsite medical treatment, however,

was Mr. Ahn's admission to Mercy Hospital on May 12, 2020, due to chest pain.  TAC ¶¶ 41, 190.

Plaintiff offers no well-pleaded factual allegations indicating that ICE knew about Mr. Ahn's unrelated

---

[7] Given that the declarations are sealed, it may be improper for plaintiff to provide that information publicly in this case.  Plaintiff presumably only has access to the declarations because Mr. Ahn's counsel in *Ahn v. Barr* is also plaintiff's counsel in this case.

medical and mental health conditions from its approval of the Mercy Hospital treatment, let alone that he was in imminent danger of killing himself.

Finally, plaintiff asserts that Mr. Ahn submitted to ICE at least three requests for release from detention for "humanitarian reasons."  *See* TAC ¶¶ 39, 191.  But plaintiff notably does not allege that any of the requests specifically discussed an imminent risk of suicide or other exigent medical emergency, or asserted that GEO—the contractually-responsible party for Mr. Ahn's welfare—was incapable of providing necessary medical or mental health care.  And as the United States has already shown, Mr. Ahn was subject to mandatory detention because of his aggravated felony conviction in any event.  *See* ECF 54-1, at 10 (citing 8 U.S.C. § 1226(c)(1)); Gonzalez Decl. ¶ 7.

In short, plaintiff has not offered well-pleaded factual allegations showing that ICE retained a legal duty as an "arrestor," nor that ICE had the necessary knowledge to satisfy the foreseeability requirement of any such duty.

### 4.   Medical provider

Finally, plaintiff argues that ICE owed a nondelegable duty to Mr. Ahn as his "medical provider."  TAC ¶ 194.  The Court has already found that GEO, not ICE, was Mr. Ahn's medical provider as a contractual matter.  Order at 13 (applying independent contractor exception because GEO alone was responsible for "ensur[ing] that [detainees] receive necessary medical treatment and intervention"); *see also id.* at 14 ("Plaintiff's theory of liability for Defendants' alleged negligent hiring, supervision and retention of GEO is undermined by the express language of the operative contract[.]").

Plaintiff's case law does not undermine this Court's prior determination or support imposition of a nondelegable duty.  For one, all her cases involved arrestors or jailers who had physical custody of the plaintiff.[8]  She still has not offered a case holding that the federal government is liable under the FTCA

---

[8] *Estate of Wilson v. Cnty. of San Diego*, No. 20-cv-457, 2022 WL 789127, at *1-2, *25-26 (S.D. Cal. Mar. 14, 2022) (involving jail staff failing to provide decedent with medication or medical treatment while he was confined even though they knew of decedent's heart condition and medicinal needs); *Clement v. Gomez*, 298 F.3d 898, 901-02 (9th Cir. 2002) (involving jail officers using pepper spray to quell a prison fight); *Hamilton v. Endell*, 981 F.2d 1062, 1064 (9th Cir. 1995) (involving prison officials deciding to transfer an inmate to another facility by airplane despite an ear condition prohibiting air travel); *Bell v. Wolfish*, 441 U.S. 520, 520 (1979) (involving "a federally operated short-term custodial facility"); *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1236 (9th Cir. 2010) (involving a county mental health specialist who treated plaintiff and two county sheriff deputies who oversaw decedent); *West v. Atkins*, 487 U.S. 42, 43-44 (1988) (involving prisoner held in a state-run

for inadequate medical care provided by privately-owned, privately-run prisons or detention centers.

In fact, the only California federal case that appears to have considered plaintiff's argument has rejected it.  In *Baires v. United States*, the plaintiffs asserted that a privately-operated ICE detention facility did not provide necessary antiretroviral medication to two HIV+ inmates despite knowing of their HIV status, and otherwise provided "horrifically inadequate medical care."  No. C-09-5171, 2011 WL 1743224, at *1 (N.D. Cal. May 6, 2011).  Like here, the *Baires* plaintiffs cited *West v. Atkins* to argue "that the United States must *always* be liable for all instances of inadequate medical care, because the government cannot delegate its duty to provide reasonable medical care."  *Id.* at *6.  The court rejected plaintiff's argument, finding that "*West* had nothing to do with the government's liability under the FTCA and its very limited waiver of immunity," and that "[p]laintiffs point[ed] to no cases in which the United States was found liable for inadequate medical care provided by independent contractors." *Id.*  Rather, the plaintiffs could only impose liability on the United States where ICE agents "directly contribute[d] to the situation."  *Id.*; *compare* Order at 17 (citing *Alvarado v. United States*, No. CV-F-09-243, 2010 WL 300139 (E.D. Cal. July 29, 2010)).  Even though "the independent contractors running [the facility] were primarily responsible for the inadequate medical care," the court found limited allegations that ICE agents affirmatively contributed to the deficient care and permitted the FTCA claim to proceed on those allegations only.  *Baires*, 2011 WL 1743224, at *7.

Here, plaintiff alleges not that ICE directly contributed to Mr. Ahn's deficient mental health care, but that it failed to "intervene" or "prevent" GEO from violating contractual standards despite knowing that GEO repeatedly breached them.  TAC ¶¶ 210-18.  As this Court has already held, that is not enough to assert an FTCA claim.  Order at 13 (holding that general oversight "does not impute . . . control and supervision of GEO's 'detailed physical performance' necessary to pierce the independent contractor exception"); *Estate of Cruz-Sanchez v. United States*, No. 17-cv-569, 2018 WL 3239340, at *5 (S.D. Cal. July 2, 2018) (holding that independent contractor exception immunized United States for deficient

_____

prison but treated in the prison by a contracted medical professional).

Plaintiff also cites *Edison v. United States*, 822 F.3d 510 (9th Cir. 2016).  *Edison* did not purport to impose a non-delegable duty based on "medical provider" status.  The Court has already held that *Edison* does not assist plaintiff, as it imposed a duty based on the government's landowner and jailer status whereas here ICE was neither landowner nor jailer.  Order at 15-16.

medical care at private detention facility because plaintiff "did not allege that the Government directed the performance of [the contractor's] employees or that the Government supervised or directed . . . the [center's] day-to-day operations"); *Alvarado*, 2010 WL 300139, at *8 ("[T]he government has no duty to Plaintiffs for merely failing to exercise a general supervisory power to prevent the creation or continuation of a hazardous practice, or by failing to exercise retained control.").

Plaintiff also suggests that ICE retained duties to provide Mr. Ahn with adequate medical care as a matter of fact.  She first points to the Contract, which requires that GEO comply with numerous specific and detailed requirements, guidelines, and policies, while reserving ICE's rights to inspect and audit contractual compliance.  TAC ¶¶ 198-203.  Plaintiff has already asserted this same theory of non-delegated duty, and the Court has already rejected it as "undermined by the express language of the operative contract."  Order at 12-14.  Rightly so, as even contracts "directing detailed performance," "fix[ing] specific and precise conditions," or requiring "[d]etailed regulations and inspections" do not abrogate the independent contractor exception.  *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005).  Plaintiff offers no reason to reconsider the Court's prior determination.

Finally, plaintiff contends that ICE Directive 11065.1 "requires intensive involvement, action, and supervision by ICE officials" for detainee segregation.  TAC ¶ 204.  But plaintiff significantly overstates the Directive.  The Directive explicitly disclaims creation of any legal rights or duties—it is only "an internal policy statement of ICE" that "is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter."  ICE Directive 11065.1, § 10.

Further, the Directive does not directly involve ICE in running detention facilities—it only states that ICE will "take additional steps to ensure appropriate review and oversight of decisions to retain detainees in segregated housing."  ICE Directive 11065.1, § 2.  It accomplishes this goal by requiring facility administrators to provide data to ICE regarding certain types of segregation, which ICE will "review" and "report" on.  *See* ICE Directive 11065.1, § 5.1; *see also id.* at §§ 5, 7 (section headings using the terms "field review" and "oversight and reporting").  The actual mechanics of the Directive is a far cry from plaintiff's assertion that it "requires intensive involvement, action and supervision by ICE

officials."[9] TAC ¶ 204.  To the contrary, the Directive simply requires more specific forms of oversight and audits, which the Court has already held do not rise to the level of "detailed physical performance" required for plaintiff's claims to survive dismissal.  Order at 13.

### D.    The United States is immune under the discretionary function exception.

According to the Third Amended Complaint, plaintiff largely premises her liability claim against the United States on ICE's alleged failure to ensure that GEO complied with contractual obligations and intervene once it became apparent that GEO was violating the applicable standards.[10]  She also appears to suggest that ICE did not properly supervise or direct Mesa Verde's response to COVID.  TAC ¶¶ 189, 221.  The discretionary function exception bars both bases.

Under the discretionary function exception, the United States retains immunity against "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  This exception was aimed at "prevent[ing] judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).  It "protects the federal government's choices, even if they are bad ones."  *Johnson v. United States*, No. CV-12-9051, 2014 WL 12572914, at *4 (C.D. Cal. Mar. 14, 2014).

A two-step inquiry governs whether claims fall within the discretionary function exception. "First, [the court] assess[es] whether the allegedly wrongful conduct is discretionary—that is, whether the action is a matter of choice for the acting employee."  *Myles v. United States*, 47 F.4th 1005, 1011 (9th Cir. 2022) (citation and quotation marks omitted).  Second, if the conduct involves discretion or choice, the Court then examines whether the decision was "grounded in social, economic, and political

---

[9] Notably, the words "supervise," "supervision," "supervisor," or similar permutations do not appear anywhere in ICE Directive 11065.1, aside from five references to facility employees.

[10] *See, e.g.*, TAC ¶¶ 21-22 (ICE's inspections of Mesa Verde were "perfunctory" and "unreliable"); *id.* at ¶ 209 ("ICE retained a non-delegable duty to ensure that GEO . . . [was] complying with their constitutional obligation to ensure the health, safety, wellbeing and prevent harm to individuals . . . in light of GEO Group's abysmal historical track-record for doing so, which ICE was aware of."); *id.* at ¶ 210 ("ICE did not intervene to meet its own non-delegable duty to provide adequate medical care."); *id.* at ¶ 218 ("ICE failed to prevent Mr. Ahn's placement in solitary confinement[.]").

policy." *Id.*  The focus is "not on the agent's subjective intent in exercising the discretion . . . but on the nature of the actions taken and on whether they are susceptible to a policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991).  Immunity applies not just to true policymaking, but to decisions by federal employees exercising discretion.  *Id.* at 325-26; *Varig Airlines*, 467 U.S. at 813.  Where government policy allows a government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  *Gaubert*, 499 U.S. at 324.

### 1.   The discretionary function exception bars plaintiff's claims based on ICE's oversight of GEO and response to contractual noncompliance.

Plaintiff primarily claims that the United States is liable because of ICE's insufficient oversight and deficient response to known contractual noncompliance.  But both involve ICE's discretion and are susceptible to a policy analysis.  Indeed, plaintiff previously offered a similar liability theory, which the Court rejected "under the independent contractor and discretionary function exceptions to the FTCA's waiver of sovereign immunity."  Order at 14.  The Court should reaffirm its prior determination here.

First, oversight is inherently discretionary.  The Federal Acquisition Regulations (FARs), which govern ICE's contracting with GEO, do not prescribe specific inspection or quality regimens—they generally contemplate contractual provisions for "inspection and other quality requirements . . . that are determined necessary to protect the Government's interest" in a contract.  48 C.F.R. § 46.102(a); *see also* 48 C.F.R. § 46.201(a) (requiring the contracting officer to include "the appropriate quality requirements" in an agency contract).  And rather than enumerate specific quality controls, the FARs require agencies to "[p]erform all actions necessary to verify whether the supplies or services conform to contract quality requirements."  48 C.F.R. § 46.104(b).  Consistent with the FARs, the Contract provides for "periodic and unscheduled audits and inspections" of Mesa Verde but does not specify how often they are to occur, who should be involved, how they should be performed, or what should be audited or inspected.  Contract Att. 19, at 13, 45; Nguyen Decl. ¶ 6.  Indeed, the inspections do not even have to be performed by ICE—they could be performed by "other officials."  Contract Att. 19, at 13, 45.  The Contract also requires semi-annual audits of Mesa Verde's clinical operations but again does not specify who will perform the audits or how they will occur.  Contract Att. 19, at 56.

Further, the discretion inherent in ICE's inspections and oversight involves policy considerations.

Inspection and audit requirements are aimed to ensure that a contractor meets the policy objectives of the FARs.  Thus, "many courts have found that the government's negligent supervision or even total failure to supervise are discretionary decisions protected by the discretionary function exception."  *Vallier v. Jet Propulsion Lab.*, 120 F. Supp. 2d 887, 914 (C.D. Cal. 2000); *Varig Airlines*, 467 U.S. at 819-20 ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."); *Bibeau v. Pac. Nw. Research Found., Inc.*, 339 F.3d 942, 945-46 (9th Cir. 2003) (affirming dismissal of plaintiff's claim that agency negligently supervised a contractor based on the discretionary function exception); *Sai v. Smith*, No. 16-cv-1024, 2018 WL 534305, at *5 (N.D. Cal. Jan. 24, 2018) ("[S]upervision of contractors falls within the discretionary function exception."); *Clemons v. United States*, No. 2:21-cv-9194, 2022 WL 4596651, at *3-4 (C.D. Cal. July 7, 2022) ("The government's role in supervising an independent contractor is also policy-based, requiring the government to balance its objectives with various practical considerations"); *Maryland Cas. Co. v. United States*, No. C-05-2558, 2006 WL 563046, at *7 (N.D. Cal. Mar. 6, 2006) ("[The] decision regarding the level of supervision applied to [a contractor] [is] susceptible to a policy analysis."); *Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005) ("Supervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function.").

Similarly, how to address GEO's noncompliance with the Contract is discretionary.  The Contract does not identify how "noncompliance" is determined, and the FARs give contracting officers discretion to "establish[] the significance of a nonconformance when considering the acceptability of supplies or services which do not meet contract requirements."  48 C.F.R. § 46.103(e); *cf. Gonzales v. United States*, 814 F.3d 1022, 1029 (9th Cir. 2016) (holding that guidelines requiring referral to local law enforcement when there is "credible information" of "serious criminal activity" was discretionary because they "provide[d] no criteria for determining what is 'credible information' or what constitutes 'serious criminal activity'").  Further, the Contract itself only identifies two potential penalties ICE could impose (monetary adjustments and termination) but offers no standards to impose them.  Contract Att. 19, at 23-24.  Nor do the FARs—in fact, they confirm that even when noncompliance constitutes a default, agencies still retain discretion to continue the contract "when in the Government's interest."  48 C.F.R. § 49.402-4.  The FARs provide several factors to weigh in determining whether to terminate a contract,

including the terms of the contract and applicable laws, the specific failures at issue, the availability of services from other sources, the urgency of the need for services, the degree of essentiality of the contractor, and "any other pertinent facts and circumstances."  48 C.F.R. § 49.402-3(f).

In short, how to determine noncompliance, and then whether and how to penalize it, "depends upon a selective case-by-case evaluation.  A 'case-by-case' evaluation presumes significant officer discretion."  *Weissich v. United States*, 4 F.3d 810, 914 (9th Cir. 1993).  And these matters involve policy judgments, especially in the immigration context laden with congressional and executive policy objectives.  The Court thus should also hold that the discretionary function exception bars plaintiff's claim against the United States to the extent it relies on the government's failure to terminate the contract, penalize GEO for noncompliance, or otherwise intervene.  *Vallier*, 120 F. Supp. 2d at 913-14 (holding that discretionary function exception barred claim for government's failure to enforce contractors' compliance with safety regulations); *Walding v. United States*, 955 F. Supp. 2d 759, 784-85 (W.D. Tex. 2013) (holding that discretionary function exception barred claims based on government's alleged "fail[ure] to take appropriate action" after learning of abuse and mismanagement at a detainment facility because "[t]he Project Officer was given discretion and specifically empowered to make policy judgments concerning how to respond to information obtained during monitoring" and "determinate appropriate corrective measures," including freezing funds, suspension, and termination); *Lopez v. U.S. ICE*, 455 F. App'x 427, 433 (5th Cir. 2011) (holding that USMS directives regarding inspection of facilities to house ICE detainees were discretionary because they "provided no guidance, or even mention" numerous topics such as "what minimum 'level of compliance' . . . a facility had to meet, and what remedial actions to take (if any) in the event of insufficient compliance with USMS guidelines").

### 2.   The discretionary function exception bars plaintiff's claims based on ICE's response to COVID.

To the extent plaintiff's claims are based on ICE's allegedly deficient response or oversight for COVID, this too is barred under the discretionary function exception.

There is no question that "ICE in the spring of 2020 (and earlier) took steps to address" the COVID-19 pandemic, and its multiple directives "reflect[ed] a mobilized effort to address . . . the 'seriousness and pervasiveness of COVID-19.'"  *Fraihat v. U.S. ICE*, 16 F.4th 613, 637-38 (9th Cir.

2021).  A March 27, 2020 Memorandum to ICE-dedicated facilities provided initial guidance on COVID-19 management, referring to the Center for Disease Control and Prevention's (CDC) interim guidelines.  Nguyen Decl. ¶ 7(a)-(b) & Exs. C, D at 1-2, 4-5.  Less than two weeks later, ICE issued its Pandemic Response Requirements (PRR), which it developed with the CDC.  Nguyen Decl. ¶ 7(b).  The PRR imposed new mandatory requirements and recommendations for, among other things, reporting requirements for COVID-19 cases, identification of detainees at higher risk of serious illness from COVID-19, facility pandemic and disaster plans, sick leave policies, supplies of hygiene products and PPE, mask wearing, cleaning and disinfecting practices, screening of staff and detainees for COVID-19, social distancing, and medical isolation and quarantine.  Nguyen Decl. Ex. D at 3, 5, 7-15.

Since plaintiff cannot claim that ICE failed to issue COVID-19 policies at all, she can only argue that those policies were inadequate.  But that falls squarely within the discretionary function exception.  "Typically, the promulgation of policies and rules is protected by the FTCA's discretionary function exception."  *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000).  Federal regulations do not impose any specific pandemic protocols for immigrant detention centers, especially privately run ones.  "The decision to establish a policy not required by law falls squarely within the discretionary function exception."  *Martinez v. United States*, No. 1:16-cv-1556, 2017 WL 1881962, at *5 (E.D. Cal. May 9, 2017).  Further, ascertaining the nature of a potential harm and deciding how to mitigate it through protocols are quintessential discretionary policy questions.  *Rabieh v. United States*, No. 5:19-cv-944, 2019 WL 5788673, at *10 (N.D. Cal. Nov. 6, 2019) (dismissing claim that agency negligently designed its directives and safety policies because they were "safety measure 'designs' and are thus within the discretionary function exception"); *In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 994 (9th Cir. 1987) (holding that discretionary function exception barred negligence claim that federal agency failed to appreciate or sufficiently protect against potential hazards of nuclear detonation tests in developing safety plan); *C.R.S. v. United States*, 11 F.3d 791, 797 (8th Cir. 1993) (holding that development of blood screening procedures was "precisely the type of policy-bound decision that Congress intended to insulate from judicial scrutiny through the discretionary function exception").

To the extent that plaintiff contends that ICE negligently failed to ensure that Mesa Verde adopted and complied with its COVID-19 guidance, this too is barred by the discretionary function

exception because it merely re-casts her negligent supervision claim.  *See* Section III.C.1, *supra*; *Morales-Alfaro*, 2021 WL 1061171, at *4 (holding that supervising—or failing to supervise—a contract detention facility fell under the discretionary function exception).

    **E.**    **Plaintiff cannot recover punitive damages from the United States.**

    The Third Amended Complaint requests punitive damages.  TAC ¶ 229.  The Court has already determined that punitive damages are not available under the FTCA.  Order at 7.

**IV.**    **CONCLUSION**

    The Court has allowed most of plaintiff's claims to proceed against GEO.  But she cannot sue the United States because she has offered no non-delegable duty that would support a cause of action.  Further, the discretionary function exception would bar the claim she seeks to assert in any case.  For these independently adequate reasons, plaintiff's one remaining claim against the United States should be dismissed with prejudice.

Dated:  June 12, 2024

                            PHILLIP A. TALBERT
                            United States Attorney

                    By:  /s/ BRODIE M. BUTLAND
                            BRODIE M. BUTLAND
                            Assistant United States Attorney