PHILLIP A. TALBERT
United States Attorney
BRODIE M. BUTLAND
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000

Attorneys for Defendant United States
of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA AHN,<br><br>                    Plaintiff,<br><br>     v.<br><br>GEO GROUP, INC., et al.,<br><br>                    Defendants. | CASE NO. 1:22-CV-00586-CDB<br><br>REPLY MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION TO DISMISS |

    The Court provided plaintiff with limited leave to amend her claim relating to ICE's alleged failure to protect Mr. Ahn from COVID-19.  Rather than hew to the Court's Order, she took the opportunity to reassert many of the same theories the Court already rejected with prejudice, especially questions of contractual interpretation.  Indeed, she acknowledges that COVID-19 issues are now only "a small subset" of her claims.  That alone merits granting the United States' Motion to Dismiss.

    Plaintiff's theories also fail for lack of subject matter jurisdiction.  Plaintiff asserts that ICE had a duty toward Mr. Ahn as his alleged jailer, arrestor, or medical provider.  But she relies entirely on cases imposing duties on governmental entities, not private parties as the Federal Tort Claims Act (FTCA) requires.  Further, she does not identify a single case imposing a duty in the circumstances involved here, where a governmental entity entirely delegates all aspects of operating and managing a detention center through contract.  Her claims are barred by the independent contractor exception to the FTCA.

    Plaintiff's claims are also barred under the discretionary function exception.  Her Opposition clarifies that she bases her claims on two alleged failures by ICE: (1) failing to "monitor" or "intervene" with GEO's running of Mesa Verde vis-à-vis Mr. Ahn; and (2) failing to house Mr. Ahn in a facility that

complied with the law. But both monitoring/intervention and decisions on where to house an alien detainee are discretionary decisions that are susceptible to a policy analysis. They therefore are immune from suit under the discretionary function exception.

### I. New Count Twelve exceeds the Court's limited grant of leave to amend.

In its Order, the Court specifically described the scope of Count Twelve: "In Count Twelve of the SAC, Plaintiff alleges Defendants failed to protect Mr. Ahn against COVID-19 hazards and enacted inadequate COVID-19 policies and protections, despite that Defendants owed Mr. Ahn non-delegable duties to mitigate such risks as a 'landowner' and 'jailer.'" Order at 14. The Court rejected plaintiff's landowner and/or jailer theory but permitted leave "to the extent of remedying the deficiencies noted" in the Order by asserting "some other nondelegable or nondelegated duty." Order at 17-18.

The Court explicitly described Count Twelve as a claim for failure to protect against COVID-19 hazards or to enact adequate COVID-19 protocols. Rather than remedy Count Twelve by asserting new nondelegable or nondelegated duties, plaintiff expanded Count Twelve to include nearly all aspects of Mesa Verde's operations. *See* Mot. at 6. Plaintiff does not acknowledge or address the Court's framing of Count Twelve as being limited to COVID-19-related issues.

Further, plaintiff's new Count Twelve again asserts that ICE was contractually obligated to provide medical care for Mr. Ahn. But the Court already reviewed the Contract and held that "GEO alone runs Mesa Verde's operations" under it, including deciding "how to ensure that [detainees] receive necessary medical treatment and intervention." Order at 13. Plaintiff argues that precluding her from reasserting rejected contractual theories would render the leave to amend "an empty letter." Opp. at 3. Not so. The Court's Order granted only a limited leave to remedy a specified deficiency—leave to assert some other non-delegable/nondelegated duty related to ICE's COVID-19 response. Plaintiff rendered the Order an empty letter by instead treating it as an expansive license to reassert contractual theories that the Court dismissed with prejudice.

### II. Plaintiff has not shown the existence of a nondelegable duty that undermines application of the independent contractor defense.

Count Twelve asserts nondelegable duties based on ICE's alleged relationship with Mr. Ahn as (1) jailer; (2) legal custodian; (3) arrestor; and (4) medical provider. *See* TAC ¶¶ 180, 224. Plaintiff has

abandoned the "legal custodian" ground.  *See* Opp. at 3.  And she has not demonstrated that any of the three remaining duties apply to ICE here.  The Court therefore should dismiss plaintiff's claims based on the independent contractor exception.

### A. Plaintiff's "jailer," "arrestor," and "medical provider" theories of duty fail *Edison*'s first step.

Plaintiff asserts that the Court must conduct a three part inquiry by: (1) determining whether state law imposes a duty of care *on a private individual* in a similar situation; (2) if so, determining whether the government retained any part of that duty; and (3) if so, determining whether California law imposes any nondelegable duties.  Opp. at 3-4 (citing *Edison v. United States*, 822 F.3d 510, 518-19 (9th Cir. 2016)).  The first step is critical, as the United States is only liable under the FTCA under the same circumstances as a "private person" would be.  28 U.S.C. § 1346(b).

Ironically, the case plaintiff relies upon in her discretionary function analysis (Opp. at 16) confirms that her theories of duty fail *Edison*'s first step.  Plaintiff's case law recognizing duties involving "jailer," "arrestor," and "medical provider" relationships all involve duties of *the government*, not private parties.  *Vargas v. United States* dismissed claims like plaintiff's here based on the independent contractor exception.  There, plaintiff alleged that ICE failed to shield a detainee from contracting COVID-19 and failed to provide facilities and care sufficient to meet his medical needs.  *Vargas*, No. 5:23-cv-380, 2024 WL 713774, at *7 (C.D. Cal. Feb. 21, 2024).  The court held that his claims failed *Edison*'s first step because "[w]hile [plaintiff] cites cases that recognize a special relationship between jailers and prisoners, he does not address whether California law would impose the duty of care alleged here on a *private person* in a similar situation."  *Id.* at *8.  The court contrasted *Edison*, which "analogiz[ed] the government's duty to warn prisoners about cocci to a private landowner's duty under California law to act reasonably in the management of his property."  *Id.*  As in *Vargas*, plaintiff here "does not direct the Court's attention to any such analogy." *Id.*

*Vargas* confirms that plaintiff's theories are not cognizable because she "has identified no authority indicating that California would impose a similar duty on a private person, as opposed to a governmental entity."  *See* Mot. at 7.  Plaintiff's Opposition does not refute—or even discuss—this problem.  Because they lack a private person analogue under California law, plaintiff's claims fall

REPLY IN SUPPORT OF THE UNITED STATES'
MOTION TO DISMISS

3

outside the FTCA's waiver of sovereign immunity and should be dismissed.

**B.      As the Court has already determined, ICE was not a "jailer."**

Plaintiff's claims also fail because she has not shown the existence of a nondelegable duty for any of her "jailer," "arrestor," or "medical provider" theories.  The Court already held that ICE was not Mr. Ahn's "jailer" for purposes of nondelegable duty analysis.  Order at 16.  And the Court already distinguished the *Giraldo* and *Lawson* cases upon which plaintiff relies.  Order at 15-16.  Plaintiff does not address any of the Court's reasoning.

Instead, plaintiff asserts that her new "jailer" theory "relies on a different legal theory and a distinct set of operative facts."  Opp. at 5.  A simple comparison of plaintiff's recent Opposition to her previous Opposition refutes that.  *Compare* Opp. at 5 *with* ECF 61, at 23.  As does plaintiff's failure to identify a single new factual allegation purportedly different from those previously relied upon in support of her "jailer" theory.

In fact, the only new analysis plaintiff offers is asserting that *Lawson* held that a plaintiff incarcerated at a privately-run facility "retained the status of 'prisoner' for purposes of her relationship to the State and its public employees[.]"  Opp. at 7 (citing *Lawson v. Superior Ct.*, 180 Cal. App. 4th 1372, 1384-85 (2010)).  But *Lawson* never held that *the State* was a "jailer," or that *the State* retained a nondelegable duty as "jailer."  The only defendants deemed "jailers" were the "jailers at the facility," i.e., two employees of the privately-run facility.  180 Cal. App. 4th at 1389-90.  This is precisely what the Court already reasoned in distinguishing *Lawson*.  *See* Order at 15.  Plaintiff has offered no reason for the Court to revisit its prior reasoning.

**C.      ICE was not Mr. Ahn's "arrestor."**

Plaintiff also has not shown that ICE was Mr. Ahn's "arrestor."  Notably absent from plaintiff's Opposition is a single case imposing a duty on an "arrestor" where the arrestor lacked physical custody of the arrestee.  Mot. at 8 & n.5; *see* Opp. at 9.  Although plaintiff asserts that the United States has "invented" the physical custody requirement (Opp. at 9), the arrestor had custody of the arrestee in all of plaintiff's cases, and three of the courts (including the Ninth Circuit) explicitly noted the "custody" requirement.  Mot. at 8-9 n.5; *Lum v. Cnty. of San Joaquin*, 756 F. Supp. 2d 1243, 1258 (E.D. Cal. 2010) (holding that arresting officers "had a duty to act reasonably to protect him while he was in their

REPLY IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS                 4

1   custody"). At the time of Mr. Ahn's suicide, and at nearly all times referenced in plaintiff's complaint,
2   Mr. Ahn was in GEO's custody, not ICE's—a fact plaintiff specifically alleged.[1] See Mot. at 8-9; TAC
3   ¶ 112 ("ICE . . . took custody of Mr. Ahn and transported him to Mesa Verde. GEO Group then took
4   custody of Mr. Ahn."). California law's recognition of an arrestor's duty is not applicable here, and
5   plaintiff offers no case law adopting the expansion she proposes.

6       *Lum*, which plaintiff now singularly relies on, confirms the custodial requirement. There, the
7   plaintiff asserted that arresting officers acted negligently in not seeking medical attention for decedent
8   despite observing a laceration on his foot, his difficulty walking, vomit on his shirt, and his strange
9   behavior that they attributed to him being "off his meds." 756 F. Supp. 2d 1243, 1253 (E.D. Cal. 2010).
10  Because the arresting officers themselves observed conditions requiring immediate medical attention but
11  failed to act, plaintiff could assert a negligence claim against them. *Id.* at 1255. Here, by contrast,
12  plaintiff alleges that GEO personnel—not ICE agents—directly observed Mr. Ahn's mental health
13  degradation and created the conditions leading to his suicide. *See* TAC ¶¶ 25-26, 35-37, 46-49, 51, 53-
14  56, 58, 60. And "GEO alone r[an] Mesa Verde's operations," including "how to ensure that [detainees]
15  receive necessary medical treatment and intervention." Order at 13.

16      Plaintiff accuses the United States of "confus[ing] the relevant analysis" for the existence of a
17  duty by demanding a showing that the specific means of Mr. Ahn's suicide was foreseeable. Opp. at 10.
18  That is not the United States' position. "The existence of a duty of care is a question of law to be
19  determined by the court alone." *Lum*, 756 F. Supp. 2d at 1254. As a general matter, "[a] person who
20  has not created a peril is not liable in tort merely for failure to take affirmative action to protect another"
21  unless there is a special relationship that creates a duty. *Id.* And that is where plaintiff falls short—
22  although she identified cases imposing a duty on an arrestor having custody of a detainee and thus direct
23  responsibility for obtaining medical treatment, none imposed liability for actions or omissions occurring
24  after the arrestor relinquished control of the detainee to a third party.

---

26      [1] Plaintiff asserts that "the Government conceded [that] Mr. Ahn was detained in the custody of the United States." Opp. at 10. This assertion is frivolous. The United States expressly argued that Mr.
27  Ahn was not in ICE's custody, but "in GEO's custody," for purposes of her claims. *See* Mot. at 8-9. The statute identified by the United States, 8 U.S.C. § 1226(c), states when ICE may take an alien into
28  custody but does not preclude passing off custody to a contractor as expressly permitted by statute.

REPLY IN SUPPORT OF THE UNITED STATES'      5
MOTION TO DISMISS

That is not the only way in which plaintiff falls short. Plaintiff's claim is premised on ICE's alleged failure to "intervene" or "prevent" GEO from violating standards despite knowing that GEO breached them. *See* TAC ¶¶ 210-18. But as the Court has already observed, if "there is no allegation that the hirer's conduct contributed in any way to the contractor's negligent performance, e.g., by inducing injurious action or inaction through actual direction, the government has no duty to Plaintiffs for merely failing to exercise a general supervisory power to prevent the creation or continuation of a hazardous practice, or by failing to exercise control." Order at 17 (quoting *Alvarado v. United States*, No. 09-243, 2010 WL 300139, at *8 (E.D. Cal. July 29, 2010)). And plaintiff does not offer factual allegations showing that ICE actually directed any injurious action or inaction by GEO.

In addition to those deficiencies, plaintiff cannot state a claim because her factual allegations do not meet the applicable legal standard. As shown by the cases that *plaintiff* offered in the Third Amended Complaint,[2] California law holds "that a law enforcement officer owes a duty of reasonable care to an arrestee in his custody who needs *immediate medical attention*." *Winger v. City of Garden Grove*, 806 F. App'x 544, 546 (9th Cir. 2020) (emphasis added); *see also* Mot. at 9. Although plaintiff's Opposition identifies pleading allegations that ICE "reviewed" Mr. Ahn's "medical history" (*see* Opp. at 12), she offers no non-conclusory facts showing that those records indicated Mr. Ahn's need for immediate medical attention or GEO's failure to meet his mental health needs.[3] *See* Mot. at 9-10.

Plaintiff complains that the United States has asked the Court to resolve factual disputes on a motion to dismiss. *See* Opp. at 11. She ignores that in a factual attack on subject matter jurisdiction like that asserted here, the Court "may review evidence beyond the complaint" and "need not presume the truthfulness of the plaintiff's allegations." Order at 5-6. But the United States does not even ask for that—rather, it asks the Court to disregard plaintiff's legal conclusions couched as factual allegations per Rule 8 (*see* Mot. at 5) and to find that the remaining factual allegations do not meet the legal standard to impose a duty. Plaintiff's allegation that the PBNDS required ICE to review Mr. Ahn's medical history

---

[2] Revealingly, plaintiff has abandoned all her "arrestor" cases aside from *Lum*. *See* TAC ¶ 193.

[3] Plaintiff alleges that "an attorney for Mr. Ahn emailed ICE, requesting that the agency return him to his dormitory because isolation was proving detrimental to his mental health." TAC ¶ 57. As pleaded, nothing in the email suggests that Mr. Ahn was in immediate need of medical attention or at imminent risk of suicide—it only offered a non-medical opinion that isolation was "detrimental" in some unspecified manner to Mr. Ahn's general "mental health."

(TAC ¶ 187) is a legal conclusion about a contractual provision that the Court has already interpreted contrary to plaintiff's position.  *See* Order at 12; Mot. at 10; *Fuller v. Equitable S&L Ass'n*, 718 F.2d 951, 952 ("The interpretation of a written contract is a question of law.").  Allegations that ICE "was aware of or should have been aware of Mr. Ahn's deteriorating mental state" or his "health condition" are also legal conclusions.[4]  TAC ¶¶ 190, 192.  And even assuming the allegations that ICE "reviewed" Mr. Ahn's "medical records" satisfy Rule 8, no well-pleaded facts suggest that the records indicated an immediate need for medical attention that GEO was incapable of providing.  *See* Mot. at 9-10.

### D.  ICE was not Mr. Ahn's "medical provider."

Like her "jailer" and "arrestor" theories, the "medical care" cases cited in plaintiff's Third Amended Complaint involve defendants that had physical custody of a detainee.  Mot. at 11 & n.8.  That situation does not exist here, where GEO alone had physical custody of Mr. Ahn and was solely responsible for ensuring that he received adequate medical care.  *See* Order at 13.  Plaintiff still has not identified a single case suggesting that the government is always liable for a contractor's inadequate medical care, nor does she dispute that the only case that has considered her theory has explicitly rejected it.  *See* Mot. at 12 (citing and discussing *Baires v. United States*, No. C-09-cv-5171, 2011 WL 1743224 (N.D. Cal. May 6, 2011)).

Under the case law, the government retains a duty with respect to an independent contractor's deficient medical care only where the government "directly contribute[d]" to the situation.  Mot. at 12 (quoting *Baires*, 2011 WL 1743224, at *6).  This principle is consistent with one the Court already held—that the government is liable for negligent performance of an independent contractor only where

---

[4] *See Nino v. Munoz*, No. 1:20-cv-1722, 2023 WL 2143117, at *9 (E.D. Cal. Feb. 21, 2023) (Baker, M.J.) (holding that allegation that defendant "knew or should have known Plaintiff would suffer a constitutional deprivation" would not be accepted as true because "Plaintiff has alleged no facts demonstrating [defendant] read Plaintiff's grievance or how Plaintiff is aware that [defendant] read his grievance"); *Arceo v. City of Roseville*, No. 2:20-cv-2334, 2023 WL 5417210, at *12 (E.D. Cal. Aug. 22, 2023) (allegations that defendants "knew or should have known that plaintiff was in urgent need of medical, psychiatric, and/or medical evaluation, attention, treatment, and care" were "no more than conclusions . . . not entitled to the assumption of truth" (citations and punctuation omitted)); *Meadows v. Reeves*, No. 1:11-cv-257, 2013 WL 3005544, at * 7 (E.D. Cal. June 14, 2013) (allegations that defendants "knew or should have known of the deliberately indifferent medical care . . . yet failed to promptly report, investigate, correct [the] behavior, and/or prevent" harm were "legal conclusions couched as factual allegations and so need not be and are not accepted as true").

it gave "actual direction" that created injurious action or inaction.  Order at 17.

And plaintiff has not alleged facts showing that ICE directly contributed to deficient medical care.  Rather, she alleges only that ICE failed to intervene when GEO provided deficient medical care.  TAC ¶¶ 210-18.  That does not meet the standard of "direct contribution" or "actual direction" required by the law.  *See* Order at 13-14, 17; *contrast Baires*, 2011 WL 1743224, at *7 (holding that although the government was not liable for deficient medical care by a privately-run detention facility, it could be liable for directly contributing to deficient medical care by knowingly transferring a detainee without his life-saving antiretroviral medication, taking an excessive time to address his requests for the medication, and causing another detainee to miss medical appointments where he would receive the medication).

Plaintiff's "medical provider" argument is not based on case law (as already shown, none supports her), but on allegations about what contractual provisions and policy statements supposedly require of ICE.  *See* Opp. at 13 (citing TAC ¶¶ 197, 200, 203-04).  But these are not well-pleaded *factual* allegations—they are legal conclusions regarding the meaning of contractual provisions and agency policies, which need not be accepted as true under Rule 8.  Mot. at 10; *Fuller*, 718 F.2d at 952 ("The interpretation of a written contract is a question of law."); *Institute for Tech. Dev. v. Brown*, 63 F.3d 445, 450 (5th Cir. 1995) (noting that "interpretation of regulations of a different agency, congressional policy, and contractual agreements" all "involve issues of law").  The Court has already correctly determined that under the applicable contract, "GEO alone runs Mesa Verde's operations, deciding . . . how to ensure that [detainees] receive necessary medical treatment and intervention."  Order at 13.  The Court has so held because that is what the plain language of the contract says, as confirmed by the Declaration of Natasha Nguyen.[5]  *See id.*  Indeed, plaintiff has not identified a single contractual provision explicitly reserving to ICE a duty to provide medical care to detainees.  Had ICE intended to retain a right to provide medical care to detainees, it would have explicitly said so in clear language in the contract.  *Contrast Edison v. United States*, 822 F.3d 510, 522 (9th Cir. 2016) (holding that government retained a duty to construct structures at a GEO-run prison because the contract with GEO

---

[5] In a factual attack on subject matter jurisdiction such as the one the United States raises, the Court may review evidence beyond the complaint and need not presume the truthfulness of plaintiff's allegations.

REPLY IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS          8

expressly "state[d] that '[n]o modifications or additions to existing buildings . . . shall occur . . . without prior approval of the [government]'" and that "[t]he government reserves the right to construct additional buildings on its property and/or expand the capacity of existing buildings").

Plaintiff, in short, has not established that ICE owed Mr. Ahn a nondelegated or a nondelegable duty to provide medical care. Her Third Amended Complaint should be dismissed under the independent contractor exception to the FTCA.

### III. The United States is immune under the discretionary function exception.

Plaintiff has identified two bases for holding the United States liable: (1) ICE did not take "any affirmative steps to ensure that Mr. Ahn's disabilities would be accommodated at Mesa Verde or that he would be safe until further evaluation was obtained"; and (2) ICE "failed to intervene after GEO Group placed Mr. Ahn in a solitary confinement cell." Opp. at 23-24. Both grounds are barred by the discretionary function exception.

#### A. ICE's monitoring and responses to nonconformances fall within the discretionary function exception.

Plaintiff asserts that ICE should have been aware of Mr. Ahn's placement in solitary confinement in violation of the Rehabilitation Act, ICE Directive 11071.1, and the PBNDS, and therefore should have intervened. Opp. at 24-25. The United States does not dispute that Mesa Verde was required to follow those laws and contractual provisions. But as the Court has already held, "[t]he relevant contracts here indisputably vest GEO solely with the rights and responsibilities to manage Mesa Verde's operations and compliance with applicable statutes, regulations, and the PBNDS." Order at 12. "Thus, GEO alone runs Mesa Verde's operations, deciding whether it has the capability to accept detainees with medical issues . . . and how to ensure that they receive necessary medical treatment and intervention." *Id.* at 13.

In short, ICE did not, and could not, control the "detailed physical performance" of GEO in running Mesa Verde (Order at 13)—ICE could only exercise general oversight rights and respond to noncompliances. Plaintiff argues that ICE should have responded to GEO's noncompliances by "monitor[ing]" and "interven[ing]" in particular ways.[6] Opp. at 24-25. But how to monitor compliance

---

[6] Plaintiff previously asserted that "delegation to GEO of all decision-making responsibilities

REPLY IN SUPPORT OF THE UNITED STATES'
MOTION TO DISMISS

9

and how to respond to noncompliances are inherently discretionary. There are no mandatory directives on how to monitor contractor compliance or address any discovered noncompliances. Mot. at 15-16. Further, the discretion in oversight and addressing noncompliance is laden with policy considerations, including those specifically identified by the Federal Acquisition Regulations. Mot. at 15, 16-17. For this reason, courts have repeatedly held that alleged failures to take appropriate action at mismanaged detainment facilities fall within the discretionary function exception. Mot. at 17 (citing cases); *see also Vargas*, 2024 WL 713774, at *9 (dismissing claims based on insufficient oversight of facilities and staff under discretionary function exception).

Plaintiff argues that the discretionary function exception cannot apply because implementation of safety measures is not susceptible to policy judgment. Opp. at 26 (citing *Marlys Bear Medicine v. United States ex rel. Sec'y Dep't of the Interior*, 241 F.3d 1208, 1216-17 (9th Cir. 2001). But *Marlys Bear* and similar cases relying on the so-called "design/implementation distinction" do not apply here. In *Marlys Bear*, an agency contracted with a logging company for timber operations on an Indian reservation. 241 F.3d at 1212. Although the contractor conducted logging, the agency "reserve[d] for itself the power to supervise, warn, fine, or suspend operations not complying with contractual terms." *Id.* The agency's operation manual also required the agency to "ensure 'adherence to basic policy and forestry practices.'" *Id.* at 1215. Here, by contrast, ICE did not reserve any supervisory powers over Mesa Verde, nor did ICE take upon itself the responsibility to ensure that GEO adhered to safety policies. *See* Order at 12-13. To the contrary, GEO had primary "responsib[ility] for management and quality control actions necessary to meet the quality standards set forth in the contract." Contract Att. 19, at 22-23, 45, 65-66.

Further, plaintiff ignores a critical exception to the design/implementation distinction: "where the implementation itself implicates policy concerns." *Whisnant v. United States*, 400 F.3d 1177, 1182 n.3

---

d[id] not absolve [ICE] of their residual duty to adequately supervise GEO's performance," and that ICE "retained . . . significant oversight responsibilities for GEO's compliance with relevant regulations." Order at 12. The Court rejected plaintiff's argument on the independent contractor exception, holding that the contract clearly delegated all Mesa Verde operations to GEO, and that retention of general oversight rights "does not impute to [ICE] control and supervision of GEO's 'detailed physical performance' necessary to pierce the independent contractor exception." *Id.* at 13. Plaintiff now reasserts the same argument with different framing in a facile attempt to avoid the Court's prior Order.

REPLY IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS               10

(9th Cir. 2005); *Gonzalez v. United States*, 814 F.3d 1022, 1035 (9th Cir. 2016). In *Marlys Bear*, implementation was straightforward: if safety protocols were not being followed, the agency had already committed to issuing warnings or suspending non-compliant operations. Here, by contrast, if ICE discovered a contractual noncompliance at Mesa Verde, that would not end the matter. The Contract does not identify how a "noncompliance" is determined, and the FARs explicitly give ICE discretion to "establish[] the significance of a nonconformance when considering the acceptability of supplies or services which do not meet contract requirements." Mot. at 16 (quoting 48 C.F.R. § 46.103(e)). The Contract and the FARs also give ICE discretion to determine whether to impose monetary penalties or terminate the contract if noncompliances are discovered. *Id.* And even if the nonconformances are significant enough to constitute default, the FARs require weighing several policy-based considerations in determining whether to terminate or continue a contract. *Id.* Simply put, unlike in *Marlys Bear* where noncompliances were a straightforward matter, any discovered noncompliances in the Contract would require additional discretionary determinations grounded in policy.

In short, how ICE monitored Mesa Verde, and how it responded to discovered noncompliances, were discretionary matters grounded in policy considerations. Plaintiff's claims that ICE failed to appropriately "monitor" GEO or "intervene" in a particular way therefore are barred.

**B.    ICE's decision to house Mr. Ahn at Mesa Verde was a discretionary function.**

Plaintiff also argues that when ICE first arrested Mr. Ahn, it was obligated "to address his medical needs and to ensure that he would be safe in a detention environment before transferring him to Mesa Verde" under the Rehabilitation Act, federal regulations, ICE Directive 11065.1, and PBNDS. Opp. at 22. The most obvious problem with plaintiff's theory, however, is that ICE did not run Mesa Verde—"GEO alone" did. *See* Order at 13. As the Court has already found, the contract requires GEO, not ICE, to conduct "intake arrival screening" and evaluate its capability of taking particular detainees. Contract Att. 19, at 46; Order at 13. Indeed, plaintiff alleges that GEO conducted "initial screening" of Mr. Ahn. TAC ¶ 88(a)-(b). The United States does not dispute that federal laws and policies create mandatory duties—but GEO is responsible for complying with those duties, not ICE. Order at 12-13. Plaintiff would be correct in arguing that *GEO* had no discretion to violate federal laws or policies, but she cannot graft GEO's mandatory duties on ICE for purposes of discretionary function analysis.

Plaintiff's framing of her claim poses another problem: at bottom, she contests Mr. Ahn's facility assignment. But the choice of facility to house an alien detainee is a decision "within the province of the Attorney General to decide." *Rios-Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985). And because ICE must assess "factors such as availability of bed space, contract costs, staffing, resources, and travel . . . when a detention facility is selected[, t]hose factors reflect the economic, social, and political concerns the discretionary function exception was designed to protect." *Sanchez-Soriano v. United States*, No. 09-cv-500, 2011 WL 6217063, at *3-4 (S.D. Ill. Aug. 2, 2011); *see also Arora v. United States*, 144 F. App'x 627, 628 (9th Cir. 2005) (holding that discretionary function exception barred argument that federal prisoner should have been sent to different medical facility).

The Court has already rejected a similar argument from plaintiff. In response to the United States' previous Motion to Dismiss, plaintiff admitted that the Attorney General had discretion to detain an alien pending resolution proceedings but argued that Mr. Ahn's detention at Mesa Verde was not protected by the discretionary function exception because his conditions of confinement violated the Eighth Amendment. Order at 10. The Court rejected her bootstrapping argument with prejudice, holding that she "ma[de] no allegation or advance[d] any argument that *the decision* to detain Mr. Ahn was anything but consistent with the Constitution and applicable statutes," even if the conditions of confinement were allegedly illegal. *Id.* at 10-11. Put another way, plaintiff could not assert liability for a discretionary decision by arguing that the results of that decision led to an unconstitutional confinement—the decision itself had to be illegal. Similarly here, although plaintiff argues the illegality of Mr. Ahn's conditions at Mesa Verde, she offers no allegation or argument that the decision to assign Mr. Ahn to that particular facility in itself violated any mandatory duties. The Court should hold that the discretionary function exception bars plaintiff's analogous claim here.

The discretionary function exception exists precisely to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."[7] *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig*

---

[7] Importantly, the policy prong of the discretionary function exception does "not [focus] on the agent's subjective intent in exercising the discretion . . . but on the nature of the actions taken and on whether they are susceptible to a policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). It is irrelevant whether ICE actually engaged in policy analysis to assign Mr. Ahn to Mesa Verde—the

REPLY IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS

12

*Airlines)*, 467 U.S. 797, 814 (1984). Here, plaintiff's claim strikes at one of the most basic discretionary decisions of the Executive Branch—whether and where to detain an alien pending deportation proceedings. The Court should reject plaintiff's invitation to second-guess those decisions through a private tort action—especially when the government has contractually shifted all intake and screening responsibilities to an independent contractor.[8]

### C. To the extent plaintiff's claims are based on COVID-19, they are barred by the discretionary function exception.

Plaintiff now acknowledges that "only a small subset of her allegations directly concern the COVID-19 pandemic." Opp. at 16; *see* Section I (explaining how plaintiff's Third Amended Complaint exceeded the scope of leave to amend by going beyond COVID-19 issues). The United States demonstrated that the discretionary function exception immunizes ICE's response to the COVID-19 pandemic is immune from suit. Mot. at 17-19. Plaintiff does not address that analysis, and instead focuses on Mr. Ahn's mental health issues. Thus, to the extent that plaintiff's claims against the United States are based on ICE's purportedly deficient COVID-19 response, it should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiff's claims for lack of subject matter jurisdiction based on the independent contractor exception or, alternatively, the discretionary function exception.

---

Court asks only whether that decision is susceptible to a policy analysis. It is, for the reasons noted.

[8] Plaintiff offers a passing citation to *Vargas*, which rejected application of the discretionary function exception to the plaintiff's claims that ICE failed to provide facilities and care sufficient to meet his medical needs. Opp. at 16. But *Vargas* explicitly acknowledged that its discretionary function analysis was merely dicta, as it had already dismissed the plaintiff's same claims under the independent contractor exception. 2024 WL 713774, at *9 n.59. Further, ICE respectfully submits that *Vargas*'s discretionary function analysis was erroneous. *Vargas* held that the government was subject to mandatory directives under PBNDS and additional internal policies. 2024 WL 713774, at *9-10. But those directives apply to the *detention facility*—and here, GEO alone operated Mesa Verde, and has primary responsibility for complying with all legal and contractual requirements. Further, *Vargas*'s analysis in dismissing plaintiff's claims of failing to provide adequate medical care under the independent contractor exception cannot be squared with its dicta that ICE was responsible for complying with those same policy statements. It is also unclear that *Vargas* appreciated the extent of ICE's delegation to the contractor, whereas here the Court has held that GEO alone was responsible for intake, determining whether it has the capability to accept detainees with medical issues, and ensuring that detainees receive necessary medical treatment and intervention. *See* Order at 13.

Dated: July 22, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ BROIE M. BUTLAND
BROIE M. BUTLAND
Assistant United States Attorney