UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA AHN,<br><br>            Plaintiff,<br><br>    v.<br><br>GEO GROUP, INC., *et al.*,<br><br>            Defendants. | Case No. 1:22-cv-00586-CDB<br><br>ORDER GRANTING DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS THIRD AMENDED COMPLAINT<br><br>(Doc. 76) |

Pending before the Court is the motion of Defendant the United States of America to dismiss the third amended complaint of Plaintiff Sylvia Ahn. (Doc. 76). Plaintiff filed an opposition on July 10, 2024 (Doc. 79),[1] and Defendant filed a reply on July 22, 2024 (Doc. 82). For the reasons set forth below, Defendant's motion to dismiss will be granted.[2]

**I.      Background**

Plaintiff is the daughter of Choung Woong Ahn (the "Decedent" or "Mr. Ahn") and brings this action on behalf of his estate. (Doc. 74, third amended complaint ("TAC"), ¶ 2). She initiated this action with the filing of a complaint on May 17, 2022, asserting claims against the United States of America, the United States Immigration & Customs Enforcement ("ICE"), and GEO Group, Inc. ("GEO"). (Doc. 1). The claims stem from Mr. Ahn's detention at Mesa Verde

---

[1] Plaintiff's opposition (Doc. 79) appears to lack a CM/ECF document header. The page numbers cited by the Court herein are sequential, beginning with the first page of the document as page one.

[2] Following the parties' grant of consent to the jurisdiction of a U.S. magistrate judge for all purposes, this case was assigned to the undersigned on March 30, 2023. (Doc. 39).

Detention Facility ("Mesa Verde") in or around February 2020 and subsequent suicide on May 17, 2020.  TAC, ¶¶ 60-61, 185.

Defendant United States ("Defendant") moved to dismiss Plaintiff's second amended complaint ("SAC").  (Doc. 54).  In its order dated March 25, 2024 (Doc. 66), the Court dismissed ICE from the action and dismissed with prejudice all but one of Plaintiff's claims as alleged against Defendant United States.  *Id.* at 18.  The Court found that Plaintiff's claim of negligence for failure to release Mr. Ahn (count nine) fell under the discretionary function exception.  Counts ten and 11, negligent hiring and supervision/retention of Defendant GEO, respectively, were deemed barred under the discretionary function exception to the extent they were based on the United States' hiring and continued retention of GEO.  The Court noted that it was a closer call whether Plaintiff could maintain a claim based on the United States' negligent supervision of GEO. While the contracts at issue suggest the retention of general oversight rights by the United States over GEO's compliance with the contract by way of audits and evaluations, the Court found that such retention of rights did not impute to the United States control and supervision of GEO's performance, as necessary to pierce the independent contractor exception.  *Id.* at 9-14.

The Court found that Plaintiff's claim asserting false imprisonment against the United States (count 13) failed, as Plaintiff could not establish the confinement of Plaintiff was "without lawful privilege" as required by applicable California law.  Additionally, even if the United States retained discretion "not to remove" Plaintiff and release him, it did not follow that the United States acted without lawful privilege by not exercising its discretion.  *Id.* at 17-18.

Finally, as to count 12, delegation to GEO of nondelegable duties, the Court found that Plaintiff had not identified any state law or authority that imposes nondelegable duties of care upon parties who are neither landowners nor "jailers" in the traditional sense, namely those assigned to a facility holding custody of detained inmates.  The Court granted Plaintiff leave to amend to assert a claim based on the United States' negligence in breaching some other nondelegable or nondelegated duty.  *Id.* at 14-17.

///

///

**The Claims at Issue**

In the TAC, Plaintiff alleges only the following claim against Defendant United States, which is the subject of Defendant's motion to dismiss: negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), for undelegated and nondelegable duties ("Count 12"). (Doc. 74 at 31-47). Plaintiff explains that, for purposes of clarity, she chose to keep the claim as "Count 12," as it was previously numbered in the second amended complaint ("SAC"), despite the absence of counts nine, ten, or 11 in the TAC. Plaintiff provides that she is amenable to the claim being redesignated. (Doc. 79 at 7, n.1). For the sake of simplicity, the Court will continue to refer to the claim as Count 12.

Plaintiff has greatly expanded Count 12. It consists of 49 numbered paragraphs and asserts, in brief, that California law imposed upon ICE numerous duties of care to Mr. Ahn, namely as his "jailer, legal custodian, arrestor, and medical provider." (Doc. 74 at 32). Plaintiff cites the Performance-Based National Detention Standards 2011 ("PBNDS") (*id.* at 33, 37-38), which she had previously attached to her prior opposition to the United States' motion to dismiss the SAC (Doc. 61-2, "PBNDS") and the contract between the United States and GEO for the Mesa Verde Detention Facility (Doc. 64-1), among other documents and reports from the federal government, namely ICE and the Department of Homeland Security ("DHS").

**II.    Standard of Law**

**A.    Subject Matter Jurisdiction – Rule 12(b)(1)**

The Federal Rules of Civil Procedure provide for the dismissal of a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir 2004). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Id*. On the other hand, "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. The Court "need not presume the truthfulness of the plaintiff's

3

1  allegations" in deciding a factual attack. *Id*.

2  **B.     Failure to State a Claim – Rule 12(b)(6)**

3  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the complaint's sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). When dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (citing *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

**C.    Federal Tort Claims Act**

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it

4

consents to be sued…, and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "The United States has waived its sovereign immunity with regard to tort liability under the Federal Tort Claims Act 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015) (quoting 28 U.S.C. § 1346(b)(1)). But this waiver is subject to certain exceptions.

Independent Contractor Exception: the United States' waiver of immunity under the FTCA expressly excludes liability for the actions of "any contractor with the United States." 28 U.S.C. § 2671. Pursuant to this "independent contractor" exception, the United States has not waived immunity from liability for the tortious acts of independent contractors. "The critical test for distinguishing an agent from a contractor is the existence of federal authority to control and supervise the 'detailed physical performance' and 'day to day operations' of the contractor, and not whether the agency must comply with federal standards and regulations." *Carrillo v. United States*, 5 F.3d 1302, 1304 (9th Cir. 1993) (quoting *Ducey v. United States*, 713 F.2d 504, 516 (9th Cir. 1983)). Thus, the independent contractor exception will not apply if the United States controlled and supervised the contractor's day-to-day operations. *See Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005) (finding the government may be liable where it exercises "substantial supervision over the day-to-day operations of the contractor").

Importantly, the independent contractor exception "has no bearing on the United States' FTCA liability for its *own* acts or omissions." *Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016) (emphasis in original). To determine whether the United States may be held liable under the FTCA for its own acts or omissions, as is pled here, courts engage in a three-step inquiry. *Id*. at 519. First, the court determines whether state law, in this case, California law, would impose a duty of care on a private individual in a similar situation. *Id*. (citing 28 U.S.C. § 2674; *Autery*, 424 F.3d at 956). "[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law." *Liebsack v. United States*, 731 F.3d 850, 855

5

1  (9th Cir. 2013) (quoting *Molzof v. United States*, 502 U.S. 301, 304 (1992)).  If state law does
2  impose such a duty, then the Court looks to the contract and the parties' actions to determine
3  whether the United States retained a portion of that state law duty for which it could be held
4  directly liable.  *Edison*, 822 F.3d at 519.  Lastly, "even if it appears that the government delegated
5  all of its duties to the independent contractor, we ask whether California law imposed any
6  nondelegable duties on the government." *Id*. (citing *Yanez v. United States*, 63 F.3d 870, 874-75
7  (9th Cir. 1995)).

8  <u>Discretionary Function Exception</u>: the United States' waiver of immunity under the FTCA
9  also excludes alleged conduct that falls under the "discretionary function exception." 28 U.S.C. §
10 2680(a).  The discretionary function exception precludes claims against the United States that are
11 "based upon the exercise or performance or the failure to exercise or perform a discretionary
12 function or duty on the part of a federal agency or an employee of the government, whether or not
13 the discretion was abused." *Id*.  This exception protects "legislative and administrative decisions
14 grounded in social, economic, and political policy" from judicial second guessing.  *See Berkovitz*
15 *by Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *United States v. S.A. Empresa de Viacao*
16 *Aeria Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).

17  Courts conduct a two-step inquiry to determine whether a claim falls within the
18 "discretionary function exception."  First, the court must determine whether the alleged conduct
19 involved an element of judgment or choice.  *See Berkovitz*, 486 U.S. at 536.  Second, if the
20 conduct involves some element of choice, then the court must determine whether the conduct
21 involves social, economic, or political policy considerations.  *See Gasho v. United States*, 39 F.3d
22 1420, 1435 (9th Cir. 1994).  When a statute or regulation allows a federal agent to act with
23 discretion, there is a "strong presumption" that the authorized act is based upon an underlying
24 policy decision.  *United States v. Gaubert*, 499 U.S. 315, 324 (1991).  Notably, to be protected
25 from liability, the challenged decision "need not actually be grounded in policy considerations"
26 so long as it is, "by its nature, susceptible to a policy analysis." *Miller v. United States*, 163 F.3d
27 591, 593 (9th Cir. 1998).  The determination of whether particular government conduct falls
28 within the discretionary function exception must focus on the "nature of the conduct, rather than

1  the status of the actor." *Gaubert*, 499 U.S. at 322.

2  **III.    Discussion**

3  Defendant begins by arguing that Plaintiff's most recent amendments to the complaint are outside the scope of the Court's prior order dismissing with leave to amend. (Doc. 76-1 at 12). Next, Defendant argues it did not have any of the "special relationships" with Mr. Ahn that would create legal duties, as alleged by Plaintiff, namely: jailer, legal custodian, arrestor, and medical provider. Defendant asserts Plaintiff has failed to identify any legal authority suggesting it can be sued under FTCA based on "jailer" status. *Id.* at 13-14. Defendant states that Plaintiff has "identified no legal authority suggesting that California imposes a non-delegable duty based on a generalized 'legal custodian' relationship." *Id.* at 14. Defendant provides that Plaintiff failed to show that the United States had custody of the arrestees and that Mr. Ahn's suicide was foreseeable to Defendant. *Id.* at 14-17. Finally, Defendant argues that any role as "medical provider" was delegated to GEO under the applicable contract. *Id.* at 18.

In her opposition, Plaintiff asserts that the amendments in the TAC are within the scope of the Court's prior order. (Doc. 79 at 8-9). She states that ICE was a "jailer" under California law because ICE had control over Mr. Ahn, as ICE retained "legal authority over Mr. Ahn's body and acted as his jailer." Plaintiff asserts that, thus, "the fact that a third-party contractor was responsible for operating the carceral facility did not dissolve the prisoner-jailer relationship between the [s]tate and its employees and the incarcerated plaintiff." *Id.* at 9-14. Plaintiff states that "an arresting officer has a special relationship to an arrestee with medical vulnerabilities if it is foreseeable that the arrestee" would be at risk in a particular environment. *Id.* at 14-18.

Plaintiff provides that Defendant possessed "undelegated direct duties" to ensure the provision of medical care to Mr. Ahn and to which duties the independent contractor and discretionary function exceptions do not apply. *Id.* at 19-23. Plaintiff argues that ICE's conduct did not involve an element of judgment or choice (as relevant under the discretionary function exception analysis) due to the fact it was subject to mandatory action in "statute, regulation, and agency policy," particularly in regards to "dealing with people with disabilities," those "experiencing suicidality," and those "in solitary confinement"; Plaintiff cites to the

7

1  Rehabilitation Act, as well as ICE Directives 11065.1 and 11071.1, and section 4.6 and 4.8 of the
2  2011 PBNDS. *Id.* at 23-29. Finally, Plaintiff provides that the implementation of safety
3  measures is not susceptible to policy judgment, as relates to the second prong of the discrete
4  function exception analysis. *Id.* at 31-32.

**A.      Scope of Amendment, Punitive Damages, and COVID-19 Claims**

As a preliminary matter, the Court resolves Defendant's contentions regarding the permissible scope of the amended claims, punitive damages, and any claims relating to COVID-19. First, in moving to dismiss Count 12 of the TAC, Defendant argues that the amended claims go beyond the Court's prior "limited grant of leave to amend," in that Plaintiff's recent amendments to Count 12 are not limited to alleged negligence in regards to COVID-19 but, instead, encompasses "nearly every alleged failing at Mesa Verde." (Doc. 76-1 at 12).

The clear language of the Court's prior order limited the grant of leave to amend not only to negligence claims in regards to COVID-19 but to "assert a claim based on Defendants' negligence in breaching some other nondelegable or nondelegated duty." (Doc. 66 at 17). As such, Plaintiff was granted leave to amend not only in regards to claims related to COVID-19 but to allege "some other nondelegable or nondelegated duty" in general and, thus, her amendments do not go beyond the Court's prior order.

Second, the TAC includes a request for punitive damages. TAC, ¶ 229; (Doc. 76-1 at 25). Punitive damages are not permissible under the FTCA and thus, insofar as Plaintiff seeks them against Defendant, they are stricken. *See Nurse v. United States*, 226 F.3d 996, 1004 (9th Cir. 2000).

Third, in its motion, Defendant argues that Plaintiff's claims, if any, based on ICE's "allegedly deficient response or oversight for COVID" are barred under the discretionary function exception. (Doc. 76-1 at 23-25). Defendant cites to no such claims in Count 12 and the Court, upon review, cannot locate any. As such, the Court will not reach this argument.

**B.      Nondelegable Duties**

   **1.      Jailer and Legal Custodian**

Plaintiff attempts to argue that Mr. Ahn was "incarcerated at the behest of his jailer, ICE,

8

on behalf of the [g]overnment." (Doc. 79 at 11; TAC, ¶ 181). Plaintiff asserts that, "[f]rom the moment ICE apprehended Mr. Ahn upon his release from Solano State Prison on February 21, 2020, the [g]overnment retained legal authority over Mr. Ahn's body and acted as his jailer." (Doc. 79 at 11; TAC, ¶ 182). Plaintiff states that Mr. Ahn, thus, "was dependent for care on ICE *and* GEO." (Doc. 79 at 12) (emphasis in original). Plaintiff cites to *Lawson v. Superior Court*[3] for the proposition that the incarcerated plaintiff in that case retained the status of "prisoner" for purposes of her relationship to the state and its employees, resulting in them receiving only limited immunity. Plaintiff asserts that, thus, "the fact that a third-party contractor was responsible for operating the carceral facility did not dissolve the prisoner-jailer relationship between the [s]tate and its employees and the incarcerated plaintiff." *Id.* at 9-14.

Plaintiff claims to "advance a different theory than her previously rejected argument that *Lawson* supported that ICE had a nondelegable duty to Mr. Ahn as his jailer." Plaintiff states the Court did not "consider *Lawson's* finding state and public employee defendants entitled to statutory immunity on the basis of their relationship to the plaintiff as her jailer, despite the fact that a third-party contractor operated the facility." *Id.* at 14, n.3-4.

Plaintiff states that "the fact that a third-party contractor was responsible for operating the carceral facility did not dissolve the prisoner-jailer relationship between the [s]tate and its employees and the incarcerated plaintiff." She argues that, under California law, "ICE retained a duty of care to Mr. Ahn … because ICE functioned as the jailer who had authority and control of Mr. Ahn's custody at Mesa Verde." *Id.* at 14.

Defendant argues that "[o]nce ICE deposited Mr. Ahn at Mesa Verde, GEO alone had physical custody of him and was his 'jailer' as that term is normally understood" and that Plaintiff has "identified no authority suggesting the United States can be sued under FTCA based on an alleged 'jailer' status." (Doc. 76-1 at 13-14). Defendant further argues that "Plaintiff has identified no legal authority suggesting that California imposes a non-delegable duty based on a generalized 'legal custodian' relationship." Defendant states that the Court's prior order already

---

[3] 180 Cal. App. 4th 1372, 1376-77 (2010).

9

rejected this theory, finding that *Lawson* "imposed a duty not based on legal custody, but rather on the 'special relationship between jailer and prisoner' that imposed a duty on the 'jailers at the facility.'" *Id.* at 14, quoting (Doc. 67) (emphasis omitted).

In its previous order (Doc. 66), the Court addressed the general argument Plaintiff advances anew here - to wit, that Defendant holds status as a "jailer" of inmates in its custody to whom it owes certain duties by virtue of its special relationship with those inmates. *Id.* at 15. The Court considered California state law governing this issue (principally, *Edison v. United States*[4]) and determined that "it is not clear from the Court's opinion [in *Edison*] that any nondelegable duty may derive solely from the jailer/inmate relationship where the defendant is not also a 'landowner' of the facility." *Id.* at 15.  Plaintiff now argues that, in *Lawson* (a case the Court previously noted was relied upon by the *Edison* court), the presence of a third-party contractor did not dissolve the prisoner-jailer relationship between the state, its employees, and the incarcerated plaintiff and thus, under California law, Defendant retained a duty of care to Mr. Ahn because ICE functioned as jailer with authority and control of Mr. Ahn's custody at Mesa Verde.  The Court is unconvinced.

In *Edison*, the Ninth Circuit found that California "imposed a heightened duty of care on jailers." *Edison*, 822 F.3d at 521 (citing *Giraldo v. Cal. Dept of Corrs. & Rehab.*, 168 Cal.App.4th 231 (2008), and *Lawson,* 180 Cal.App.4th 1372 (2010)).  However, as noted in the previous order, the "Court is unconvinced that *Edison* stands broadly for the proposition that California law imputes to the government a nondelegable duty of care as to all detainees held in custody at privately-operated detention facilities under the circumstances presented in this case." (Doc. 66 at 15).

Indeed, in *Edison*, the Ninth Circuit noted, first, that the Bureau of Prisons ("BOP") "could not have delegated its duty to warn." *Edison*, 822 F.3d at 520-521.  Next, the Court found that "while the BOP delegated most day-to-day activities to GEO/MTC, the BOP expressly reserved at least one right to itself," namely the right to construct buildings, modifications, or additions. *Id.* at 522.  The Ninth Circuit also found that "[a]lthough the United States delegated

---

[4] 822 F.3d 510, 518 (9th Cir. 2016).

10

the general duty to oversee healthcare at Taft to GEO/MTC, its actions make clear that it chose to retain the specific duty to develop a policy for the prevention and treatment of cocci." *Id.* at 523.

It follows that the Ninth Circuit, citing *Lawson*, did not expressly find a set of nondelegable duties derived from the "special relationship" between jailers and prisoners, instead finding only a nondelegable duty to warn where the BOP was also a landowner. At a minimum, the Ninth Circuit did not find it specifically problematic for the BOP to delegate "most day-to-day activities" or the "general duty to oversee healthcare." Plaintiff has not cited any authority for the proposition that there exists here a nondelegable duty under California law for Defendant, neither as "jailer" nor "legal custodian."

### 2. Arrestor

Defendant argues that Plaintiff "does not assert that Mr. Ahn killed himself because of wrongful treatment by ICE agents during his February 21 or May 12-14, 2020 excursions with them—rather, she asserts that Mr. Ahn's suicide was caused by deficient mental healthcare and failure to follow suicide protocols, which occurred at Mesa Verde while Mr. Ahn was in GEO's custody." (Doc. 76-1 at 15). Defendant states that Plaintiff has not established the "existence nor breach of a legal duty to Mr. Ahn" and has failed to show Mr. Ahn's "suicide was foreseeable because of ICE's knowledge that Mr. Ahn was in need of medical or mental health treatment." *Id.* Defendant provides that the PBNDS provisions require review of a "detainee's medical history for classification and suicide prevention purposes" but that those obligations apply to "staff" at the "facility." *Id.* at 16.

Defendant asserts that Plaintiff offers no "well-pleaded factual allegations indicating that ICE knew about Mr. Ahn's medical and mental health conditions from its approval of the Mercy Hospital treatment, let alone that he was in imminent danger of killing himself." *Id.* at 16-17. Defendant argues that Plaintiff does not allege that any of the requests of release from detention Mr. Ahn submitted to ICE discuss an imminent risk of suicide nor other emergency, nor that GEO was "incapable of providing necessary medical or mental health care." *Id.* at 17.

Plaintiff, in opposition, cites to *Lum v. County of San Joaquin*[5] for the proposition that it is

---
[5] 756 F. Supp. 2d 1243, 1255 (E.D. Cal. 2010).

11

"reasonably foreseeable that an arrestee who is in need of medical attention would be at risk in a custodial environment … without first having received proper medical attention." (Doc. 79 at 15). Plaintiff asserts that Defendant attempts to "narrow the reach of the law, contending that the arrestor's duty can only possibly attach to ICE in the 'brief periods it had physical custody of Mr. Ahn, away from GEO.'" *Id.*, quoting (Doc. 76 at 9). Plaintiff states that *Lum* "explains that an arresting officer has a special relationship to an arrestee with medical vulnerabilities if it is foreseeable that the arrestee 'would be at risk in a custodial environment or upon release into a situation made dangerous by his medical condition.'" *Id.*, citing *Lum*, 756 F. Supp. 2d at 1255.

Plaintiff provides that the foreseeability analysis in the context of a duty is limited and contrastable with the more fact-specific foreseeability analysis bearing on negligence and proximate causation. *Id.* at 16 (citation omitted). Plaintiff argues that, to the extent Defendant contends it did not breach its duty of care to Mr. Ahn as his arrestor, Defendant challenges Plaintiff's factual allegations, namely that ICE did not review Mr. Ahn's records, which Plaintiff contends is improper at the pleading stage. *Id.* at 17. Plaintiff cites her allegations in the TAC in support. *Id.* at 18.

Regarding any duties assumed by Defendant in connection with an arrest, the case of *Jimenez v. United States*[6] is instructive. In *Jimenez*, ICE apprehended the plaintiff on suspicion of being in the United States without authorization. Upon his arrest, the plaintiff informed the ICE officers of his psychological condition and previous incidents of self-harm and requested permission to retrieve his psychiatric medications from his home, which the officers denied. He later attempted suicide, resulting in serious injuries to his person. On the United States' motion to dismiss, the *Jimenez* court evaluated plaintiff's arguments regarding ICE's failure to provide necessary medical care upon detainment. *See Jimenez*, 2018 WL 784270, at *3. The court found that the plaintiff's citations to the PBNDS for specific provisions regarding "medical practices during transfers of detainees to different facilities" were inapplicable, stating that "[t]here is no indication—explicit or implicit—that these standards apply to arresting officers transporting a new detainee to a detention center following arrest and initial processing at a sub-office." *Id.*

---

[6] No. 2:17-CV-01914-JAM-KJN, 2018 WL 784270 (E.D. Cal. Feb. 8, 2018).

1  The court found that plaintiff "has failed to identify a statute, regulation, or policy that dictates a
2  mandatory and specific action not taken here.  The decision, therefore, involves the exercise of
3  discretion." *Id*.
4        In finding that the decision to permit an arrestee to return home to retrieve medication is
5  one susceptible to social, economic, and political policy analysis, one of the factors noted by the
6  *Jimenez* court that officers may consider is the "propriety of deferring to the detention facilities'
7  medical staff and intake procedures." *Id.*
8        Similarly, Plaintiff in this action has failed to identify any source of authority dictating a
9  mandatory and specific action not taken by Defendant.  For example, the PBNDS provisions cited
10  by Plaintiff in the TAC for the proposition that ICE should have been aware of Mr. Ahn's history
11  of suicidality and mental illness, Article 4.6, state that "[u]pon change of custody to ICE/ERO
12  from federal, state, or local custody, ICE/ERO staff or designee shall inquire into any known
13  prior suicidal behaviors or actions, and, if behaviors or actions are identified, shall ensure
14  detainee safety pending evaluation by a medical provider." TAC, ¶ 187.  Plaintiff asserts that Mr.
15  Ahn's "medical was reviewed by ICE Health Services and housing was approved." TAC, ¶ 188
16  (citing *Ahn v. Barr*, No. 3:20-cv-2604-JD (N.D. Cal. April 20, 2020), Doc. 15-4 at 41).
17        The language of Article 4.6 appears to mandate two things: (1) that ICE must inquire into
18  Mr. Ahn's prior suicidal behaviors or actions and (2) it must then, upon identification of such
19  behaviors or actions, ensure detainee safety pending evaluation by a medical provider."  The clear
20  language of the policy, "ensure detainee safety pending evaluation," indicates a broader goal
21  providing ICE discretion in how to achieve it.  It does not mandate a specific action. *See Jimenez*,
22  *supra*, 2018 WL 784270 at *3.
23        Further, the TAC alleges that, after processing at an ICE field office, Mr. Ahn was
24  incarcerated at the Mesa Verde Detention Facility.  TAC, ¶ 185.  The Court sees no reason here to
25  depart from the finding and reasoning in *Jimenez*, namely that there is no indication PBNDS
26  provisions, specifically those regarding medical practices during transfers of detainees to different
27  facilities, apply to arresting officers transporting a new detainee to a detention center following
28  arrest and initial processing at a sub-office or, as alleged here, a "field office."  The officers

13

retained discretion to ensure Mr. Ahn's safety pending evaluation by GEO's medical staff and intake procedures at Mesa Verde.

### 3. Medical Provider

As to Defendant's role as "medical provider," Defendant argues that such role was delegated to GEO under the applicable contract and cites to *Baires v. United States*[7] for the proposition that liability attached for inadequate medical care provided by independent contractors only where ICE agents "directly contributed to the situation," unlike here where Plaintiff alleged a failure to intervene or protect. (Doc. 76-1 at 18).

Plaintiff argues that ICE retained duties to provide Mr. Ahn with medical care, stating that the Court's previous findings that "GEO alone runs Mesa Verde's operations" were limited to the scope of ICE's supervision responsibilities over GEO and did not address ICE's undelegated direct duties as a medical provider. For the existence of these duties, she cites to the contract between ICE and GEO for the Mesa Verde facility. (Doc. 79 at 19). Plaintiff asserts that, in *Baires*, the claims alleging that ICE officers, through "their own acts and omissions," contributed to deficient medical care were permitted to proceed under FTCA. *Id.* at 20.

Plaintiff's arguments are unpersuasive. As an initial matter, the Court determined in its previous order that "GEO alone runs Mesa Verde's operations, deciding whether it has the capability to accept detainees with medical issues, how to classify detainees, where to house them, how to supervise them, and *how to ensure that they receive necessary medical treatment and intervention*." (Doc. 66 at 13) (emphasis added). As discussed *supra*, *Edison* appears to have found no specific issue with the United States delegating the general duty to oversee healthcare at a different facility. *Edison*, *supra*, 822 F.3d at 523. Plaintiff has not cited any authority for the Court come to a different conclusion.

Additionally, *Baires* is factually distinguishable from this case. In *Baires*, the court held that the independent contractor exception did not apply where federal officers, through their own acts, directly contributed to the situation. *See Baires,* 2011 WL 1743224, at *7 ("Here, no federal officer is alleged to have taken Baires's medication away, but they did allegedly transfer him

---

[7] No. C-09-5171, 2011 WL 1743224, at *1 (N.D. Cal. May 6, 2011).

14

without his medication, take an excessive amount of time to address his requests for medication, and cause Miranda to miss medical appointments at which he hoped to receive such medication. These allegations are adequate to state a claim against the United States under the FTCA.") (internal citations and quotations omitted).  By contrast, here there are no factual allegations that federal officers, through their own acts, directly contributed to the alleged harms.

**C.      Discretionary Function and Independent Contractor Exceptions**

Defendant argues that the Federal Acquisition Regulations ("FARs"), "which govern ICE's contracting with GEO, do not prescribe specific inspection or quality regimens." Defendant states the FARs require "periodic and unscheduled audits and inspections" but do not specify how often they are to occur, how they are to be performed, who should participate, or what should be inspected.  Defendant provides that the same is true for the semi-annual audits required under the applicable contract.  (Doc. 76-1 at 21).  Defendant asserts that how it must address any noncompliance by GEO under the contract is discretionary.  *Id.* at 22.

Plaintiff argues that laws and policies bind Defendant's conduct and therefore eliminate its discretion.  Plaintiff cites to the Rehabilitation Act regarding disability accommodation, corresponding DHS regulations (6 C.F.R. § 15.30), and corresponding ICE Directives (11071.1 and § 4.8 of the PBNDS).  Plaintiff states that the government further eliminated discretion through ICE policies concerning solitary confinement and suicide prevention, citing ICE Directive 11065.1 and PBNDS § 4.6.  (Doc. 79 at 23-28).

Plaintiff argues that the above laws and policies eliminated discretion when ICE arrested Mr. Ahn and transferred him to Mesa Verde and, as Mr. Ahn was an individual with a disability, triggered Defendant's duty under the Rehabilitation Act to provide him with accommodations. *Id.* at 28-29.

As noted above in section III, subpart (B)(2), discussing any duties of Defendant as "arrestor," Plaintiff is incorrect.  First, ICE officers did retain discretion in effectuating applicable policy when arresting Mr. Ahn and taking him for processing at a field office.  Deferring to the detention facilities' medical staff and intake procedures is a relevant element of such discretion.

Second, once Mr. Ahn was incarcerated at Mesa Verde, the analysis then shifts to the

independent contractor exception. *Autery*, 424 F.3d at 957 ("That is, the ability to compel compliance with federal regulation does not change a contractor's personnel into federal employees. Rather, there must be substantial supervision over the day-to-day operations of the contractor in order to find that the individual was acting as a government employee.") (internal citations and quotations omitted). As noted above in section III, Plaintiff has not cited any authority establishing a nondelegable duty and the Court found in its order dismissing Plaintiff's earlier complaint that "GEO alone runs Mesa Verde's operations, deciding whether it has the capability to accept detainees with medical issues, how to classify detainees, where to house them, how to supervise them, and how to ensure that they receive necessary medical treatment and intervention." (Doc. 66 at 13). Any such failures under the authority cited by Plaintiff would be barred as to Defendant by the independent contractor exception.

## IV.    Conclusion

For the foregoing reasons, the Court hereby **GRANTS** Defendant's motion to dismiss (Doc. 76). Count 12 is dismissed. Because Plaintiff previously was granted leave to amend to the extent she could remedy the deficiencies identified by the Court in its earlier dismissal order pertaining to Count 12 (*see* Doc. 66), the Court concludes any further opportunity to amend would be futile. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

As no claims remain against Defendant the United States of America, the Clerk of the Court is **DIRECTED** to terminate the United States of America from this action.

IT IS SO ORDERED.

Dated:   **January 30, 2025**

UNITED STATES MAGISTRATE JUDGE